**LAW OFFICE OF STEVE WHITWORTH**
Steve Whitworth [SBN: 249111]
2368 Maritime Dr., Suite 160
Elk Grove, CA 95758
[Tel]: 916.668.5970
[Fax]: 916.668.5971
steve@stevewhitworth.com

Attorney for Plaintiff:
**DAVID PHILLIPS-KERLEY**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| DAVID PHILLIPS-KERLEY,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF FRESNO FIRE DEPARTMENT, a California Governmental Entity; MIKE GILL, an individual; RONALD CALDWELL, an individual; CHARLES TOBIAS, an individual; JERRY SMITH, an individual; MARK HARVEY, an individual; DONALD MAC ALPINE, an individual; RONALD STOGDELL, an individual; NICHOLAS MARTINO, an individual; CASEY CLARK, an individual; DANIEL ESCOBAR, an individual; OSCAR BETANCOURT, an individual; TONY ESCOBEDO, an individual; JONATHAN CHEW, an individual; KERRI DONIS, an individual; RANDALL REITZ, an individual; RICHARD CABRAL, an individual; JOHN CREASY, an individual; RICHARD WILLARD, an individual; CARLTON JONES, an individual; KENNETH PHILLIPS, an individual; JEFFREY CARDELL, an individual; BRUCE RUDD, an individual; VAN TASSEL, an individual; and DOES 1 to 10, inclusive,<br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000(e)(2);**<br>2. **RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(e)(3);**<br>3. **HARASSMENT IN VIOLATION OF 42 U.S.C. § 2000(e)(3);**<br>4. **HARASSMENT / HOSTILE WORK ENVIRONMENT [CALIFORNIA GOVERNMENT CODE § 12940(J)(1), (3)];**<br>5. **AIDING AND ABETTING HARASSMENT [CALIFORNIA GOVERNMENT CODE § 12940(I)];**<br>6. **FAILURE TO PREVENT HARASSMENT [CALIFORNIA GOVERNMENT CODE § 12940(K)];**<br>7. **RETALIATION AGAINST A WHISTLEBLOWER [CALIFORNIA LABOR CODE § 1102.5(B)];**<br>8. **RETALIATION [CALIFORNIA LABOR CODE § 1102.5(B)];**<br>9. **AIDING AND ABETTING RETALIATION [CALIFORNIA GOVERNMENT CODE § 12940(I)];** |

LAW OFFICE OF
**STEVE WHITWORTH**

LAW OFFICE OF
**STEVE WHITWORTH**

| | |
|---|---|
| ) | **10. THREAT OF PUNITIVE ACTION IN VIOLATION OF FBOR § 3253(e)(1)** |
| ) | **11. IMPROPER REASSIGNMENT IN VIOLATION OF FBOR § 3253(i)(g)** |
| ) | **12. RETALIATION IN VIOLATION OF FBOR § 3254(a)** |
| ) | **13. DENIAL OF APPEAL IN VIOLATION OF FBOR § 3254(b)** |
| ) | **14. SUBMISSION TO PERSONNEL FILE WITHOUT REVIEW IN VIOLATION OF FBOR § 3255** |
| ) | **15. FAILURE TO PROVIDE PERSONNEL FILE IN VIOLATION OF FBOR § 3256.5(b)** |
| ) | **16. DENIAL OF RIGHTS IN VIOLATION OF FBOR § 3260** |
| ) | **17. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |
| ) | **18. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;** |
| ) | **19. DEFAMATION – SLANDER;** |
| ) | **20. INJUNCTIVE RELIEF; AND** |
| ) | **21. FAILURE TO INVESTIGATE IN VIOLATION OF FRESNO CITY FRESNO CITY ORDER 2-16;** |
| ) | **JURY TRIAL DEMANDED** |

COMES NOW, Plaintiff DAVID PHILLIPS-KERLEY, and for his Complaint against the above-named Defendants, alleges as follows:

**<u>NATURE AND BASIS OF ACTION</u>**

This is a civil action in which Plaintiff DAVID PHILLIPS-KERLEY seeks against Defendants CITY OF FRESNO FIRE DEPARTMENT, a California Governmental Entity; MIKE GILL, an individual; RONALD CALDWELL, an individual; CHARLES TOBIAS, an individual; JERRY SMITH, an individual; MARK HARVEY, an individual; DONALD MAC ALPINE, an individual; RONALD STOGDELL, an individual; NICHOLAS MARTINO, an individual; CASEY CLARK, an individual; DANIEL ESCOBAR, an individual; OSCAR BETANCOURT, an individual; TONY ESCOBEDO, an individual; JONATHAN CHEW, an individual; KERRI DONIS, an individual; RANDALL REITZ, an individual; RICHARD CABRAL, an individual;

JOHN CREASY, an individual; RICHARD WILLARD, an individual; CARLTON JONES, an individual; KENNETH PHILLIPS, an individual;  JEFFREY CARDELL, an individual; BRUCE RUDD, an individual; and DOES 1 to 10, inclusive, damages for (1) Discrimination in violation of 42 U.S.C. § 2000(e)(2); (2) Retaliation in violation of 42 U.S.C. § 2000(e)(3); (3) Harassment in violation OF 42 U.S.C. § 2000(e)(3); (4) Harassment / Hostile Work Environment [California Government Code § 12940(J)(1), (3)]; (5) Aiding And Abetting Harassment [California Government Code § 12940(I)]; (6) Failure To Prevent Harassment [California Government Code § 12940(K)]; (7) Retaliation Against A Whistleblower [California Labor Code § 1102.5(B)]; (8) Retaliation [California Labor Code § 1102.5(B)]; (9) Aiding And Abetting Retaliation [California Government Code § 12940(I)]; (10) Threat of Punitive Action in violation of FBOR § 3253(e)(1); (11) Improper Reassignment in violation of FBOR § 3253(i)(g); (12) Retaliation in violation of FBOR § 3254(a); (13) Denial of Appeal in violation of FBOR § 3254(b); (14) Submission To Personnel File Without Review in violation of FBOR § 3255; (15) Failure To Provide Personnel File in violation of FBOR § 3256.5(b); (16) Denial Of Rights in violation of FBOR § 3260; (17) Intentional Infliction Of Emotional Distress; (18) Negligent Infliction Of Emotional Distress; and for attorney's fees and costs of suit; (19) Defamation – Slander; (20) Injunctive Relief; and (21) Failure to Investigate in Violation of Fresno City Administrative Order 2-16.

## **PARTIES**

1.     Plaintiff DAVID PHILLIPS-KERLEY (hereinafter "Plaintiff"), is a natural person, a citizen of the United States, a resident of the State of California, and at all times mentioned herein an employee of Defendant CITY OF FRESNO FIRE DEPARTMENT.

2.     Plaintiff is informed and believes and thereon alleges that Defendant CITY OF FRESNO FIRE DEPARTMENT (hereinafter "Defendant Fire Department") is governmental entity headquartered in Fresno, California.

3.     Plaintiff is informed and believes and thereon alleges that Defendant MIKE GILL (hereinafter, "Gill") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of

LAW OFFICE OF
**STEVE WHITWORTH**

Fire Captain.

4.     Plaintiff is informed and believes and thereon alleges that Defendant RONALD CALDWELL (hereinafter, "Caldwell") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

5.     Plaintiff is informed and believes and thereon alleges that Defendant CHARLES TOBIAS (hereinafter, "Tobias") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Battalion Chief.

6.     Plaintiff is informed and believes and thereon alleges that Defendant JERRY SMITH (hereinafter, "Smith") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain, and also Union Local 753 President.

7.     Plaintiff is informed and believes and thereon alleges that Defendant MARK HARVEY (hereinafter, "Harvey") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

8.     Plaintiff is informed and believes and thereon alleges that Defendant DONALD MAC ALPINE (hereinafter, "Mac Alpine") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Marshal Investigations Supervisor.

9.     Plaintiff is informed and believes and thereon alleges that Defendant RONALD STOGDELL (hereinafter, "Stogdell") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Battalion Chief.

10.     Plaintiff is informed and believes and thereon alleges that Defendant NICHOLAS MARTINO (hereinafter, "Martino") is now was, at all times herein mentioned, an individual

COMPLAINT FOR DAMAGES

LAW OFFICE OF
**STEVE WHITWORTH**

residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

11.     Plaintiff is informed and believes and thereon alleges that Defendant WILLIAM HUNTER (hereinafter, "Hunter") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

12.     Plaintiff is informed and believes and thereon alleges that Defendant CASEY CLARK (hereinafter, "Clark") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Battalion Chief.

13.     Plaintiff is informed and believes and thereon alleges that Defendant DANIEL ESCOBAR (hereinafter, "Escobar") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

14.     Plaintiff is informed and believes and thereon alleges that Defendant OSCAR BETANCOURT (hereinafter, "Betancourt") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

15.     Plaintiff is informed and believes and thereon alleges that Defendant TONY ESCOBEDO (hereinafter, "ESCOBEDO") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Battalion Chief.

16.     Plaintiff is informed and believes and thereon alleges that Defendant JONATHAN CHEW (hereinafter, "Chew") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Administrative Chief.

17.     Plaintiff is informed and believes and thereon alleges that Defendant KERRI DONIS

(hereinafter, "Donis") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Chief.

18.     Plaintiff is informed and believes and thereon alleges that Defendant RANDALL REITZ (hereinafter, "Reitz") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Battalion Chief.

19.     Plaintiff is informed and believes and thereon alleges that Defendant RICHARD CABRAL (hereinafter, "Cabral") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Administrative Deputy Chief.

20.     Plaintiff is informed and believes and thereon alleges that Defendant JOHN CREASY (hereinafter, "Creasy") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

21.     Plaintiff is informed and believes and thereon alleges that Defendant RICHARD WILLARD (hereinafter, "Willard") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Fire Captain.

22.     Plaintiff is informed and believes and thereon alleges that Defendant CARLTON JONES (hereinafter, "JONES") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Engineer, and position of Union Local 753 President.

23.     Plaintiff is informed and believes and thereon alleges that Defendant KENNETH PHILLIPS (hereinafter, "K.Phillips") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Labor Relations Manager, City of Fresno.

24.     Plaintiff is informed and believes and thereon alleges that Defendant JEFFREY CARDELL (hereinafter, "Cardell") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Director of Personnel Services, City of Fresno.

25.     Plaintiff is informed and believes and thereon alleges that Defendant BRUCE RUDD (hereinafter, "Rudd") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of City Manager, City of Fresno.

26.     Plaintiff is informed and believes and thereon alleges that Defendant VAN TASSEL (hereinafter, "Van Tassel") is now was, at all times herein mentioned, an individual residing in the County of Fresno, State of California, and an employee of Defendant Fire Department having the rank of Battalion Chief.

27.     The true names and capacities of defendants DOES 1 through 25, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff who therefore sues said defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by those defendants.

28.     Plaintiff is informed and believes and thereon alleges that at all times material to this complaint, Defendants, and each of them, in addition to acting for themselves and on their own behalf individually, were and was acting as the agents, servants, employees and representatives of, and with the knowledge, consent and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope and authority of that agency, service, employment, representation, and conspiracy.

29.     Plaintiff is informed and believes and based upon such information and belief further alleges that the acts of each of the Defendants were fully ratified by each and all of the Defendants.

LAW OFFICE OF
**STEVE WHITWORTH**

Specifically, and without limitation, Plaintiff alleges that the actions, failures to act, breaches, conspiracy, and misrepresentations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and done with the cooperation and knowledge of each and all of the Defendants.

30.    Plaintiff is informed and believes, and upon such information and belief, alleges that each of the defendants named herein as Does 1 through 25, inclusive, were and are in some manner responsible for the action, acts and omissions herein alleged, and for the damage caused by the Defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

31.    Plaintiff is informed and believes and, upon such information and belief, alleges that each of the Defendants including Does 1 through 25, inclusive, were at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

## JURISDICTION AND VENUE

32.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367.

33.    Venue is proper in this Court because Defendant Fire Department, the employer, is headquartered in Fresno, and the aggrieving actions took place in Fresno, the County and State in which this Court is located.

## FACTUAL BACKGROUND

34.    Plaintiff is a certified firefighter in the State of California.

35.    Plaintiff is African-American.

36.    Plaintiff was hired to the Fresno City Fire Department on April 4, 2004, with the initial job title of "Firefighter," and an initial annual salary of $48,000.  Based on Plaintiff's exceptional test scores, strong background and references, and fluid interview with Fire Chief Bruegman, Plaintiff was hired as part of the first class of 12 recruits out of nearly 1000 applicants.

37.    In July of 2007, Plaintiff was promoted to "Engineer Specialist," with an annual salary of $89,460.

LAW OFFICE OF
**STEVE WHITWORTH**

LAW OFFICE OF
**STEVE WHITWORTH**

38.     In 2008, and again in early 2010, based on Plaintiff's exemplary work performance, Plaintiff was selected by Fire Chief Bruegman as Defendant Fire Department's representative in the City of Fresno's Fire Sprinkler Public Service Announcement (PSA).

39.     In October 2017, Plaintiff received recognition for a Pediatric Clinical Death Save for CPR restoration of life of a child during a fire rescue.

40.     In August of 2010, as Plaintiff was preparing to go off-duty, Plaintiff asked a favor of a fellow employee, if they wouldn't mind removing Plaintiff's towels, which he forgot about earlier, from the dryer once they were done.  The request was accepted, and before Plaintiff departed, Plaintiff left a Post-it note on the dryer to notify others to whom the towels belonged. Within one week, this simple request spun out of hand into a defamatory story that had found its way throughout the department, grossly falsifying negative information against the Plaintiff.  Plaintiff returned to work to find Post-it notes left for him with messages placed on drawers and cabinets throughout the kitchen. It was at this point that Plaintiff came forward with the recent development and requested assistance from his Captain, Defendant Ron Caldwell.  Caldwell, however, denied the Plaintiff's request, stating that, "Those are just jokes."  By Caldwell's comment and unwillingness to perform his rank duties, Plaintiff understood his captain's decision to condone the actions taken against the Plaintiff.

41.     In September 2010, Plaintiff was called into an office at Station 12 of the Fresno City Fire Department for an interrogation meeting with his supervisors, Fire Captains Mike Gill and Ronald Caldwell.

42.     During this interrogation, Gill and Caldwell made vague allegations regarding the possibility that Plaintiff could be disciplined. Gill and Caldwell refused to clearly articulate their allegations but made it clear to Plaintiff that they were looking for a reason to discipline Plaintiff. Gill and Caldwell refused to allow Plaintiff any representation at the meeting, despite the fact that the California Firefighter's Bill of Rights (hereinafter, the "FBOR") guarantees Plaintiff the right to representation at any meeting in which disciplinary action could result. Plaintiff understood that this was an attempt at unwarranted disciplinary action was the result of the result of Gill and Caldwell's

9

LAW OFFICE OF
**STEVE WHITWORTH**

retaliatory agenda against Plaintiff for Plaintiff's opposition of Gill and Caldwell's unlawful employment practices.

43.     On the next available work day following the interrogation, Plaintiff reported the interrogation and violations of the FBOR to Fire Chief Randy Bruegman.  Chief Bruegman advised Plaintiff on how to proceed and added that he should move forward with caution.

44.     Two weeks later, in September 2010, Plaintiff sent notification email to Captain Gill to address interrogation incident and memorialize the incident.

45.     During this same week in September 2010, a department-wide notification went out via email, informing all members of an Open House Farewell to Chief Bruegman to be held on September 30, 2010.  Chief Bruegman resigned from the Fresno Fire Department on October 1, 2010.

46.      On Plaintiff's following duty day, in September 2010, Battalion Chief Defedant Charles Tobias traveled to Plaintiff's Fire Station 12 to speak with Plaintiff. Tobias questioned Plaintiff about his report to Fire Chief Bruegman. Tobias then told Plaintiff that, "Someone did that to [Tobias] once, and they regretted it." Plaintiff understood this statement to be a threat of retaliation, up to and including physical violence, and also an attempt to dissuade Plaintiff from pursuing any further actions against Captains Gill and Caldwell over FBOR violations associated with the September interrogation.

47.     While on-duty during the first week of October 2010, just days after Chief Bruegman's resignation, and immediately following Battalion Chief Tobias' threat delivered to the Plaintiff at station 12, Plaintiff was asked, in a deceptive manner, by his acting captain to write an expletory letter regarding the loss of a particular piece of equipment.  Plaintiff was informed that the letter was "only for justification purposes, so the department could purchase a replacement piece of equipment."  In an abundance of caution, Plaintiff wrote a detailed account of all relevant events. Plaintiff was subsequently proven to have had nothing to do with the equipment loss.  However, contrary to the initial request presented to Plaintiff, an apparent final decision memo was delivered to Plaintiff, written by Administrative Chief Timothy Henry, which included the statement, "No

disciplinary action will be taken at this time."  Plaintiff understood this unwarranted attempt to entrap and accuse Plaintiff for an apparent lost piece of equipment, was done in retaliation for Plaintiff's whistleblowing report of Firefighter Bill of Rights violations by Captain's Gill and Caldwell during the September interrogation.

48.     Plaintiff experienced a positive, unaffected, interaction with Captain Mark Harvey while working at Fresno Fire Station 14.

49.     October 20, 2010, Plaintiff submits a request for transfer out of Fire Station 12, to station 14 with Captain Harvey, in order to escape the harassment of Captains Gill and Caldwell, and Battalion Chief Tobias.

50.     On November 1, 2010, Gill and Tobias accused Plaintiff of insubordination arising from an October 31, 2010, incident during a chimney fire, during which Plaintiff and Gill were parking in front of a house that had flames showing from the chimney. Pursuant to procedure, Plaintiff pulled the engine forward slightly in order to make room for the incoming truck that would soon be arriving. Gill made no comment during the incident. Only later, Gill and Tobias accused Plaintiff of insubordination and claimed that Gill had directly instructed Plaintiff not to move the truck. Plaintiff understood that the unwarranted disciplinary action was the result of Gill and Caldwell's retaliation over Plaintiff's whistleblowing report of the September 2010 interrogation.

51.     Based on the October 31, 2010 claim by Captain Gill, Plaintiff received a disciplinary letter, punitive in nature, which was placed into his personnel file where it would remain for the duration of three years.

52.     On November 7, 2010, Plaintiff was transferred to Fire Station 14 under Fire Captain Mark Harvey. On November 8, 2010, Harvey informed Plaintiff that he "would be documenting everything", then ordered Plaintiff to sign a "Personal Behavior Contract," while continuing to work at Fire Station 14.  Plaintiff's original decision to transfer to Fire Station 14 was due in part to a positive interaction with Captain Harvey while working at Fire Station 14 just one month prior to the November 7th transfer.  By the content of the "behavior contract", Plaintiff understood two things.  First, Plaintiff understood that this "contract" was a repeat attempt to setup Plaintiff for a

LAW OFFICE OF
STEVE WHITWORTH

potential secondary violation in similar fashion to the recent insubordination claim and incident involving Captain Gill on October 31, 2010.  Additionally, Plaintiff understood this change in behavior, and the unwarranted retaliatory action, exhibited by newly assigned Captain Mark Harvey, to be a result of falsified and defamatory information received from Captain Gill, and also a result Captain Harvey's own decision to initiate retaliation efforts against the Plaintiff.

53.     A few days later, in November 2010, Harvey recited to Plaintiff, under the guise of a "training" article, a story about a firefighter who had been pushed into a fire and killed by his crew members.  Shortly thereafter, Harvey called for Plaintiff to sit down and watch a paused clip from the film "Edge of Darkness" in which a whistleblower in brutally murdered on screen in the style of a military "code red." Plaintiff understood the "training" article and film clip to be threats of retaliation, up to and including physical violence, for Plaintiff's reporting of firefighter malfeasance to the Fire Chief.  Plaintiff also understood this was an attempt to further dissuade Plaintiff from pursuing any further action against Captains Gill or Caldwell.

54.     In or about December 2010, Plaintiff reached out to Fire Captain and Union President Jerry Smith in an effort to seek union representation over the October 31, 2010 insubordination claim involving Captain Gill.  During Plaintiff's initial coffee shop meeting with Smith, as soon as Plaintiff had completed his opening statement of facts, Smith, as if on-cue, immediately turned to his right and said goodbye to two professionally dressed individuals who had been sitting at a table beside Plaintiff and Smith within earshot of their conversation.  Smith's next words were to inform Plaintiff that one of the two individuals was a "retired District Attorney who had recently attended our Fresno Fire Department Union Christmas Party, but she probably wouldn't say anything."  It was clear to Plaintiff at this point, that this was an intentional arrangement set up by Smith, and that no further confidentiality could be assumed in any future dealing with supervisors within the Fresno Fire Department.

55.     In or about December 2010, Smith informed Plaintiff that Plaintiff would not be able to appeal the punitive disciplinary reprimand of October 31, 2010.

56.     In or about December 2010, Plaintiff along with Union President Smith, met with

LAW OFFICE OF
STEVE WHITWORTH

LAW OFFICE OF
**STEVE WHITWORTH**

Defendant Mac Alpine to examine Plaintiff's department personnel file.  It was discovered at this time by Plaintiff, that Mac Alpine had submitted into Plaintiff's personnel file, without Plaintiff's prior witness, documents associated with this disciplinary action. Additionally, Mac Alpine did deny Plaintiff copies of documents from within his own personnel file.  Additional efforts to attain copies with Smith's assistance would be futile.

57.     In or about January 2011, Mac Alpine substantiated charges and officially charged Plaintiff with the reprimand for insubordination, despite the many violations of the FBOR that occurred during the process. Smith and Mac Alpine again denied Plaintiff any appeal of the reprimand.

58.     On information and belief, Plaintiff alleges that Mac Alpine was named in two related 2010 complaints. The first, filed with the City of Fresno, and second filed with the Department of Fair Housing and Employment (DFEH), both for cases of racial discrimination. These cases were brought forward by another African American Engineer employed with the Fresno City Fire Department.

59.     At this time, Plaintiff began to understand that he was the victim of a systematic, organized discrimination by the Fresno City Fire Department against African-Americans and against anyone who would blow the whistle on the discriminatory agenda of the Fresno City Fire Department, and that this discrimination and retaliation could cost him not only his job, but also his life.

60.     On April 20, 2011, Battalion Chief Ronald Stogdell and Captain Nicholas Martino ordered Plaintiff to appear for another interrogation regarding an alleged tardy appearance to work. Stogdell and Martino refused to allow Plaintiff any representation. The pair ordered Plaintiff to complete a "Tardy Report Form" that acknowledged his alleged wrongdoing within just a few hours and specifically instructed Plaintiff not to submit any sort of explanatory statement. Stogdell and Martino told Plaintiff that signing the form would not be disciplinary but would instead be used "to fix policy."

61.     On June 29, 2011, Captain Harvey transferred out of Station 14 and was replaced by

Captain William Hunter.

62.    In or about September 2011, Battalion Chief Casey Clark presented Plaintiff with a 5-shift suspension as punishment for the Tardy Report Form Plaintiff signed on April 20, 2011. In fact, the form was used as a disciplinary action against Plaintiff, contrary to the assurances of Stogdell and Martino.

63.    On or about November 2011, Plaintiff and counsel participated in a Skelly hearing regarding the recently issued proposed suspension and the events of April 20, 2011. As a result of the agreement reached during the hearing, Plaintiff was to pay a $100 fine unconditional, free and clear of any penalty associated with the receipt of a 5-shift suspension.

64.    On or about December 2011, Mac Alpine did appear to Plaintiff's assigned fire station to serve Plaintiff with notice of agreement as discussed during the November 2011 Skelly Hearing.  The decision notice served upon Plaintiff by Mac Alpine, however, was not in compliance with the accepted terms of the Skelly agreement.  Counsel was immediately notified by Plaintiff, direction was given to Plaintiff not to concede acceptance of the erroneous document, but instead to note discrepancy and counsel's intent to correct.  In addition to MacAlpine's hostility exhibited during service of the order, Plaintiff understood this mistake to be an intentional composition error motivated by the discrimination and retaliation of Investigator Don Mac Alpine, with intent to serve an exaggerated disciplinary notice upon Plaintiff.

65.    On or about April 2012, Captain Hunter approached Plaintiff late one evening and told Plaintiff he wanted to talk.  With FBOR in mind, and sensing an agenda, Plaintiff asked if the talk could lead to discipline.  Captain Hunter responded that discipline was possible.  To that, Plaintiff informed Hunter that he would like to have a representative present.  Captain Hunter complied with Plaintiff's request and agreed to postpone the discussion until the following shift.

66.    The following shift in April 2010, Plaintiff had secured his representative and was prepared to meet with Captain Hunter for counseling.  Contrary to the agreement, however, Hunter decided that he would not meet and confer with Plaintiff in the presence of Plaintiff's representing attorney.  The final decision by Hunter, and also Battalion Chief Clark, was to not allow Plaintiff his

LAW OFFICE OF
STEVE WHITWORTH

retained attorney as representative, but rather insist that only Fresno Fire Department personnel could represent Plaintiff.

67.     In response to Battalion Chief Clark and Captain Hunter's denial of access to representative of choice, Plaintiff's then-attorney (and current counsel) sent a letter to Defendant Fire Department with notice of formal attorney representation.

68.     Beginning of May 2012, Captain Hunter mounts an audio/video camera in the fire engine without consent from Plaintiff.

69.     On or about May 2012, Mac Alpine serves Plaintiff with Notice of Investigation for unspecified violations between the periods of December 2011, the date which Mac Alpine served Plaintiff with erroneous Skelly Hearing discipline decision, and April 2012, the period leading up to Captain Hunter's request to confer with Plaintiff and his representative.  Plaintiff understood the service of this notice to be a retaliatory act, exercised with hostility toward Plaintiff, fueled by the racial bias of Investigator Don Mac Alpine.

70.     In or around August 2012, Captain Hunter attempted to recreate, against Plaintiff, an identical scenario to the October 31, 2010 incident which resulted in the issuance of an unwarranted disciplinary action against Plaintiff.

71.     On July 2, 2013, Plaintiff was transferred to Fire Station 20 and was assigned Captain Daniel Escobar as his supervisor.

72.     During Plaintiff's first shift working at Fire Station 20, Escobar was hostile toward Plaintiff, up to and including confronting Plaintiff in a threatening manner, as if to instigate a reaction from Plaintiff.  Escobar repeatedly insulted Plaintiff and took every opportunity to make Plaintiff's work difficult, including discriminating based on Plaintiff's race.

73.     Escobar's hostility came to a head in or about October 2013.  In conversation, Plaintiff commented to Escobar that his treatment was harassing.  In response, and without comment, Escobar instantaneously proceeded to contact Battalion Chief Larry French. Escobar eventually transferred out of Station 20 on October 31, 2013.  Plaintiff was informed and believes that Escobar's threatening and hostile treatment was a result of prior defamatory information

LAW OFFICE OF
STEVE WHITWORTH

received, and Captain Escobar's independent decision to discriminate against Plaintiff.

74.     On or about November 5, 2013, Captain Oscar Betancourt was assigned as Plaintiff's supervisor, and no harassment or retaliation occurred until approximately March 5, 2014.

75.     Suddenly, in March 2014, Betancourt's attitude toward Plaintiff changed drastically, and Betancourt began the same pattern of harassment and retaliation that Plaintiff had experienced with his other superiors. Plaintiff is informed and believes, and thereon alleges, that Betancourt was convinced by the other Defendants to retaliate against and harass Plaintiff.

76.     In or about May 2014, Betancourt issued a Letter of Understanding to Plaintiff, without a proper investigation, presentation to Plaintiff, or opportunity for Plaintiff to respond.

77.     On June 27, 2014, Betancourt and Battalion Chief Tony Escobedo ordered Plaintiff to appear for another interrogation without representation. Plaintiff notified his Union VP James Scoggins, who failed to appear despite being on duty, and then directed Plaintiff to proceed alone.

78.     July 4, 2014, Betancourt directed Plaintiff to attend a Fourth of July block party on Fire Engine 20. Upon arrival, Plaintiff was offered a beer while trying to park the engine, was propositioned sexually, and then offered $100 "for [Plaintiff's] service." Each of these offenses is punishable by termination, if Plaintiff had accepted. Battalion Chief Escobedo, who was on duty, was staged just one mile from the block party for the duration of Plaintiff's stay.

79.     July 29, 2014, Administrative Chief Jonathan Chew issued a written reprimand for unsubstantiated claims made against Plaintiff and refused to allow Plaintiff to appeal the reprimand.

80.     In September 2014, as Mac Alpine was about to issue a Proposed 5-Shift Suspension to Plaintiff for matters related to the June 27, 2014 interrogation incident, Betancourt transferred to another station.

81.     Mac Alpine issued the Proposed 5-Shift Suspension to Plaintiff in September 2014, overlooked violations committed against Plaintiff during the June 27, 2014 interrogation, and refused to accept witness testimony exonerating Plaintiff.

82.     In May 2015, counsel for Defendant Fire Department issued to Plaintiff a "corrected" version of the November 2011 Fine In Lieu of Suspension, despite the fact it was over 3 and a half

LAW OFFICE OF
STEVE WHITWORTH

years old and had never been signed or implemented.

83.     On June 24, 2015, Plaintiff submitted via email to Fire Chief Kerri Donis a written Skelly response regarding the June 27, 2014 interrogation incident and Proposed 5-Shift Suspension, and reported the extensive threats, harassment, discrimination, and retaliation to which Plaintiff had been subjected.

84.     Chief Donis took no action and initiated no investigation based on Plaintiff's report.

85.     On July 1, 2015, Plaintiff transferred out of Station 20 in order to escape the constant torment.

86.     In October 2015, Donis and Mac Alpine issued Plaintiff a 2-shift Suspension Order in response to the Skelly response to the June 27, 2014 interrogation and Proposed 5-Shift Suspension, though 4 of the 6 charges were dropped.

87.     In November 2015, Plaintiff filed for appeal of the 2-Shift Suspension. Just days later, Donis and Battalion Chief Tom Cope re-issued to Plaintiff two of the charges that had been formerly dropped from the October 2015 suspension. Plaintiff is informed and believes, and thereon alleges, that Donis and Cope reissued the charges in retaliation for Plaintiff filing an appeal.

88.     Thereafter, in November 2015, Plaintiff filed a grievance with the City of Fresno for FBOR violations associated with the re-issue of two charges from the June 27, 2014 Suspension matter.  Donis immediately rescinded the two reinstated charges.

89.     In December 2015, Mac Alpine issued an order for Plaintiff to meet with MacAlpine for an interrogation into the allegations in Plaintiff's complaint. Plaintiff's counsel sent a letter to MacAlpine stating that MacAlpine was a biased investigator, was himself named in the complaint, and had interfered with the appeal process Plaintiff was currently pursuing. Based on the letter, the Attorney for Defendant Fire Department ordered MacAlpine to withdraw from the investigation of Plaintiff.

90.     In or about February 2016, Plaintiff attempted to get a job with the (various) Fire Department. Despite placing #3 out of 400 applicants, Plaintiff was passed over by one department, with no explanation. Plaintiff is informed and believes, and thereon alleges, that member of

LAW OFFICE OF
STEVE WHITWORTH

Defendant Fire Department contacted and made defamatory statements to several Fire Departments in order to ensure that Plaintiff would not get the job.

91.     On June 3, 2016, MacAlpine went to Plaintiff's home while Plaintiff was gone and, without identifying himself or his purpose, proceeded to harass and intimidate Plaintiff's wife. When Plaintiff's wife offered to contact Plaintiff, MacAlpine refused and abruptly left. Plaintiff's family was left utterly terrified for their safety.

92.     In July 2016, Plaintiff notified Jeff Cardell, Director of Personnel for the City of Fresno, that Plaintiff was filing a complaint with the EEOC and requested separation from the people harassing and discriminating against him. Plaintiff's request was never granted.

93.     Plaintiff filed a Title VII complaint with the EEOC on July 20, 2016.

94.     On August 23, 2016, Plaintiff attended an appeal hearing for the events of June 27, 2014. Defendant Fire Department presented false statements and falsified evidence at the hearing.

95.     In September 2016, Plaintiff filed two grievances with the City of Fresno for Defendant Fire Department's violations of the FBOR and City Policy violations. Plaintiff thereafter requested a continuance for the Appeal Hearing, because Plaintiff's grievances did bear material weight on the outcome of the Appeal Hearing decision. Plaintiff's request for a continuance was denied.

96.     In September 2016, Battalion Chief Randall Reitz and Administrative Chief Richard Cabral began retaliating against Plaintiff by requesting that Plaintiff meet a measurable objective, while explicitly denying Plaintiff's request for clarification on the potential for punitive discipline if the objective is not fulfilled.

97.     On September 30, 2016, Plaintiff filed complaints for Retaliation and Hostile Work Environment with the City of Fresno, and made another request to be removed from his harassers. No remedy was ever realized for Plaintiff's complaint or request.

98.     In October 2016, Reitz and Cabral requested a progress report from Plaintiff for his objective completion status.  Plaintiff objective had been maintained and was reported as such. Reitz and Cabral accepted the status report without question.

LAW OFFICE OF
STEVE WHITWORTH

99.     In October 2016, Plaintiff filed two additional grievances with the City of Fresno for Defendant Fire Department's violations of the FBOR and City Policy.

100.     In November 2016, the hearing officer over Plaintiff's appeal, sustained Defendant Fire Department's June 27, 2014, order, despite Plaintiff's open grievances and complaints of discrimination.

101.     On December 12, 2016, Cabral arbitrarily changed his expected objective for Plaintiff, but failed to notify Plaintiff of the change.   Reitz and Creasy, upon this change in objective, collaborated together to serve Plaintiff with a disciplinary notice for, failure to meet the objective.   Prior to receiving said notice, Plaintiff did notify Creasy and Reitz of Plaintiff's need to go home for reasons of Hostile Work Environment.   Chief Reitz and Captain Creasy granted Plaintiff immediate leave upon request for reason of Hostile Work Environment.

102.     From December 13 through 16, 2016, Plaintiff requested from Donis, Cabral, Reitz, Creasy, and Training Chief Todd Tuggle, the documentation supporting the December 12, 2016, disciplinary action.  None of these individuals provided the documentation requested to Plaintiff .

103.     On December 17, 2016, Plaintiff requested an extension of his leave for reason of, no change in conditions regarding hostile work environment. Reitz denied Plaintiff's request and then ordered Plaintiff to report to work.  Plaintiff proceeded to work.

104.     On December 22, 2016, Plaintiff again personally notified Donis of the hostile work environment Plaintiff was being forced to endure.

105.     In January 2017, Plaintiff was served by Reitz and Creasy, the disciplinary notice for failure to meet objectives related to the September 2016 goal.

106.     In January 2017, Plaintiff filed his 5th grievance with the City of Fresno.

107.     On January 17, 2017, Plaintiff was issued a Notice of Investigation by MacAlpine for reason of various violations of policy for making the complaint of Hostile Work Environment on December 12, 2016.

108.     On January 19, 2017, Plaintiff again informed Donis, but via email, about the hostile work environment and requested separation from his harassers. Donis denied Plaintiff's request on

LAW OFFICE OF
**STEVE WHITWORTH**

January 23, 2017.  Donis also denied Plaintiff's Hostile Work Complaint and failed to investigate the matter altogether.

109.   In February 2017, MacAlpine was issued a notice by Plaintiff's union-appointed attorney that MacAlpine was biased against Plaintiff, named as a defendant in Plaintiff's open complaint, and therefore requested that a non-biased investigator be assigned to Plaintiff's case. MacAlpine denied any bias and gave the order for the proceedings to continue.

110.   On March 15, 2017, Plaintiff filed a Retaliation and Discrimination Complaint with the City of Fresno. Plaintiff's complaint named Donis, Cabral, Chew, Reitz, Creazy, and MacAlpine as offenders, and notified the City of the request for MacAlpine's removal as investigator over Plaintiff's December 12, 2016, Hostile Work Complaint matter, for reason of bias, and for MacAlpine being named in Plaintiff's 2016 filed EEOC discrimination complaint. The City failed to intervene for this matter, however contrary to the City's removal of MacAlpine as investigator over Plaintiff's December 2015 investigative matter.  This investigation, led by MacAlpine, moved forward on March 17, 2017.

111.   On March 29, 2017, the City of Fresno issued its final decision on Plaintiff's appeal and sustained the charges and the punitive discipline related to the June 27, 2014, allegations.

112.   In May 2017, MacAlpine delivered to Plaintiff a Proposed 8-shift Suspension for Plaintiff's complaint of hostile work environment initiated on December 12, 2016.

113.   In June 2017, employees of Defendant Fire Department made station selections for a new department-wide transfer. When Plaintiff's selection opportunity came around, Plaintiff chose Station 21 in the hope that a new station would be free of the harassment, discrimination, and retaliation which Plaintiff had faced thus far. When the draw was complete, the captain of Station 21, told Plaintiff that he was "warned not to work with [Plaintiff]" by other employees of Defendant Fire Department.  Station 21 Captain was told that he himself could "end up getting fired" while working with Plaintiff. Station 21 captain also told Plaintiff that he was "scared to work with [Plaintiff]" and that he "had to pray about [working with Plaintiff]." Several other employees even started a betting pool about whether or not Station 21 captain would even "make it six weeks".

LAW OFFICE OF
STEVE WHITWORTH

Plaintiff is informed and believes, and thereon alleges, that Defendants, at this time working in another fire station within the department, made defamatory statements about Plaintiff to Station 21's captain in order to create a Hostile Work Environment for Plaintiff.

114.   On June 3, 2017, Plaintiff discovered mucus and phlegm in his personal and visibly marked juice bottle which was kept inside the refrigerator at the fire station. Plaintiff reported the incident to Captain Richard Willard, but Willard took no action. Plaintiff sent a follow up email to Willard on June 5, 2017.  On June 10, 2017, Willard notified Battalion Chief Van Tassel of the June 3, 2017, incident. Van Tassel took no action regarding the incident.

115.   On June 20, 2017, Plaintiff emailed Donis and Cardell regarding the June 3, 2017, incident. Donis replied immediately that the incident would be investigated.

116.   On June 30, 2017, Plaintiff participated in a Skelly hearing for the events of December 12, 2016. Donis and counsel for Defendant Fire Department were also present. On record, legal counsel for Plaintiff put Donis on notice that MacAlpine was a biased investigator, that MacAlpine had falsified evidence in the Internal Affairs report regarding the incident, and that to discipline Plaintiff for matters related to his December 12, 2016 complaint was unlawful under EEOC law.

117.   On July 1, 2017, Plaintiff transferred to Station 21, the most remote and rural station, located in a city 30 minutes outside of Fresno, hoping this move would provide an environment free of the discrimination, harassment, and retaliation, for which Plaintiff had now faced for years.

118.   On July 14, 2017, Plaintiff met with David Bolton, Senior Human Resources Risk Analyst for the City of Fresno, for an investigation into the June 3, 2016 spit in the juice bottle incident. No findings were made, and no actions were taken as a result of this investigation.

119.   On July 18, 2017, Plaintiff met with Union President Carlton Jones and Union Representative Captain Robert Castillo. Jones demanded Plaintiff share details about his appeal and grievances if Plaintiff wanted Union support with those matters. Plaintiff presented to Jones a document from an Internal Affairs report containing clear evidence of FBOR violation committed against Plaintiff during the June 27, 2014, incident.

120.    On August 11, 2017, Counsel for the Fresno Fire Department Union issued a response to Plaintiff's request for support, denying financial and legal assistance for all five of Plaintiff's grievances, which had by now gone unaddressed since September 2015, and for Plaintiff's appeal of the suspension for reporting a Hostile Work Environment on December 12, 2016.

121.    On August 15, 2017, Donis and MacAlpine officially issued an 8-shift Suspension Order regarding Plaintiff's December 12, 2016, reporting of a hostile work environment. Donis made no amendments to the original discipline order, nor the list of charges issued against Plaintiff by Investigator MacAlpine, despite Donis' clear understanding that legal counsel for Plaintiff had determined MacAlpine was a biased investigator who had falsified evidence in the report on which the suspension was based, and with full disclosure that taking such action against Plaintiff was prohibited under EEOC law.

122.    On August 30, 2017, the Union agreed to support Plaintiff's appeal for the 8-shift suspension, on which information counsel for Plaintiff based its decision to file the appeal on Plaintiff's behalf.

123.    On September 13, 2017, Plaintiff attended a Union meeting to discuss the appeal and grievances. Strangely, Plaintiff was not allowed to ask any questions of the Union board. After the meeting, Plaintiff asked a union board member and fire administrator "why" the plaintiff was being treated this way and receiving no help from the union. Board member replied, "Self-Preservation." Plaintiff asked, "At any cost," and, after a brief pause, the board member responded, "Not, at any cost."

124.    In October 2017, Plaintiff sent emails to 14 members of the Union board requesting support for Plaintiff's outstanding grievances, and his already filed appeal. No board members responded, and Plaintiff received no support.

125.    On January 10, 2017, Plaintiff's wife was fired from her job at the Pediatric Intensive Care Unit at Valley Children's Hospital in Madera, California, despite exemplary performance. Fresno Fire Chief Kerri Donis' sister, Kelly Mason, worked in the same unit of the hospital. Plaintiff

LAW OFFICE OF
STEVE WHITWORTH

1   is informed and believes, and thereon alleges that Donis and Mason conspired and took action to

2   have Plaintiff's wife fired as retaliation for Plaintiff's reporting of a Hostile Work Environment.

3   126.   On February 28, 2018, after years of deliberate sanction or negligent inaction by

4   Defendant Fire Department and its personnel, the City of Fresno, the Union, and the EEOC, Plaintiff

5   was forced to obtain a right-to-sue notice in order to obtain some remedy for his years of injury.

6
7   **FIRST CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000(e)(2)**
**(Against Defendants Fire Department, MacAlpine and Donis)**

8   127.   Plaintiff re-alleges and incorporates by reference, each and every allegation contained

9   in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and

10  believes and based on this information and belief alleges the following facts.

11  128.   Pursuant to 42 U.S.C. § 2000(e)(2), "It shall be an unlawful employment practice for

12  an employer…(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

13  against any individual with respect to his compensation, terms, conditions, or privileges of

14  employment, because of such individual's race, color, religion, sex, or national origin."

15  129.   Defendants Donis and MacAlpine, as the times referenced herein, were employees of

16  Defendant Fire Department and supervisors empowered to make employment decisions affecting

17  Plaintiff.

18  130.   In September 2014, Defendant MacAlpine issued a 5-shift suspension to Plaintiff in

19  September 2014, and refused to accept witness testimony exonerating Plaintiff.

20  131.   Plaintiff is informed and believes, and thereon alleges that MacAlpine's racial

21  prejudice against Plaintiff, an African-American, was a motivating factor in the issuance of the

22  September 2014 unwarranted disciplinary action.

23  132.   Plaintiff is informed and believes, and thereon alleges that MacAlpine's issuance of

24  the September 2014 unwarranted disciplinary action to Plaintiff was not based on lawful reasons.

25  133.   On August 15, 2017, Defendants Donis and MacAlpine issued an 8-shift suspension

26  order regarding Plaintiff's December 12, 2016, reporting of a hostile work environment, despite

27  Donis' clear understanding that counsel for Defendant Fire Department had determined MacAlpine

28

LAW OFFICE OF
**STEVE WHITWORTH**

was a biased investigator and had falsified evidence in the report on which the suspension was based.

134.    Plaintiff is informed and believes, and thereon alleges that Donis and MacAlpine's racial prejudice against Plaintiff, an African-American, was a motivating factor in the issuance of this unwarranted disciplinary action.

135.    Plaintiff is informed and believes, and thereon alleges that Donis and MacAlpine's issuance of this unwarranted disciplinary action to Plaintiff was not based on lawful reasons.

136.    Defendants Donis and MacAlpine acted with malice and oppression in the commission of the above acts, and as such their conduct warrants imposition of punitive damages.

## SECOND CAUSE OF ACTION
### RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(e)(3)
**(Against All Defendants)**

137.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

138.    Pursuant to 42 U.S.C. § 2000(e)(3), "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

139.    In August 2010, Plaintiff notified Defendants Gill and Caldwell, his superiors, that Plaintiff opposed the disparate treatment of Defendants, based on Plaintiff's prior opposition to their unlawful employment practices.

140.    Defendants Gill and Caldwell retaliated against Plaintiff for his opposition by forcing Plaintiff to attend a disciplinary meeting without representation.

141.    Plaintiff is informed and believes and thereon alleges that the Defendants Gill and Caldwell subjected him to unwarranted disciplinary action because of Plaintiff's opposition to Defendants Gill and Caldwell's unlawful employment practices.

LAW OFFICE OF
**STEVE WHITWORTH**

142.    Plaintiff reported to Fire Chief Bruegman during the week of September 6, 2010 regarding Defendants Gill and Caldwell's refusal to allow Plaintiff representation at the August 2010 interrogation, an unlawful employment practice.

143.    On October 31, 2010, Defendants Gill and Tobias subjected Plaintiff to an adverse employment action by issuing Plaintiff a disciplinary notice based on false charges.

144.    Plaintiff is informed and believes, and thereon alleges, that the Defendants Gill and Tobias subjected him to unwarranted disciplinary action because of Plaintiff's reporting to Chief Bruegman,  Gill and Caldwell's unlawful employment practices.

145.    Defendants Battalion Chief Ronald Stogdell, Battalion Chief Casey Clark and Captain  Nicholas Martino subjected plaintiff to an adverse employment action when, on April 20, 2011, Stogdell and Martino ordered Plaintiff to appear for another interrogation without representation regarding an alleged tardy appearance to work and told Plaintiff that the form would not be a disciplinary action, but would only be used to "fix policy," and thereafter in September 2011 Clark presented Plaintiff with a 5-shift suspension as punishment for the Tardy Report Form Plaintiff signed on April 20, 2011.

146.    Plaintiff is informed and believes, and thereon alleges, that the Defendants Stogdell, Clark and Martino subjected him to unwarranted disciplinary action in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him, and for the same motivations which exposed Plaintiff to other recently falsified charges, intentional breaches in confidentiality, explicit threats, defamation, and acts of intent to violate and intimidate.

147.    From July 2, 2013, to October 31, 2013, Defendant Captain Daniel Escobar subjected Plaintiff to adverse employment action by harassing him and using a deliberating intimidating manner for communications with Plaintiff.

148.    Plaintiff is informed and believes, and thereon alleges, that Defendant Escobar subjected him to unwarranted disciplinary action in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him.

149.    From May 2014 to July 29, 2014, Defendants Captain Oscar Betancourt, Battalion

COMPLAINT FOR DAMAGES

Chief Tony Escobedo, and Administrative Chief Jonathan Chew subjected Plaintiff to intimidation by issuing a Letter of Understanding to Plaintiff without a proper investigation or opportunity for Plaintiff to respond. On June 27, 2014, Betancourt and Escobedo ordered Plaintiff to appear for another interrogation without representation. On July 29, 2014, Escobar and Chew issued a written reprimand for unsubstantiated claims made against Plaintiff.

150.    Plaintiff is informed and believes, and thereon alleges, that Defendants Escobar, Betancourt, Escobedo and Chew subjected him to unwarranted disciplinary action in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him.

151.    In September 2014, Defendant MacAlpine subjected Plaintiff to an adverse employment action by issuing a 5-shift suspension to Plaintiff for the July 27, 2014, interrogation without representation, while refusing to accept witness testimony exonerating Plaintiff.

152.    Plaintiff is informed and believes, and thereon alleges, that Defendants Betancourt, Escobedo and Chew subjected him to unwarranted disciplinary action in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him.

153.    In May 2015, Defendant Fire Department took an adverse employment action against Plaintiff by issuing, through its counsel, to Plaintiff a "corrected" version of the November 2011 fine in lieu of suspension, despite the fact it was over 3 and a half years old and had never been signed.

154.    Plaintiff is informed and believes, and thereon alleges, that Defendant Fire Department subjected him to unwarranted disciplinary action in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him.

155.    In October 2015, Defendants Donis and MacAlpine subjected Plaintiff to adverse employment action by issuing Plaintiff a 2-shift suspension regarding the fine in lieu of suspension, though 4 of the 6 charges were dropped.

156.    Plaintiff is informed and believes, and thereon alleges, that Donis and MacAlpine subjected him to unwarranted disciplinary action in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him, specifically the written Skelly response Plaintiff presented to Donis via email on June 24, 2015.

LAW OFFICE OF
STEVE WHITWORTH

157.   In November 2015, Defendants Donis and Battalion Chief Tom Cope subjected Plaintiff to an adverse employment action by re-issuing to Plaintiff two of the charges that had been dropped from the October 2015 suspension. Plaintiff appealed the suspension.

158.   Plaintiff is informed and believes and thereon alleges that Donis and Cope reissued the charges in retaliation for Plaintiff filing an appeal of the charges in November 2015.

159.   In July 2016, Defendant City of Fresno Plaintiff subjected Plaintiff to an adverse employment action when Plaintiff notified Jeff Cardell, Director of Personnel for the City of Fresno, that Plaintiff was filing a complaint with the EEOC and requesting separation from the people harassing and discriminating against him, and Cardell refused to grant Plaintiff's request.

160.   Plaintiff is informed and believes and thereon alleges that Defendant Fire Department refused to allow Plaintiff to transfer away from his harassers in retaliation for Plaintiff filing an EEOC complaint on July 20, 2016.

161.   On August 23, 2016, Defendant Fire Department subjected Plaintiff to an adverse employment action by presenting, through its counsel, false statements and falsified evidence at the appeal hearing for the events of June 27, 2014 and, based on said falsified evidence, sustaining the suspension ruling against Plaintiff.

162.   Plaintiff is informed and believes and thereon alleges that Defendant Fire Department presented falsified evidence and sustained the suspension ruling in retaliation for Plaintiff filing an EEOC complaint on July 20, 2016.

163.   On December 12, 2016, Defendants, Administrative Deptuy Chief Richard Cabral, Battalion Chief Randall Reitz, and Captain John Creasy, subjected Plaintiff to an adverse employment action by issuing a disciplinary action in retaliation for Plaintiff filing an EEOC complaint on July 20, 2016.

164.   Plaintiff is informed and believes, and thereon alleges, that Cabral, Reitz, and Creasy issued the disciplinary action in retaliation for Plaintiff's December 12, 2016, in retaliation for Plaintiff filing an EEOC complaint on July 20, 2016.

165.   On January 23, 2017, Defendant Donis subjected Plaintiff to adverse employment

LAW OFFICE OF
STEVE WHITWORTH

COMPLAINT FOR DAMAGES

action when Donis denied Plaintiff's January 19, 2017, request to be separated from his harassers.

166.    Plaintiff is informed and believes, and thereon alleges, that Donis denied Plaintiff's request in retaliation for Plaintiff's December 12, 2016, filing of a Hostile Work Environment complaint and subsequent January 19, 2017, email regarding the same, and Plaintiff's January 2017 filing of a grievance, Plaintiff's 5th grievance.

167.    On June 3, 2017, Defendants Captain Richard Willard and Battalion Chief Van Tassel subjected Plaintiff to adverse employment action by failing to take any action after Plaintiff reported that he had discovered mucus and phlegm in his visibly marked juice bottle.

168.    Plaintiff is informed and believes, and thereon alleges, that Willard and VanTassel refused to investigate Plaintiff's complaint in retaliation for Plaintiff's December 12, 2016 and March 15, 2017, filing of a Hostile Work Environment complaint.

169.    On August 5, 2017, Defendants Donis and MacAlpine subjected Plaintiff to adverse employment action by giving Plaintiff an 8-shift suspension for Plaintiff's December 12, 2016, complaint of hostile work environment.

170.    Plaintiff is informed and believes, and thereon alleges, that Donis and MacAlpine issued Plaintiff the suspension in retaliation for Plaintiff's December 12, 2016, filing of a Hostile Work Environment complaint.

171.    In each instance, Plaintiff's conduct for which Defendants retaliated against him was the protected conduct of filing and reporting discrimination, and/or Plaintiff's opposition of an unlawful employment practice.

172.    Defendants acted with malice and oppression in the commission of the above acts, and as such their conduct warrants imposition of punitive damages.

### THIRD CAUSE OF ACTION
### HARASSMENT IN VIOLATION OF 42 U.S.C. § 2000(e)(3)
### (Against Defendant Fire Department)

173.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

LAW OFFICE OF
STEVE WHITWORTH

174.   In August 2010, Defendant Battalion Chief Charles Tobais subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation by calling Plaintiff into Tobias' office alone and telling Plaintiff that Tobias had heard about Plaintiff's complaint to Fire Chief Bruegman, and that, "Someone did that to [Tobias] once, and they regretted it." Plaintiff understood this statement to be a threat of retaliation, up to and including physical violence. Defendant Harvey's statements conveyed in no uncertain terms that Plaintiff would be killed if he continued speaking out against the Department, and that even if he did stop, his life may still be in danger.

175.   In November 2010, Defendant Captain Mark Harvey subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation by deliberately telling Plaintiff threatening stories about firefighters killing other firefighters because the firefighter had spoken out against the rest of the station. Harvey showed Plaintiff a video clip from the film Edge of Darkness in which a whistleblower is brutally murdered on camera by a hit and run driver immediately following her revelations to the authorities. Defendant Harvey made these statements just two months after Plaintiff's reports to Fire Chief Bruegman.

176.   In or about August 2011, Defendant William Hunter subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation by, without Plaintiff's knowledge or consent, installing an audio/video recording device in the fire engine that Plaintiff regularly operated.

177.   From July 2, 2013, to October 31, 2013, Defendant Captain Daniel Escobar subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation by harassing him and using a deliberating intimidating manner for communications with Plaintiff.

178.   From May 2014 to July 29, 2014, Defendants Captain Oscar Betancourt, Battalion Chief Tony Escobedo, and Administrative Chief Jonathan Chew subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation by issuing a Letter of Understanding to Plaintiff without a proper investigation or opportunity for Plaintiff to respond. On June 27, 2014, Betancourt and Escobedo ordered Plaintiff to appear for another interrogation

LAW OFFICE OF
STEVE WHITWORTH

without representation. On July 29, 2014, Escobar and Chew issued a written reprimand for unsubstantiated claims made against Plaintiff.

179.    In July 2016, Defendant City of Fresno subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation when Plaintiff notified Jeff Cardell, Director of Personnel for the City of Fresno, that Plaintiff was filing a complaint with the EEOC and requesting separation from the people harassing and discriminating against him, and Cardell refused to grant Plaintiff's request.

180.    On June 3, 2017, Defendants Captain Richard Willard and Battalion Chief Van Tassel subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation, and for filing against hostile work conditions, by failing to take any action after Plaintiff reported that he had discovered mucus and phlegm in his visibly marked juice bottle.

181.    Plaintiff is informed and believes and thereon alleges that on January 10, 2018, Defendant Donis subjected Plaintiff to intimidation in retaliation for Plaintiff's reports of discrimination and retaliation when she and her sister, Kelly Mason, conspired and took action to have Plaintiff's wife fired.

182.    Plaintiff did not consent to any of the above conduct.

183.    The conduct was so severe that it altered Plaintiff's working conditions by making him truly scared for his career and for the safety of Plaintiff and his family.

184.    Based on this conduct, Plaintiff perceived his working environment to be hostile.

185.    A reasonable person in the same circumstances would also find this working environment to be hostile.

186.    Defendants acted with malice and oppression in the commission of the above acts, and as such their conduct warrants imposition of punitive damages.

## FOURTH CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT [CA GOV. CODE § 12940(J)(1), (3)]
#### (Against All Defendants)

187.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and

LAW OFFICE OF
STEVE WHITWORTH

believes and based on this information and belief alleges the following facts.

188.    Plaintiff was at all times relevant to the events referenced herein an employee of Defendant Fire Department, and the individually named Defendants at all times relevant to the events referenced herein employees of Defendant Fire Department empowered to make employment decisions directing affecting Plaintiff.

189.    The conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), because he was a member of a protected class, specifically an African American and a known whistleblower regarding Defendant Fire Department's unlawful employment practice.

190.    The harassing and hostile conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), was severe and pervasive.

191.    A reasonable African American or Whistleblower in Plaintiff's circumstances would consider the work environment to be hostile or abusive.

192.    Plaintiff considered the work environment to be hostile and abusive.

193.    Plaintiff was harmed by losing shifts, lost promotions and job opportunities, and emotional and mental anguish.

194.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

**FIFTH CAUSE OF ACTION**
**AIDING AND ABETTING HARASSMENT [CA GOV. CODE § 12940(I)]**
**(Against All Defendants)**

195.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

196.    Pursuant to California Government Code § 12940(i), it is unlawful for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under California Government Code § 12940.

197.    Plaintiff is informed and believes and thereon alleges that, based on the conduct

LAW OFFICE OF
**STEVE WHITWORTH**

specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), each individual Defendant was aware of the harassing conduct the other individual defendants were taking against Plaintiff, and that each Defendant assisted the others in carrying out the harassment.

198.   Specifically, From May 2014 to July 29, 2014, Defendants Captain Oscar Betancourt, Battalion Chief Tony Escobedo, and Administrative Chief Jonathan Chew aided and abetted each other's harassment of Plaintiff by issuing a Letter of Understanding to Plaintiff without a proper investigation or opportunity for Plaintiff to respond. On June 27, 2014, Betancourt and Escobedo ordered Plaintiff to appear for another interrogation without representation. On July 29, 2014, Escobar and Chew issued a written reprimand for unsubstantiated claims made against Plaintiff

199.   In July 2016, Defendant City of Fresno aided and abetted Defendants' harassment of when Plaintiff notified Jeff Cardell, Director of Personnel for the City of Fresno, that Plaintiff was filing a complaint with the EEOC and requesting separation from the people harassing and discriminating against him, and Cardell refused to grant Plaintiff's request.

200.   On June 3, 2017, Defendants Captain Richard Willard and Battalion Chief Van Tassel aided and abetted each other's harassment of Plaintiff by failing to take any action after Plaintiff reported that he had discovered mucus and phlegm in his visibly marked juice bottle.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PREVENT HARASSMENT [CA GOV. CODE § 12940(K)]**
**(Against Defendant Fire Department)**

201.   Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

202.   Pursuant to California Government Code § 12940(k), it is unlawful for an employer to take all reasonable steps to prevent harassment from occurring.

203.   In or about 2010, Plaintiff reported to Fire Captain and Union President Jerald Smith, his superior at Defendant Fire Department, the harassment by Defendants Gill and Tobias.  Fire Captain and Union President Jerald Smith took no action.

LAW OFFICE OF
**STEVE WHITWORTH**

204.    In or about August 2012, Plaintiff's then-attorney (and current counsel) sent a letter to Defendant Fire Department regarding the continuous pattern of retaliation against Plaintiff. Plaintiff was forced to continue work with his harassers.

205.    On June 3, 2017, Plaintiff discovered mucus and phlegm in his visibly marked juice bottle. Plaintiff reported the incident to Captain Richard Willard, but Willard took no action. Plaintiff sent a follow up email to Willard on June 5, 2017, and on June 10, 2017, Willard notified Battalion Chief Van Tassel of the June 3, 2017, incident. Van Tassel took no action regarding the incident.

206.    On June 24, 2015, Plaintiff submitted via email to Fire Chief Kerri Donis a written Skelly response regarding the corrected fine in lieu of suspension and reported the extensive harassment, discrimination, and retaliation to which Plaintiff had been subjected. Chief Donis took no action and initiated no investigation based on Plaintiff's report.

207.    In July 2016, Plaintiff notified Jeff Cardell, Director of Personnel for the City of Fresno, that Plaintiff was filing a complaint with the EEOC and requested separation from the people harassing and discriminating against him. Plaintiff's request was never granted.

208.    Based on the conduct specifically identified above in paragraphs 194-201, Defendant Fire Department failed to take all necessary steps to prevent harassment from occurring because Plaintiff was required to continue working with his harassers.

209.    Defendant Fire Department failed to take all necessary steps to prevent Defendants from harassing Plaintiff and in fact actively encouraged these activities.

## SEVENTH CAUSE OF ACTION
## RETALIATION AGAINST A WHISTLEBLOWER [CA LABOR CODE § 1102.5(B)]
### (Against All Defendants)

210.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

211.    Plaintiff was at all times relevant to the events referenced herein an employee of Defendant Fire Department, and the individually named Defendants at all times relevant to the

33

events referenced herein employees of Defendant Fire Department empowered to make employment decisions directing affecting Plaintiff.

212.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Defendants were aware that Plaintiff had reported Defendants' unlawful employment practices to an agency or employee with authority to investigate Plaintiff's claims, or that he was going to do so.

213.    In each instance of the reports for which Plaintiff was retaliated against, Plaintiff had reasonable cause to believe that his reports disclosed one or more violations of federal, state, or local statutes.

214.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Plaintiff suffered an adverse employment action.

215.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Plaintiff's reports of Defendants' unlawful employment practices to an agency or employee with authority to investigate Plaintiff's claims, or Defendants' belief that he was going to do so, was a contributing factor in Defendants' decisions to take adverse employment action against Plaintiff.

216.    Plaintiff was harmed by losing shifts, lost promotions and job opportunities, and emotional and mental anguish.

217.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

**EIGHTH CAUSE OF ACTION**
**RETALIATION [CA LABOR CODE § 1102.5(B)]**
**(Against All Defendants)**

218.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

219.    Plaintiff was at all times relevant to the events referenced herein an employee of Defendant Fire Department, and the individually named Defendants at all times relevant to the

events referenced herein employees of Defendant Fire Department empowered to make employment decisions directing affecting Plaintiff.

220.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Defendants were aware that Plaintiff had reported Defendants' unlawful employment practices to an agency or employee with authority to investigate Plaintiff's claims, which is a protected activity.

221.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Defendants subjected Plaintiff to an adverse employment action.

222.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Plaintiff's reports of Defendants' unlawful employment practices to an agency or employee with authority to investigate Plaintiff's claims, or Defendants' belief that he was going to do so, was a substantial factor in Defendants' decisions to take adverse employment action against Plaintiff.

223.    Plaintiff was harmed by losing shifts, lost promotions and job opportunities, and emotional and mental anguish.

224.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

### NINTH CAUSE OF ACTION
### AIDING AND ABETTING RETALIATION [CA CODE OF REGULATIONS § 11020(a)(2)]
### (Against All Defendants)

225.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

226.    Pursuant to California Code of Regulations §§ 11020(a)(2), it is unlawful to encourage or solicit any person to violate the provisions of the Act contained in California Code of Regulations §§ 10000 et seq.

227.    Plaintiff is informed and believes, and thereon alleges that, based on the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation),

LAW OFFICE OF
STEVE WHITWORTH

and 157 to 165 (Harassment), each individual Defendant was aware of the retaliatory conduct the other individual defendants were taking against Plaintiff, and that each Defendant assisted the others in carrying out the harassment.

228.    Specifically, in August 2010, Defendants Gill and Caldwell aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by forcing him to attend a disciplinary meeting without representation.

229.    On October 31, 2010, Defendants Gill and Tobias aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by issuing Plaintiff a disciplinary notice based on false charges.

230.    Battalion Chief Ronald Stogdell, Battalion Chief Casey Clark and Captain  Nicholas Martino aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices when, on April 20, 2011, Stogdell and Martino ordered Plaintiff to appear for another interrogation without representation regarding an alleged tardy appearance in retaliation for Plaintiff's opposition to the pattern of discrimination, harassment and retaliation against him, specifically in retaliation for whistleblowing reporting of his supervisors for unlawful acts in violation of FBOR and to intimidate.

231.    From May 2014 to July 29, 2014, Defendants Captain Oscar Betancourt, Battalion Chief Tony Escobedo, and Administrative Chief Jonathan Chew aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by issuing a Letter of Understanding to Plaintiff without a proper investigation or opportunity for Plaintiff to respond. On June 27, 2014, Betancourt and Escobedo ordered Plaintiff to appear for another interrogation without representation. On July 29, 2014, Escobar and Chew issued a written reprimand for unsubstantiated claims made against Plaintiff

232.    In October 2015, Defendants Donis and MacAlpine aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by issuing Plaintiff a 2-shift suspension regarding the fine in lieu of suspension, though 4 of the 6 charges were dropped.

LAW OFFICE OF
STEVE WHITWORTH

233.    In November 2015, Defendants Donis and Battalion Chief Tom Cope aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by re-issuing to Plaintiff two of the charges that had been dropped from the October 2015 suspension.

234.    In July 2016, Defendant City of Fresno aided and abetted Defendants' retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices when Plaintiff notified Jeff Cardell, Director of Personnel for the City of Fresno, that Plaintiff was filing a complaint with the EEOC and requesting separation from the people harassing and discriminating against him, and Cardell refused to grant Plaintiff's request.

235.    On June 3, 2017, Defendants Captain Richard Willard and Battalion Chief Van Tassel aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by failing to take any action after Plaintiff reported that he had discovered mucus and phlegm in his visibly marked juice bottle.

236.    On August 5, 2017, Defendants Donis and MacAlpine aided and abetted each other's retaliation against Plaintiff for his opposition to Defendants' unlawful employment practices by giving Plaintiff an 8-shift suspension for Plaintiff's December 12, 2016, complaint of hostile work environment.

237.    Defendants' retaliation against Plaintiff was in violation of California Code of Regulations § 11021(C).

238.    In each instance, Plaintiff is informed and believes, and thereon alleges, that Defendants encouraged each other to retaliate against Plaintiff.

239.    In each instance, Plaintiff is informed and believes and thereon alleges that Defendants further encouraged each other to retaliate against Plaintiff by purposefully allowing the other Defendants to engage in retaliation against Plaintiff without any consequences.

240.    In each instance, Plaintiff is informed and believes and thereon alleges that Defendants further encouraged each other to retaliate against Plaintiff in order to make Plaintiff's work environment so uncomfortable that Plaintiff would be forced to resign.

LAW OFFICE OF
STEVE WHITWORTH

**TENTH CAUSE OF ACTION**
**THREAT OF PUNITIVE ACTION IN VIOLATION OF FBOR § 3253(e)(1)**
**(Against Defendants Fire Department, Stogdell, and Martino)**

241.   Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

242.   Pursuant to FBOR § 3253(e)(1), "The firefighter under interrogation shall not be subjected to offensive language or threatened with punitive action. A promise of reward shall not be made as an inducement to answering any question. The employer shall provide to, and obtain from, an employee a formal grant of immunity from criminal prosecution, in writing, before the employee may be compelled to respond to incriminating questions in an interrogation. Subject to that grant of immunity, a firefighter refusing to respond to questions or submit to interrogations shall be informed that the failure to answer questions directly related to the investigation or interrogation may result in punitive action."

243.   On April 20, 2011, Battalion Chief Ronald Stogdell and Captain  Nicholas Martino ordered Plaintiff to complete a "Tardy Report Form" that acknowledged his alleged wrongdoing within just a few hours and instructed Plaintiff not to submit any sort of explanatory statement. Stogdell and Martino told Plaintiff that signing the form would not be disciplinary but would instead be used "to fix policy."

**ELEVENTH CAUSE OF ACTION**
**DENIAL OF REPRESENTATION IN VIOLATION OF FBOR § 3253(i)**
**(Against Defendants Fire Department, Gill, Tobias, Stogdell and Martino)**

244.   Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

245.   Pursuant to FBOR § 3253(i), "Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that may result in punitive action against any firefighter, that firefighter, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation…"

246.   In September 2010, Defendants Gill and Caldwell refused to allow Plaintiff any

LAW OFFICE OF
STEVE WHITWORTH

representation at an interrogation for which Plaintiff could be disciplined.

247.    On or about September 20, 2010, Battalion Chief Tobias denied Plaintiff the right to representation at an interrogation.

248.    On April 20, 2011, Battalion Chief Ronald Stogdell and Captain Nicholas Martino ordered Plaintiff to appear for another interrogation regarding an alleged tardy appearance to work, and refused to allow Plaintiff any representation.

249.    On June 27, 2014, Tony Escobedo and captain Oscar Betancourt, ordered plaintiff into another disciplinary interrogation while refusing to allow Plaintiff any representation.

## TWELFTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF FBOR § 3254(a)
#### (Against All Defendants)

250.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

251.    Pursuant to FBOR § 3254(a), "(a) A firefighter shall not be subjected to punitive action, or denied promotion, or be threatened with that treatment, because of the lawful exercise of the rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure."

252.    In each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), Defendants subjected Plaintiff for punitive action for lawful exercise of rights under the FBOR.

## THIRTEENTH CAUSE OF ACTION
### DENIAL OF APPEAL IN VIOLATION OF FBOR § 3254(b)
#### (Against Defendants Fire Department, MacAlpine and Chew)

253.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

254.    Pursuant to FBOR § 3254(b), "Punitive action or denial of promotion on grounds other than merit shall not be undertaken by any employing department or licensing or certifying

LAW OFFICE OF
**STEVE WHITWORTH**

agency against any firefighter who has successfully completed the probationary period without providing the firefighter with an opportunity for administrative appeal."

255.    Plaintiff had completed his probationary period prior to the subject unwarranted disciplinary action.

256.    In or about December 2010, Defendant MacAlpine denied Plaintiff any appeal of the reprimand he had been issued.

257.    On July 29, 2014, Defendants Administrative Chief Jonathan Chew and MacAlpine refused to allow Plaintiff to appeal the reprimand issued to Plaintiff that same day.

**FOURTEENTH CAUSE OF ACTION**
**SUBMISSION TO PERSONNEL FILE WITHOUT REVIEW IN [FBOR § 3255]**
**(Against Defendants Fire Department and MacAlpine)**

258.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

259.    Pursuant to FBOR §3255, "A firefighter shall not have any comment adverse to his or her interest entered in his or her personnel file, or any other file used for any personnel purposes by his or her employer, without the firefighter having first read and signed the instrument containing the adverse comment indicating he or she is aware of the comment. However, the entry may be made if after reading the instrument the firefighter refuses to sign it. That fact shall be noted on that document, and signed or initialed by the firefighter."

260.    In or about November 2010, Smith and MacAlpine submitted documents regarding the October 31, 2010, disciplinary action in to Plaintiff's personnel file without showing Plaintiff the documents.

**FIFTEENTH CAUSE OF ACTION**
**FAILURE TO PROVIDE PERSONNEL FILE IN VIOLATION OF FBOR § 3256.5(b)**
**(Against Defendants Fire Department, Donis, Cabral, Reitz, Creasy and Tuggle)**

261.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

LAW OFFICE OF
**STEVE WHITWORTH**

COMPLAINT FOR DAMAGES

262. Pursuant to FBOR § 3256.5(b), "Each employer shall keep each firefighter's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available within a reasonable period of time after a request therefor by the firefighter."

263. Defendants Donis, Cabral, Reitz, Creasy, and Tuggle violated FBOR § 3256.5(b) when, from December 13 to 16, 2016, they refused to provide Plaintiff with the documentation supporting the December 12, 2016, disciplinary action against Plaintiff.

## SIXTEENTH CAUSE OF ACTION
### DENIAL OF RIGHTS IN VIOLATION OF FBOR § 3260
#### (Against All Defendants)

264. Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

265. Pursuant to FBOR § 3260(a), "It shall be unlawful for any employing department or licensing or certifying agency to deny or refuse to any firefighter the rights and protections guaranteed by this chapter."

266. Each instance of the conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), represents a denial of rights under the FBOR.

## SEVENTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Against All Defendants)

267. Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

268. Each instance of Defendants' conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), is outrageous.

269. Defendants intended to cause Plaintiff emotional distress.

270. Plaintiff suffered severe emotional distress including insomnia, migraines, and physical effects of stress so severe that he had to seek medical treatment.

LAW OFFICE OF
STEVE WHITWORTH

271.    Each instance of Defendants' conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment) was a substantial factor in causing Plaintiff's severe emotional distress.

272.    Defendants acted with malice and oppression and should therefore be liable for punitive damages.

## EIGHTEENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Against All Defendants)**

273.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

274.    In each instance of Defendants' conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), one or more Defendants were negligent.

275.    Plaintiff suffered serious emotional distress including insomnia, migraines, and physical effects of stress so severe that he had to seek medical treatment.

276.    Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress.

## NINETEENTH CAUSE OF ACTION
### DEFAMATION - SLANDER
**(Against All Defendants)**

277.    Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

278.    In February 2015, Plaintiff attempted to get a job with another Fire Department. Despite placing #3 out of 400 applicants, Plaintiff was passed over, with no explanation. Plaintiff is informed and believes and thereon alleges that member of Defendant Fire Department contacted and made defamatory statements to said Fire Department in order to ensure that Plaintiff would not get the job.

COMPLAINT FOR DAMAGES

279.   In June 2017, employees of Defendant Fire Department made station selections for a new department-wide transfer. When Plaintiff's opportunity for station selection came about, Plaintiff chose Station 21 in the hope that a new station would be free of the harassment, discrimination, and retaliation that he had faced for years thus far. When the draw was complete, the captain of Station 21 told Plaintiff that the captain was "warned not to work with [Plaintiff]" by other employees of Defendant Fire Department, and that the captain could "end up getting fired" for working with Plaintiff. The Station 21 captain also told Plaintiff that the captain was "scared to work with [Plaintiff]" and that the captain "had to pray about [working with Plaintiff]." Several other employees even started a betting pool about whether or not the captain would "make it six weeks". Plaintiff is informed and believes, and thereon alleges, that Defendants made defamatory statements about Plaintiff to the captain in order to create a Hostile Work Environment for Plaintiff.

280.   In both instances referenced above, Defendants' statements were false.

281.   In both instances referenced above, Defendants' statements were unprivileged.

282.   In both instances referenced above, Defendants' statements had a tendency to injure Plaintiff in his business.

283.   In both instances referenced above, Defendants' statements amounted to at least negligence, but clearly rise to the level of intentional conduct.

## TWENTIETH CAUSE OF ACTION
### INJUNCTIVE RELIEF
### (Against All Defendants)

284.   Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

285.   Plaintiff requests that the Court grant injunctive relief ordering Defendants to cease all discrimination, harassment, and retaliation against Plaintiff and ordering that Defendant Fire Department remove Plaintiff from working with his harassers.

286.   Each instance of Defendants' conduct specifically identified above in paragraphs 113 to 118 (Discrimination), 122 to 154 (Retaliation), and 157 to 165 (Harassment), represents conduct

LAW OFFICE OF
STEVE WHITWORTH

LAW OFFICE OF
**STEVE WHITWORTH**

that needs to be restrained in the interests of justice and equity.

287. Based on the conduct alleged herein, Plaintiff has a high likelihood of prevailing at trial on the merits of his Complaint.

288. If the Court does not grant injunctive relief, Plaintiff will suffer significant harm in the interim between now and the disposition of his Complaint.

### TWENTY-FIRST CAUSE OF ACTION
### FAILURE TO INVESTIGATE IN VIOLATION OF FRESNO CITY ADMINISTRATIVE ORDER 2-16
### (Against Defendant Donis)

289. Plaintiff re-alleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 126 inclusive, as though fully set forth herein. Plaintiff is informed and believes and based on this information and belief alleges the following facts.

290. In or about 2010, Plaintiff reported to Fire Captain and Union President Jerald Smith, his superior at Defendant Fire Department, the harassment by Defendants Gill and Tobias.  Fire Captain and Union President Jerald Smith took no action.

291. In July 2016, Plaintiff notified Cardell, Phillips, and Rudd Director of Personnel that Plaintiff was being harassed and requested separation from the people harassing and discriminating against him.

292. Plaintiff's report was never investigated.

293. On June 24, 2015, Plaintiff submitted via email to Fire Chief Kerri Donis a written Skelly response regarding the June 27, 2014 interrogation incident and Proposed 5-Shift Suspension, and reported the extensive threats, harassment, discrimination, and retaliation to which Plaintiff had been subjected.

294. Chief Donis took no action and initiated no investigation based on Plaintiff's report.

295. On June 3, 2017, Plaintiff discovered mucus and phlegm in his personal and visibly marked juice bottle, which was kept inside the refrigerator at the fire station. Plaintiff reported the incident to Captain Richard Willard, but Willard took no action.

296. On June 10, 2017, Willard notified Battalion Chief Van Tassel of the June 3, 2017,

incident. Van Tassel took no action regarding the incident.

297.    Pursuant to Fresno City Administrative Order 2-16, it is unlawful for a supervisor not to investigate a complaint such as the one Plaintiff made to Donis.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff complains and prays for judgment against Defendants and each of them as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For punitive damages according to proof;

4.    Interest, including pre and post judgment interest and adjustment for inflation;

5.    For costs of suit;

6.    On all Causes of Action, for reasonable attorneys' fees;

7.    For injunctive relief as deemed appropriate by the court; and

8.    For such other equitable relief as the Court may find to be just.

Dated:  March 28, 2018

            _/s/ Steve Whitworth_____
            STEVE WHITWORTH, Esq.
            Attorney for Plaintiff DAVID PHILLIPS-KERLEY

LAW OFFICE OF
**STEVE WHITWORTH**