1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

DAVID PHILLIPS-KERLEY,

        Plaintiff,

    v.

CITY OF FRESNO, a California
Governmental Entity,

        Defendant.

Case No. 1:18-cv-00438-AWI-BAM

**ORDER ON DEFENDANT'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT**

(Doc. No. 129)

Plaintiff David Phillips-Kerley filed this action on March 28, 2018 alleging various claims involving discrimination, harassment, retaliation and related misconduct against the Fresno Fire Department and various individual defendants. Doc. No. 1. The City of Fresno ("Defendant"), who is now the sole defendant in the case, has brought a motion for partial summary judgment as to most of Plaintiff's remaining claims. Doc. No. 129. The motion has been fully briefed and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). Doc. No. 135. For the reasons set forth below, the motion will be granted in part and denied in part.

# BACKGROUND

**A.      Factual Background**[1]

Plaintiff is a male of African American and Caucasian descent who was hired by the Fresno Fire Department in 2004, placing "top 12 of approximately 1000 applicants." Doc. No. 130-2 at 2:19-24. He received promotions and "high review[s]" from 2004 through 2009. Id. at 23-27. He began taking classes in 2008 to prepare for a promotion to the rank of fire captain and took his first practice captain's exam in 2009. Id. at 2:27-3:7. In order to focus on his family and his prospective promotion, Plaintiff stopped attending weekly meetings and other events with the Black Firefighters Union[2] during approximately the same period. Id. at 3:6-16.

In August 2010, Plaintiff complained to Captain Ron Caldwell that there were defamatory rumors about him at his assigned fire station, Station 12. Doc. No. 130-2 at 5:4-10. Captain Caldwell told Plaintiff that those spreading the rumors were "just joking" and disregarded Plaintiff's complaint. Id. at 5:9-13. Plaintiff asserts that Captain Caldwell's failure to investigate his complaint about the rumors was "motivated with intent to harm based on race." Id. at 5:10-17.

On September 8, 2010, while still at Station 12, Plaintiff was ordered to the captain's office after work by Captain Caldwell and Captain Michael Gill, a "Senior Black Firefighters Union Member," for interrogation. Doc. No. 130-2 at 5:18-26; Doc. No. 130-1 at 5:22-6:14. He was not given prior notice of the interrogation or the opportunity to secure representation. Id. at 6:4-13. Captain Caldwell and Captain Gill threatened Plaintiff in connection with the interrogation. Id. Plaintiff contends that the interrogation and threats were triggered by his

---

[1] This section is based primarily on Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Doc. No. 130-1, and Plaintiff's Additional Material Facts in Support of Plaintiff's Opposition. Doc. No. 130-2. In some instances, the Court might also reference the Third Amended Complaint ("3AC"), Doc. No. 64, which is the operative pleading in this action, and Defendant's Statement of Undisputed Material Facts (some of which are undisputed by Plaintiff). Doc. No. 129-2.

Plaintiff filed an ex parte application, which Defendant opposes, to file a sur-reply addressing evidentiary objections set forth in Defendant's reply. Doc. Nos. 133 & 134. No aspect of this order is predicated on a finding that Plaintiff's evidence is inadmissible, and the Court does not rely, in reaching the findings herein, on any evidence to which Defendant has made an objection. See Doc. Nos. 132-1, 132-2 & 132-3. Thus, Plaintiff's ex parte application will be denied as moot, and Defendant's evidentiary objections are overruled as moot.

[2] The Court understands the term "Black Firefighters Union" to refer to the same entity as the term "Black Firefighters Association," which is also used by the parties and in this order from time to time.

1  withdrawal from the Black Firefighters Union. Id. at 6:25-7:6.

2      Plaintiff reported Captain Caldwell and Captain Gill to Fire Chief Randy Bruegman the

3  next day. Doc. No. 130-2 at 7:10-13. Fire Chief Bruegman, whose was transferred out of the

4  Fresno Fire Department a week later, told Plaintiff, "[Y]ou can't allow yourself to be placed in a

5  situation that is unsafe." Id. at 7:12-17. Fire Chief Bruegman did not investigate the incident,

6  notify anyone of the incident, or provide Plaintiff with any additional input regarding the incident.

7  Id. at 7:17-27.

8      Immediately following Fire Chief Bruegman's departure from the Fresno Fire Department,

9  Plaintiff spoke with Battalion Chief Charles Tobias. Doc. No. 130-2 at 8:10-13. Battalion Chief

10 Tobias told Plaintiff that he would "regret" reporting Captain Gill to Fire Chief Bruegman because

11 it violated the chain of command. Id. at 8:15-24.

12     Concerned for his safety, Plaintiff requested an emergency transfer out of Station 12. Doc.

13 No. 130-2 at 8:24-28. After Plaintiff made that request, Captain Gill falsely accused him of

14 insubordination and losing a tarp. Id. at 9:5-22. This led to a letter of reprimand by Captain Gill

15 against Plaintiff that was authorized by Interim Fire Chief Joel Aranaz. Id. at 10:20-24. Plaintiff

16 appealed the reprimand but the appeal was denied by Interim Fire Chief Aranaz. Id. at 10:24-

17 11:12.

18     Plaintiff transferred to Station 14, under Captain Mike Harvey, on November 7, 2010. Doc.

19 No. 130-2 at 11:14-16. Captain Harvey ordered Plaintiff to sign a "behavior contract" and told

20 Plaintiff that his conduct would be documented. Id. at 11:19-23. Plaintiff came to learn that

21 Captain Gill had sent an email captioned "Insubordination" to Captain Harvey during Plaintiff's

22 first shift at Station 14. Id. at 11:23-12:8.

23     In December 2010, Plaintiff requested an appointment with Fire Marshal Don MacAlpine

24 to view his personnel file. Doc. No. 130-2 at 12:9-12. While viewing his personnel file, Plaintiff

25 discovered an "unlawfully entered" document composed by Captain Gill. Id. at 130-2 at 12:9-16.

26 Fire Marshal MacAlpine refused to remove the document from the file or to provide Plaintiff with

27 a copy of the document. Id. at 12:16-21.

28     On January 6, 2011, Captain Harvey told Plaintiff that there was "racial strife going on"

1   (Plaintiff's words) and that, in other fire departments, firefighters were killed by their colleagues

2   for being "rats." Doc. No. 130-2 at 12:28-13:22. Later that evening, Captain Harvey showed

3   Plaintiff a scene from a movie in which a whistleblower gets killed. Id. at 13:22-14:4. Plaintiff

4   understood that to be a warning not to make reports against anyone in the Fresno Fire Department.

5   Id. at 14:4-9.

6         On April 20, 2011, Plaintiff was reporting to Station 19. Doc. No. 130-2 at 14:15-16.

7   While driving to the station, Plaintiff stopped to investigate a traffic accident involving potential

8   injuries. Id. at 14:15-24. Upon arrival at the station, Plaintiff was directed to Battalion Chief

9   Ronald Stodgell's office, where he was subjected to an unlawful interrogation in which his rights

10  under the Firefighters Procedural Bill of Rights Act ("FPBORA")[3] were violated. Id. at 14:23-

11  15:9. Later that same day, Plaintiff was required by Deputy Chief Timothy Henry to fill out a

12  tardy form without setting forth an explanation for his tardiness. Id. at 15:15-20.

13        On September 22, 2011, Chief Casey Clark served Plaintiff with a proposed five-shift

14  suspension, authorized by Interim Fire Chief Aranaz, for Plaintiff's April 2011 tardiness. Doc. No.

15  130-2 at 15:21-16:8. That five-shift suspension was later reduced to a $100 fine by Interim Fire

16  Chief Aranaz, Deputy Chief Henry and City Attorney Tommi Saghatelian, id. at 16:27-17:9, but

17  Interim Fire Chief Aranaz later attempted to enforce the five-shift suspension anyway. Id. at 17:9-

18  19. Plaintiff appealed the suspension, but the City of Fresno's Personnel Director, Juanita Chavez

19  Aranaz, who was Interim Fire Chief Aranaz's wife, failed to process the appeal. Id. at 17:20-18:9.

20        In March 2012, Captain Harvey was replaced by Captain William Hunter. Doc. No. 130-2

21  at 18:9-13. Plaintiff had worked well with Captain Hunter several years earlier at Station 6, but

22  Captain Hunter began treating Plaintiff with hostility soon after Captain Hunter arrived at Station

23  14. Id. at 18:10-18. For example, Captain Hunter mounted an audio/video camera in the fire

24  engine without Plaintiff's consent and set the camera to record while Plaintiff was driving. Id. at

25  18:18-24. Plaintiff requested that the camera be removed but Captain Hunter did not remove it. Id.

26  at 18:23-27.

27  ———————————————

28  [3] The acronyms "FPBORA" and "FBOR" have both been used to refer to the Firefighters Procedural Bill of Rights
Act in this litigation.

In April 2012, Plaintiff caused a letter to be sent to the Fresno City Attorney Tina R. Griffin informing the City of Fresno of acts of harassment against Plaintiff by supervisors in the Fresno Fire Department. Doc. No. 130-2 at 19:6-12. The complaint was not investigated and the next month, Plaintiff received notice from Fire Marshal MacAlpine that Plaintiff, himself, was being investigated for violations of various policies. Id. at 19:12-19.

In July 2013, Plaintiff transferred to Station 20 under Captain Daniel Escobar. Doc. No. 130-2 at 20:3-6. Captain Escobar harassed Plaintiff over Plaintiff's cellphone use three times on Plaintiff's first day and sent Plaintiff an email purporting to "memorialize" a conversation about cell phone use. Id. at 20:6-15. Further, Captain Escobar singled Plaintiff out, raised his voice at Plaintiff, and badgered Plaintiff about "menial tasks" that only Plaintiff was asked to perform. Id. at 20:16-20.

On August 7, 2013, Plaintiff made a harassment complaint against Captain Escobar. Doc. No. 130-2 at 20:21-26. The complaint was not investigated properly and Captain Escobar continued to harass Plaintiff. Id. at 20:21-21:7.

On August 8, 2013, Captain Escobar compiled a list of supposed violations on Plaintiff's part that led to a letter of reprimand authorized by Fire Chief Kerri Donis that Plaintiff was not permitted to appeal. Doc. No. 130-2 at 21:10-27.

On June 27, 2014, Battalion Chief Escobedo arrived at Station 20. Doc. No. 130-2 at 22:4-6. Soon thereafter, Captain Betancourt ordered Plaintiff into his office at Battalion Chief Escobedo's request. Id. at 22:6-9. Plaintiff was interrogated for two hours in violation of his rights. Id. at 22:9-15. Battalion Chief Escobedo confirmed that Plaintiff could be disciplined but nonetheless denied Plaintiff's request for representation during the interrogation. Id. at 22:15-21. Further, Plaintiff was told that refusal to answer questions could be deemed insubordination. Id. at 22:21-25.

A short time later, Fire Marshal MacAlpine commenced an investigation into claims made by Battalion Chief Escobedo against Plaintiff. Doc. No. 130-2 at 23:5-11. In 2009, Fire Marshal MacAlpine was "the primary defendant" in a lawsuit that another firefighter, Carlton Jones, brought against the Fresno Fire Department for racial discrimination. Id. at 23:10-21. Jones

worked under Fire Marshal MacAlpine and alleged that Fire Marshal MacAlpine once stated that "white men were the most valuable, followed by Asian men, and that black men ranked the lowest in terms of their value, and that women were ranked below all men." Id. at 23:21-24:8.

In conducting his investigation of Plaintiff, Fire Marshal MacAlpine disregarded Plaintiff's defenses, employed fraudulent and otherwise improper investigatory methods (including the falsification of statements), and sustained all charges against Plaintiff, which lead to issuance of a proposed 10-shift suspension on March 4, 2015. Doc. No. 130-2 at 24:8-28. After the proposed 10-shift suspension was issued on March 4, 2015, City Attorney Griffin proposed a retroactive amendment to Plaintiff's prior suspension, which had supposedly been finalized on December 21, 2011 (despite Plaintiff's unprocessed appeal). Id. at 25:6-28:5.

Plaintiff submitted a 50-page response and complaint to Fire Chief Donis on June 24, 2015, describing "acts of discrimination, retaliation, and targeted threats from various supervisors beginning as early as 2010." Doc. No. 130-2 at 29:15-23. Fire Chief Donis did not investigate or otherwise follow-up on Plaintiff's June 24, 2015 complaint. Id. at 29:25-30:6.

A two-shift suspension was issued on October 1, 2015, based on the proposed 10-shift suspension that was issued on March 4, 2015. Doc. No. 130-2 at 31:3-5; Doc. No. 64 ¶ 48; Doc. No. 131-1; Doc. No. 131-19. Plaintiff appealed that order on October 16, 2015, which caused Fire Chief Donis to retaliate by reissuing two charges against Plaintiff. Id. at 31:3-14. On November 7, 2015, Plaintiff filed a grievance against Fire Chief Donis for an FPBORA violation, and a few days later, Fire Chief Donis emailed Plaintiff stating that certain documents disfavoring Plaintiff had been rescinded and removed from his personnel file. Doc. No. 130-2 at 31:14-23.

In December 2015, Fire Marshal MacAlpine assigned himself to interrogate Plaintiff regarding the complaint Plaintiff submitted to Fire Chief Donis on June 24, 2015. Doc. No. 130-2 at 31:27-32:6. Plaintiff's attorney notified the City of Fresno that allowing a "bias[ed] and conflicted employee" who was named in the complaint to conduct the interrogation would create a due process violation. Id. at 32:5-14. The City Attorney's Office removed Fire Marshal MacAlpine from the matter and no one was reassigned in his place. Id. at 32:13-17.

On June 3, 2016, Fire Marshal MacAlpine appeared at Plaintiff's home and threatened

1  Plaintiff's wife and children without identifying himself. Doc. No. 130-2 at 32:18-28. Later in

2  2016, Plaintiff filed administrative complaints with the Equal Employment Opportunity

3  Commission ("EEOC") and the California Department of Fair Employment and Housing

4  ("DFEH") relating to the subject matter of this case. Id. at 33:7-15; Doc. No. 130-1 at 3:4-13.

5       On August 23, 2016, an appeal hearing was held regarding the two-shift suspension issued

6  on October 1, 2015. Doc. No. 130-2 at 33:16-18. On November 16, 2016, Hearing Officer Mark

7  Keppler issued his decision on the appeal, affirming the suspension. Id. at 35:17-22.

8       On December 12, 2016, Plaintiff complained to his supervisor about hostile working

9  conditions. Doc. No. 130-2 at 36:25-37:4. Instead of investigating Plaintiff's complaint, Fire Chief

10  Donis directed Fire Marshal MacAlpine to serve Plaintiff with a notice of intent to investigate

11  Plaintiff for events occurring on December 12, 2016. Id. at 37:3-11.

12       On December 15, 2016, Plaintiff met with Fire Chief Donis. Doc. No. 130-2 at 37:12-14.

13  Plaintiff told Fire Chief Donis that supervisors had been retaliating against him for months, but

14  Fire Chief Donis would not investigate Plaintiff's complaint. Id. at 37:12-24.

15       Also in 2016, a firefighter by the name of "Aaron" commented to Plaintiff that hair

16  Plaintiff left in the shower looked like pubic hair. Doc. No. 130-1 at 5:7-22.

17       On January 17, 2017, Fire Marshal MacAlpine served Plaintiff with a notice of intent to

18  investigate Plaintiff for professional standards violations. Doc. No. 130-2 at 38:4-9. On January

19  19, 2017, unaware that Fire Chief Donis had authorized the investigation, Plaintiff reported the

20  investigation as retaliation for his December 12, 2016 hostile work environment complaint and

21  requested that Fire Chief Donis assign him to a new supervisor. Id. at 38:8-17. Fire Chief Donis

22  did not do so. Id. at 38:20-39:9. Plaintiff also requested that Fire Marshal MacAlpine be removed

23  from the investigation, but a different investigator was not assigned. Doc. No. 130-2 at 39:15-18.

24       On March 15, 2017, Plaintiff sent a 25-page complaint to Personnel Services Director

25  Jeffrey Cardell, documenting the retaliation, discrimination and harassment to which Plaintiff had

26  been subjected. Doc. No. 130-2 at 39:25-40:7. On March 16, 2017, Personnel Services Director

27  Cardell closed the investigation into Plaintiff's complaint. Id. at 40:6-10.

28       On June 3, 2017, while at work, "Plaintiff discovered that someone had spit thick sputum

into his juice bottle." Doc. No. 130-2 at 40:11-14. Plaintiff reported the incident to his supervisor, but no action was taken. Id. at 40:15-16. After three weeks had passed with no investigation into the incident, Plaintiff sent a report to Fire Chief Donis and Personnel Services Director Cardell. Id. at 40:17-22. A meeting ultimately took place with David Bolton of the Personnel Services Department, but no further action was taken. Id. at 40:22-41:5. On August 15, 2017, an eight-shift suspension was issued. Doc. No. 130-1 at 16:1-13. Plaintiff appealed the suspension, but withdrew the appeal, he contends, to pursue this action. Id. at 16:25-17:16.

In addition to the foregoing, Plaintiff states that, at some point between 2008 and 2013, Captain Woodard, who is African American, made a comment Plaintiff felt to be derogatory toward African Americans of lighter complexion. Doc. No. 130-1 at 5:22-6:3. Further, Plaintiff states that Woodard and other senior members of the Black Firefighters Union treated Plaintiff and his family with "racial animus and disrespect repeatedly" after Plaintiff withdrew from the Black Firefighters Union in about 2009. Id. at 5:22-6:15. Specifically, Plaintiff states that Captain Gill "talk[ed] badly about [him] every shift" and "w[as] working on getting rid of [him]," in addition to telling someone "not to hire [him]" and that the "fire department was having issues with [him] as an employee." Id. at 5:22-6:14.

Plaintiff filed seven grievances with the City of Fresno's Personnel Services Director between 2015 and 2017. Id. at 34:9-12. They were all dismissed on October 3, 2017. Id. at 34:12-14.

Plaintiff contends that he "met all the qualifications" for promotion to captain and battalion chief but that fighting ongoing acts of retaliation and discrimination prevented him from studying for and seeking promotion. Doc. No. 130-2 at 41:5-42:4.

**B.    Procedural History**

The City of Fresno ("Defendant") is the sole remaining defendant in this action and the Third Amended Complaint ("3AC") is the operative pleading. See Doc. No. 64. On May 22, 2020, the Court granted Defendant's motion to dismiss the Eighth Cause of Action in the 3AC (for due process violations under 42 U.S.C. § 1983) without leave to amend. Doc No. 73. The remaining seven claims against Defendant are for: (i) racial discrimination in violation of Title VII of the

1  Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (First Cause of Action); (ii) retaliation

2  in violation of Title VII, 42 U.S.C. § 2000e-3 (Second Cause of Action); (iii) racial harassment in

3  violation of Title VII, 42 U.S.C. § 2000e-3 (Third Cause of Action); (iv) racial harassment/hostile

4  work environment in violation of California's Fair Employment and Housing Act ("FEHA"),

5  California Government Code § 12940, subdivisions (j)(1) and (j)(3) (Fourth Cause of Action); (v)

6  failure to prevent racial harassment in violation of FEHA, California Government Code § 12940,

7  subdivision (k) (Fifth Cause of Action); (vi) retaliation in violation of California Labor Code §

8  1102.5, subdivision (b) (Sixth Cause of Action); and (vii) denial of rights in violation of

9  FPBORA, California Government Code § 3260 (Seventh Cause of Action). Doc. No. 64.

10       Defendant filed its Answer to the 3AC on June 16, 2020, alleging, *inter alia*, the

11  affirmative defenses of judicial exhaustion, failure to file a government claim, and statute of

12  limitations. Doc. No. 74. Defendant now brings a motion for partial summary judgment, arguing,

13  in essence, that Plaintiff has failed to adduce facts evidencing racial hostility (in the form of

14  harassment or discrimination) and that, consequently, only claims relating to retaliation are

15  suitable for trial. Doc. Nos. 129 & 129-1.

16                     **LEGAL FRAMEWORK**

17       Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

18  appropriate when it is demonstrated that there exists no genuine issue as to any material fact and

19  that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see Fortyune

20  v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004).

21       Rule 56(a)[4] provides for "partial summary judgment" motions directed towards, not just

22  claims and defenses, but also parts of claims or defenses. Fed.R.Civ.P. 56(a) ("A party may move

23  for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—

24  on which summary judgment is sought." (italics added)). A court "may enter an order stating any

25  material fact—including an item of damages or other relief—that is not genuinely in dispute and

26  treating the fact as established in the case." Fed.R.Civ.P. 56(g). A motion for partial summary

27

28    [4] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

judgment is governed by the same standards as a motion for summary judgment. <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011); <u>Jadwin v. County of Kern</u>, 610 F.Supp.2d 1129, 1141 (E.D. Cal. 2009).

The moving party bears the burden of establishing the absence of a genuine issue of material fact, generally by "citing to particular parts of materials in the record" such as depositions, interrogatory answers, declarations, and documents. Fed.R.Civ.P. 56(c); <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1229 (9th Cir. 2000). If the moving party does not meet this burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." <u>Henry v. Gill Indus.</u>, 983 F.2d 943, 950 (9th Cir. 1993).

If the moving party does meet this burden, the burden then shifts to the opposing party to show a genuine issue of material fact. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>see also</u> <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies</u>, 210 F.3d 1099, 1103 (9th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586; <u>Liberty Lobby</u>, 477 U.S. at 247-48 ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " <u>Matsushita</u>, 475 U.S. at 587; <u>Liberty Lobby</u>, 477 U.S. at 248 (a "dispute about a material fact is 'genuine' " where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 248 (1986) (quoting <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 288–89 (1968)) (internal quotation marks

1  omitted). If the nonmoving party does not produce enough evidence to create a genuine issue of

2  material fact after the burden has shifted, the moving party is entitled to summary judgment.

3  Fed.R.Civ.P. 56(c); Fritz, 210 F.3d at 1103; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

4                                                    **DISCUSSION**

5          The Court will address, in turn, each aspect of the 3AC as to which Defendant seeks

6  summary judgment.

7  **I.      Fourth Claim for Racial Harassment/Hostile Work Environment Under FEHA**

8          Plaintiff's Fourth Cause of Action is for racial harassment/hostile work environment in

9  violation of FEHA—specifically California Government Code § 12940, subdivisions (j)(1) and

10  (j)(3). Doc. No. 64 at 22.

11        **A.      Parties' Arguments**

12                                          *Defendant's Opening Memorandum*

13        Defendant argues that, per section 12960, subdivision (d), of the California Government

14  Code, Plaintiff cannot recover under FEHA for acts of racial harassment occurring more than a

15  year prior to the 2016 filing of his complaints with the EEOC and DFEH. Doc. No. 129-1 at 14:9-

16  18. Further, Defendant contends that Plaintiff fails to make out a prima facie racial harassment

17  claim under FEHA regardless of the applicable limitations period. Id. at 15:15-16.

18        According to Defendant, seven allegations in the 3AC appear to pertain, in some fashion,

19  to Plaintiff's racial harassment claim. Only three of these allegations, Defendant argues, involve

20  events taking place in the 12-month period prior to the filing of his EEOC and DFEH complaints,

21  including, specifically, Plaintiff's allegations that: (i) he "suffered discrimination based on his

22  race" in July 2016; (ii) in approximately 2016, a firefighter by the name of "Aaron" told him that

23  hair he left in a shower looked like pubic hair; and (iii) he was harassed based on race in June

24  2017 when he found spit in his juice bottle and Defendant failed to investigate. Defendant argues

25  that of these alleged incidents, only the comment regarding hair in the shower could possibly be

26  construed as racial harassment and that, even if the comment constituted a racial slur, it does not

27  show conduct sufficiently pervasive and severe to give rise to a viable racial harassment claim

28  under FEHA. Doc. No. 129-1 at 15:17-17:2.

The other four potentially relevant allegations, Defendant contends, are that: (i) in August 2011, an audio/video recording device was used, without permission, to record Plaintiff in a fire engine; (ii) in 2013, Captain Escobar communicated with Plaintiff in an intimidating manner; (iii) in 2014, Defendant harassed Plaintiff by taking disciplinary action against Plaintiff without investigating underlying facts adequately or allowing Plaintiff to respond to the charges against him; and (iv) at some point between 2008-2013, Captain Woodard made a comment that Plaintiff believed to be derogatory toward African Americans of lighter complexion. According to Defendant, these allegations do not show harassment based on Plaintiff's race, even when considered in combination with the allegations as to events occurring within the year prior to Plaintiff's administrative filings. Doc. No. 129-1 at 18:1-2.

Finally, Defendant argues that Plaintiff's racial harassment claim under FEHA is negated by evidence showing that Plaintiff has worked continuously for the City of Fresno since 2004; "has never been terminated, demoted or received a disciplinary reduction in pay"; "has never been denied a step increase in salary"; "maintains the highest rate of pay in his job classification"; and had a "favorable experience" at Station 21 between June 2017 and June 2019. Doc. No. 129-1 at 18:3-12.

### *Plaintiff's Opposition*

As set forth in his opposition, Plaintiff's racial harassment theory is that Captain Gill and Captain Caldwell violated his rights under FPBORA because he "was of mixed race and chose to decrease his participation with the Black Firefighters Association." Doc. No. 130 at 7:6-13. News that Plaintiff reported Captain Gill and Captain Caldwell for these violations spread throughout the Fresno Fire Department and ultimately reached "known racist Don MacAlpine," id. at 7:13-24, who then investigated Plaintiff in a manner that was "race based and retaliatory." Id. at 7:25-28.

Plaintiff further argues that "retaliation constitutes intentional discrimination," Doc. No. 130 at 25:24-25:4, and that "[e]ach investigation into Plaintiff's conduct that followed one of Plaintiff's grievances or complaints was an act of independent discrimination and retaliation against Plaintiff by [the Fresno Fire Department]." Id. at 27:17-24. Similarly, Plaintiff contends that "failing to investigate and protect a complaint [sic] made by a participant who is part of a

1   protected class qualifies as additional discrimination ….” Id. at 28:12-23.

2       Finally, Plaintiff contends that the Court ruled on the statute of limitations question in

3   deciding Defendant's motion to dismiss the First Amended Complaint (“FAC”) and found that

4   equitable tolling is applicable to his FEHA claims because he has adequately alleged a continuing

5   violation dating back to his 2010 complaint against Captain Gill and Captain Caldwell. Doc. No.

6   130 at 22:6-24.

7   *Defendant's Reply*

8       Defendant argues that Plaintiff is trying to create the illusion of a material factual dispute

9   with respect to his racial harassment claim under FEHA by focusing almost exclusively on his

10  retaliation claim under Title VII, which is not at issue in this motion. Doc. No. 132 at 6:2-9.

11  According to Defendant, the sole evidence of conduct that could be considered racially offensive

12  during the relevant period (i.e., the period starting 12-months prior to the filing of Plaintiff's

13  EEOC and DFEH complaints) was the comment, by a firefighter named “Aaron” in 2016, that hair

14  Plaintiff left in a shower looked like pubic hair. Id. at 7:11-21. That “single comment,”

15  Defendant's contend, “is not sufficient to rise to the level of conduct required to support a claim

16  for workplace harassment.” Id. at 7:19-21. Further, Defendant argues that, even if they could be

17  taken into consideration, racially charged statements that were supposedly made outside the

18  limitations period do not create a material question of fact as to Plaintiff's racial harassment claim

19  because they are vague or because Plaintiff was not present when they were made. Id. at 9:21-

20  9:13.

21      **B.    Applicable Law**

22      Section 12940, subdivision (j)(1), of the California Government Code provides that it is

23  unlawful “[f]or an employer … or any other person, because of race … to harass an employee”

24  and that “[a]n entity shall take all reasonable steps to prevent harassment from occurring.” Cal.

25  Gov. Code § 12940, subd. (j)(1); see also Thompson v. City of Monrovia, 186 Cal.App.4th 860,

26  876 (2010). Further, subdivision (j)(3) of section 12940 provides:

27      An employee of an entity subject to [subdivision (j)] is personally liable for any
        harassment prohibited by this section that is perpetrated by the employee,
28      regardless of whether the employer or covered entity knows or should have known

of the conduct and fails to take immediate and appropriate corrective action.

Cal. Gov. Code § 12940, subd. (j)(3).

To establish a prima facie claim for a racially hostile work environment, a plaintiff must show that: "(1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the [defendant] is liable for the harassment." Thompson, 186 Cal.App.4th at 876; see also Fisher v. San Pedro Peninsula Hosp., 214 Cal.App.3d 590, 608 (1989) (requiring similar elements for a sexual harassment claim under FEHA).

As the California Supreme Court has stated, the term "harass" appears in a different FEHA section than the term "discriminate" and defines a "distinct" wrong. Roby v. McKesson Corp., 47 Cal.4th 686, 705 (2009), as modified (Feb. 10, 2010) (citations omitted); see also id. at 707 (stating that there is a "significant distinction" between "harassment and discrimination in the FEHA" (citations omitted)). Whereas "FEHA's discrimination provision addresses only *explicit* changes in the 'terms, conditions, or privileges of employment' "—"that is, changes involving some *official action taken by the employer*"—"harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment … communicates an offensive message to the harassed employee." Id. at 706 (italics original). In other words, "discrimination refers to bias in the exercise of official actions on behalf of the employer," while "harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." Id. at 707.

Harassment "includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, [and] derogatory posters or cartoons," and "consists of … conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." Janken v. GM Hughes Elecs., 46 Cal.App.4th 55, 63 (1996) (citations omitted); see Roby, 47 Cal.4th at 710-11 (recognizing "harassment claim" based on "demeaning comments, gestures, and facial expressions").

To be actionable under FEHA, "harassment cannot be occasional, isolated, sporadic, or

trivial." <u>Aguilar v. Avis Rent A Car Sys., Inc.</u>, 21 Cal.4th 121, 131 (1999) (quoted source and internal quotation marks omitted). "Rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." <u>Id.</u> (quoted source and internal quotation marks omitted). "Whether the harassment is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." <u>Thompson</u>, 186 Cal.App.4th at 877 (quoting <u>Nazir v. United Airlines, Inc.</u>, 178 Cal.App.4th 243, 263–264 (2009)) (internal quotation marks omitted); <u>see also id.</u> at 878 ("the law recognizes a cause of action for racial harassment only if the employee can demonstrate repeated, routine acts so severe or pervasive as to create an abusive environment for any reasonable person belonging to plaintiff's racial or ethnic group").

## C.   **Discussion**

Plaintiff alleges that he was subjected to improper interrogations, investigations and disciplinary action—interspersed at times with other forms of wrongful conduct—that started shortly after he reduced and discontinued his participation in the Black Firefighters Union in 2009. The mistreatment inflicted on Plaintiff, which allegedly prevented him from seeking and securing promotions and pay increases that he deserved, involved approximately 20 persons across multiple fire stations and various divisions of the City of Fresno government.

As to episodes implicating race in some fashion, Plaintiff asserts that:

- Captain Woodard and other senior members of the Black Firefighters Union treated him with "racial animus and disrespect repeatedly" after he curtailed his participation in the Black Firefighters Union in 2009, Doc. No. 130-1 at 5:22-28;

- At some point between 2008 and 2013, Captain Woodward, who is African American, made a comment that Plaintiff felt to be derogatory toward African Americans of lighter complexion, <u>id.</u>;

- In August 2010, Captain Caldwell failed to investigate rumors about Plaintiff, "with intent to harm based on race," Doc. No. 130-2 at 5:4-17;

- In September 2010, Plaintiff was subjected to threats and improper interrogation by

Captain Caldwell and Captain Gill (a "Senior Black Firefighters Union Member") because Plaintiff was no longer active in the Black Firefighters Union, id. at 130-2 at 5:18-7:9;

- Captain Gill made false accusations against Plaintiff, repeatedly talked "badly" about Plaintiff, issued a letter of reprimand to Plaintiff, and interfered with Plaintiff's employment prospects for reasons tying back to Plaintiff's withdrawal from the Black Firefighters Union and the fact that Plaintiff's reported Captain Gill and Captain Caldwell to Fire Chief Bruegman, Doc. No. 130-2 at 8:24-10:24, 11:14-12:8 & Doc. No. 130-1 at 5:22-6:14; and

- In 2016, a firefighter by the name of "Aaron" told Plaintiff that hair Plaintiff left in a shower looked like pubic hair. Doc. No. 130-1 at 5:7-22.

Further, Plaintiff asserts that:

- In 2010, Fire Marshal MacAlpine refused to remove a document from Plaintiff's personnel file or provide Plaintiff with a copy of that document, in violation of FPBORA, Doc. No. 130-2 at 12:8-27;

- In 2012, Fire Marshal MacAlpine served Plaintiff with "a notice of investigation, with claims against him for violations of various policies," id. at 19:6-28;

- In 2014, Fire Marshal MacAlpine conducted a corrupt investigation into Plaintiff that improperly culminated in a proposed suspension, id. at 23:5-25:6;

- In 2015, Fire Marshal MacAlpine assigned himself to interrogate Plaintiff in connection with another issue but was removed from the interrogation by the Fresno City Attorney, id. at 31:28-32:17;

- In 2016, Fire Marshal MacAlpine appeared at Plaintiff's home and threatened Plaintiff's wife and children without identifying himself, id. at 32:18-28;

- On December 12, 2016, Fire Marshal MacAlpine served Plaintiff with a notice of intent to investigate certain claims against Plaintiff, id. at 36:25-37:11; and

- On January 17, 2017, Fire Marshal MacAlpine served Plaintiff with a notice of intent to investigate Plaintiff for professional standards violations. Id. at 38:4-

1        39:25.

2        According to Plaintiff, the allegations regarding Fire Marshal MacAlpine have a racial

3 component because another firefighter brought a racial discrimination lawsuit against the City of

4 Fresno in 2009 in which Fire Marshal MacAlpine was a "primary" defendant and that firefighter

5 testified, in this case, that Fire Marshal MacAlpine once made a racist statement comparing black

6 men unfavorably to white men and Asian men. Id. at 23:21-24:8.

7        Reviewing the record, the Court sees no other facts of consequence indicating a connection

8 of any kind between race and the wrongdoing alleged in this action.

9        In the Court's view, Captain Woodard's supposedly derogatory comment about African

10 Americans with lighter complexion does not support Plaintiff's racial harassment claim because

11 Plaintiff (who cannot even remember when the comment was made) fails to provide sufficient

12 information for a jury to draw any meaningful conclusions as to the content or effect of the

13 comment, let alone find that it arose from racial hostility or constituted racial harassment. Doc.

14 No. 129-5 at 31-32 (Plaintiff testifying that, at some unspecified point, Captain Woodard spoke

15 "negatively" in his presence about "black people with lighter complected skin" but that Plaintiff

16 could not remember what was said).

17        Acts attributed to Captain Caldwell and Captain Gill, similarly, do not provide a basis for

18 Plaintiff's racial harassment claim because their conduct does not, on its face, convey racial

19 hostility and Plaintiff himself states that their actions against him were in response to the fact that

20 he had withdrawn from the Black Firefighters Union and reported them for misconduct.[5] The

21 California Supreme Court has held that managerial acts (including investigations and

22 interrogations, it would seem) can evidence racial harassment where such acts convey a "hostile

23 message" or show "discriminatory animus." See Roby, 47 Cal.4th at 708 (stating that "in some

24

25

---

26 [5] Plaintiff does allege that Captain Woodard, Captain Caldwell and Captain Gill acted with "racial animus" and an "intent to harm based on race." Conclusory allegations such as these, however, plainly do not create a triable question of fact as to racial harassment. Cf. Harris v. City of Fresno, 625 F.Supp.2d 983, 995 (E.D. Cal. 2009) (finding

27 "conclusory testimony [was] insufficient to create a triable issue" of racial discrimination); see also Liberty Lobby, 477 U.S. at 248 (1986) ("a party opposing a properly supported motion for summary judgment may not rest upon the

28 mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial").

cases the hostile message that constitutes the harassment is conveyed through official employment actions" and that "there is no basis for excluding evidence of biased personnel management actions so long as that evidence is relevant to prove the communication of a hostile message"). There is simply no evidence, however, that that was the case here. See, e.g., Doc. No. 64 ¶¶ 12-16 (summarizing events, including Plaintiff's withdrawal from the Black Firefighters Union, that culminated in alleged misconduct involving Captain Caldwell and Captain Gill).

Next, Plaintiff's assertions as to Fire Marshal MacAlpine are insufficient to make out a prima facie racial harassment claim under FEHA because Plaintiff only had a handful of encounters with Fire Marshal MacAlpine over a period of eight years, most of which were decidedly abbreviated and limited in scope. See Thompson, 186 Cal.App.4th at 878. Further, Plaintiff fails to show how Fire Marshal MacAlpine's interactions with him—which are not alleged to have involved epithets or other wrongdoing of the sort typically associated with racial harassment claims—conveyed a negative message (or any message at all) regarding Plaintiff's race. See Janken, 46 Cal.App.4th at 63. MacAlpine's alleged statement comparing black men to white men and Asian men is disturbing, but that one statement—which was not made in Plaintiff's presence and which was not made in connection with the events at issue here—is not sufficient for a finding that Fire Marshal MacAlpine's seemingly race-neutral interactions with Plaintiff would convey "discriminatory animus" to a reasonable person of African American descent. Cf. Roby, 47 Cal.4th at 708.

Finally, the shower incident does not rise to the level of actionable racial harassment under FEHA since it was an isolated incident of an ambiguous nature (with no apparent connection to the other allegations on which Plaintiff's racial harassment claim is based) that plainly does not evidence conduct "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment," even reading it in the worst possible light. Thompson, 186 Cal.App.4th at 877.

For the foregoing reasons, the Court will GRANT summary judgment in Defendant's favor on the Fourth Cause of Action.[6]

---

[6] In light of the foregoing analysis and conclusion, it is unnecessary for the Court to address the parties' arguments with respect to the statute of limitations in this context. Questions relating to statutes of limitations are addressed at

1   //

2   **II.      Third Cause of Action for Racial Harassment Under 42 U.S.C. § 2000e-3**

3       Plaintiff's Third Cause of Action is for racial harassment in violation of Title VII

4   (specifically, 42 U.S.C. § 2000e-3).[7] Doc. No. 64 at 20.

5       The elements of a racial harassment claim under Title VII are essentially identical to the

6   elements of a racial harassment claim under FEHA: To establish a prima facie case of a racially

7   hostile work environment under Title VII, Plaintiff demonstrate that:

8       (1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome
        racial harassment; (3) the harassment was based on race; (4) the harassment
9       unreasonably interfered with [his] work performance by creating an intimidating,
        hostile, or offensive work environment; and (5) the employer is liable.
10

11  Barrett v. Whirlpool Corp., 556 F.3d 502, 515 (6th Cir. 2009). Further, the California Supreme

12  Court has stated that Title VII and FEHA use the same "test for a *prima facie* case of harassment."

13  Cervantes v. Cemex, Inc., 2014 WL 6090414, at *13 (E.D. Cal. Nov. 13, 2014) (citing Lyle v.

14  Warner Bros. Television Prods., 38 Cal.4th 264, 278 (2006) (some internal quotation marks

15  omitted).

16      Thus, the analysis of Plaintiff's racial harassment claim under FEHA applies with equal

17  force to Plaintiff's racial harassment claim under Title VII, and the Court will GRANT summary

18  judgment in Defendant's favor on Plaintiff's Third Cause of Action. See Cervantes, 2014 WL

19  6090414 at *13.

20  **III.     Fifth Cause of Action for Failure to Prevent Racial Harassment in Violation of**

21  **Section 12940, Subdivision (k), of the California Government Code**

22      Plaintiff's Fifth Cause of Action includes a claim for failure to prevent harassment in

23  violation of section 12940, subdivision (k), of the California Government Code, Doc. No. 64 at 23,

24  which provides that it is unlawful for an employer to "fail to take all reasonable steps necessary to

25

26  some length below.

27  [7] The Court assumes for the sake of analysis that 42 U.S.C. § 2000e-3 provides a cause of action for racial harassment,
    but notes that Title VII racial harassment claims are generally brought under 42 U.S.C. § 2000e-2. See, e.g., E.E.O.C.
28  v. Monterey Collision Frame & Body, Inc., 2007 WL 1201767, at *1 (N.D. Cal. Apr. 23, 2007).

1    prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940, subd. (k). This

2    claim fails as a matter of law (with respect to racial harassment) because California Government

3    Code § 12940, subdivision (k), does not provide a stand-alone cause of action, and as set forth

4    above, Plaintiff has failed to make out a prima facie racial harassment claim. The Court will

5    therefore GRANT summary judgment in favor of Defendant on the Fifth Cause of Action to the

6    extent it is based on racial harassment. <u>Dickson v. Burke Williams, Inc.</u>, 234 Cal.App.4th 1307,

7    1314-15 (2015); <u>Cozzi v. County of Marin</u>, 787 F.Supp.2d 1047, 1073 (N.D. Cal. 2011).

8    **IV.    <u>First Cause of Action for Race Discrimination in Violation of Title VII</u>**

9          Plaintiff's First Cause of Action alleges that he was treated less favorably than similarly

10   situated firefighters who were not African American because he is African American, in violation

11   of 42 U.S.C. §2000e-2. Doc. No. 64 at 16.

12         **A.    Parties' Arguments**

13         Defendant contends that, under the statute of limitations applicable to Title VII claims,

14   Plaintiff's First Cause of Action is barred to the extent it is based on events that occurred prior to

15   December 2015, including, specifically, the two-shift suspension imposed on October 1, 2015.

16   Doc. No. 129-1 at 22:3-9. Further, Defendant contends that Plaintiff cannot make out a prima facie

17   claim for racial discrimination based on the suspension that was issued on August 15, 2017

18   because he cannot show racial animus on the part of Fire Chief Donis or Fire Marshal MacAlpine.

19   <u>Id.</u> at 22:23-23:3. According to Defendant, conduct with respect to Plaintiff was "race neutral" and

20   there is no evidence of a racial motivation for any alleged adverse employment actions. <u>Id.</u> at 23:4-

21   8. Further, Defendant contends that it has produced evidence showing a legitimate,

22   nondiscriminatory reason for the disciplinary action in question. <u>Id.</u> at 24:23-25:1.

23         Plaintiff, for his part, argues that the applicable statute of limitations was tolled under the

24   continuing violation doctrine and that discrimination under Title VII includes disparaging remarks

25   and other offensive conduct of that ilk, as well as race-based retaliation and failure to investigate

26   complaints. Doc. No. 130 at 28:12-24.

27         **B.    Applicable Law**

28         Title VII provides that an employer may not "discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race ... or national origin." 42 U.S.C. § 2000e–2(a)(1).

Under *McDonnell Douglas Corporation v. Green*, to make out a prima facie case of racial

discrimination under Title VII, a plaintiff must show:

> (1) he is a member of a protected class, (2) he met his employer's legitimate
> expectations, (3) he suffered an adverse employment action, and (4) the
> circumstances give rise to an inference of discrimination (for example, similarly
> situated employees outside the protected class were treated differently).

411 U.S. 792, 802-03 (1973); Chuang v. Univ. of California Davis, 225 F.3d 1115, 1123 (9th Cir.

2000). Once established, the prima facie case creates a rebuttable "presumption that the employer

unlawfully discriminated against the employee." Lyons v. England, 307 F.3d 1092, 1112 (9th Cir.

2002).

Title VII provides that an employee who wishes to bring a civil action for discrimination

must file a claim with an appropriate government agency no later than 300 days after the alleged

discrimination occurred. 42 U.S.C. § 2000e–5(e)(1).[8] To determine the timeliness of the required

government filing, the court first identifies the allegedly "unlawful employment practice."

Delaware State Coll. v. Ricks, 449 U.S. 250, 257 (1980). Title VII defines unlawful employment

practice as the failure or refusal to hire, or discharge of an employee, or other discrimination with

respect to "compensation, terms, conditions, or privileges of employment, because of ... race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); see also Beck v. Battelle Energy

All., LLC, 2013 WL 587902, at *2 (D. Idaho Feb. 13, 2013). If an alleged adverse employment

action occurred more than 300 days prior to the required administrative filing, it is barred by the

statute of limitations. Harris, 625 F.Supp.2d at 997–98 (E.D. Cal. 2009) (quoted source and

internal quotation marks omitted). "[D]iscrete discriminatory acts are not actionable if time barred,

even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v.

Morgan, 536 U.S. 101, 114 (2002); see also RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045,

---

[8] The required administrative complaint "must be filed within 180 days of the last discriminatory act (or within 300 days in a state, such as California, which has its own anti-discrimination laws and agency)." Sanchez v. Off. of Legislative Couns.-Legislative Data Ctr., 2013 WL 1563482, at *4 (E.D. Cal. Apr. 12, 2013).

1   1061 (9th Cir.2002) ("[T]he statute of limitations runs separately from each discrete act."); Harris,

2   625 F.Supp.2d at 999 ("The statute of limitations runs separately from each discrete

3   discriminatory act, not the ill effect of the act." (citations omitted)).

4       **C.    Discussion**

5           1.   Statute of Limitations

6       The Ninth Circuit has held that incidents of discrimination that would otherwise be time-

7   barred "may be actionable if a plaintiff can show that they are part of a 'continuing violation' of

8   his statutory rights." Nichols v. Mineta, 26 F. App'x 729, 732 (9th Cir. 2002). "A plaintiff may

9   establish a continuing violation by showing 'a series of related acts against a single individual,' at

10  least one of which occurred during the limitations period." Id. (quoted source omitted).

11      In its October 19, 2018 order on Defendant's motion to dismiss the FAC, the Court found

12  that "Plaintiff's allegations sufficiently qualify as a continuing violation for purposes of FEHA

13  exhaustion," stating that Plaintiff had detailed "a series of escalating actions undertaken by various

14  individual Defendants, rooted in Plaintiff's perceived violation of 'the ***unwritten policy*** that

15  firefighters do not tell on one another … without dire consequences.' " Doc. No. 24 at 7:22-28

16  (emphasis added).

17      That analysis, however, was predicated on a theory (evaluated at the pleading stage) that

18  the many alleged wrongdoers in this case were motivated by a common purpose to punish Plaintiff

19  for reporting violations on the part of his supervisors and that, consequently, the people who

20  allegedly retaliated against Plaintiff (over a period of several years, across multiple fire stations, at

21  the highest level of the Fresno Fire Department and in certain other parts of City government)

22  were acting according to a pattern, practice, or (as the Court put it in its October 19, 2018 order)

23  "policy."

24      Here, by contrast, Plaintiff at most alleges individualized acts of racial discrimination, with

25  no facts whatsoever showing that the various acts of racial discrimination (as opposed to

26  retaliation) to which he was supposedly subjected were part of a pattern or practice or that they

27  were otherwise connected to one another in such a way that they could be seen as a single act or

28  ongoing occurrence. Cf. Hatfield v. City of Bremerton, 73 F. App'x 198, 199–200 (9th Cir. 2003)

1  (stating that "[t]he continuing violation doctrine does not extend to discrimination claims based on

2  discrete discriminatory acts" (citations omitted)). Plaintiff does not show, for example, how

3  Captain Woodard's supposed racism is related to racism on the part of Captain Caldwell, Captain

4  Gill, "Aaron," Fire Marshal MacAlpine or anyone else who supposedly discriminated against

5  Plaintiff based on his race over the period of eight years or so at issue in this case. Thus, the Court

6  finds that the continuing violation doctrine does not apply to the First Cause of Action for racial

7  discrimination in violation of Title VII. See Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632,

8  638–39 (9th Cir. 2002) (finding no continuing violation where plaintiff failed, inter alia, to show

9  "a pattern or practice of discriminatory conduct"); Nichols v. Mineta, 26 Fed.Appx. 729, 733 (9th

10  Cir. 2002) (where allegedly discriminatory decisions were not made by the same supervisors and

11  there was no evidence to show coordination with those supervisors, the decisions were not

12  "sufficiently related to support an allegation of continuing violation").

13        Courts have also tolled the statute of limitations in the Title VII context where the plaintiff

14  could not have known that an employer's adverse decision was based on discriminatory motive or

15  intent. See, e.g., Pronechen v. Sec'y of U.S. Dep't of Homeland Sec., 2010 WL 1239318, at *2

16  (E.D. Cal. Mar. 25, 2010) (denying summary judgment on equitable tolling issue where "a

17  material issue of fact exist[ed], as to whether Plaintiff had notice of the possibility of the alleged

18  age discrimination."); Sterrett v. Mabus, 2013 WL 593752, at *5 (S.D. Cal. Feb. 15, 2013)

19  (finding no continuing violation under Title VII but tolling the statute for discrete acts that

20  occurred before the employee "realize[d] the employment decision was the result of gender

21  discrimination"). Plaintiff, however, does not assert—or provide any factual basis to conclude—

22  that he was unaware of the allegedly discriminatory nature of the acts at issue here when they

23  occurred.

24        Thus, the Court finds that Plaintiff's Title VII racial discrimination claim is barred to the

25  extent it arises from events that occurred more than 300 days prior to the filing of Plaintiff's

26  complaint with the EEOC and DFEH. See Black v. Barrett Bus. Servs., Inc., 2019 WL 2250263, at

27  *13 (D. Idaho May 23, 2019).

28  //

1                     2.   <u>Sufficiency of Evidence</u>

2              The parties dispute whether Plaintiff made his filing with the EEOC and DFEH on October

3    5, 2016 (Defendant's contention) or July 20, 2016 (Plaintiff's contention) and set forth conflicting

4    evidence on that issue. Doc. No. 130-1 at 3:4-13. That question cannot be decided on this motion.

5    For the sake of this analysis, the Court will therefore make the conservative assumption that

6    Plaintiff's EEOC and DFEH filings made on July 20, 2016, which maximizes the timeframe from

7    viable claims. Using that July 20, 2016 date, the Court calculates that Plaintiff's Title VII claim

8    for racial discrimination cannot be based on events on or before September 24, 2015.

9              According to the record, the following events of potential relevance transpired after

10   September 24, 2015 (applying Plaintiff's very broad conception of what constitutes adverse

11   employment action for purposes of discrimination claims under Title VII):

12             On October 1, 2015, an order imposing a two-shift suspension on Plaintiff was issued.

13             On October 16, 2015, Plaintiff filed an appeal of the October 1, 2015 suspension order.

14             On October 18, 2015, Fire Chief Donis retaliated against Plaintiff for filing the appeal by

15   reissuing two charges against him.

16             On November 7, 2015, Plaintiff filed a grievance against Fire Chief Donis for a violation

17   of FPBORA, and on November 11, 2011, Fire Chief Donis removed objectionable documents

18   from Plaintiff's personnel file.

19             In December 2015, Fire Marshal MacAlpine assigned himself to interrogate Plaintiff

20   regarding a complaint Plaintiff filed on June 24, 2015, but the City Attorney removed Fire

21   Marshal MacAlpine from the matter.

22             On June 3, 2016, Fire Marshal MacAlpine appeared at Plaintiff's home and threatened

23   Plaintiff's wife and children without identifying himself.

24             On August 23, 2016, an appeal hearing was held regarding the two-shift suspension that

25   was issued October 1, 2015.

26             On November 16, 2016, Hearing Officer Keppler issued his decision from the August 23,

27   2016 appeal hearing, affirming the October 1, 2015 suspension order.

28             On December 12, 2016, Plaintiff complained to his supervisor about a hostile working

1   environment.

2          On December 15, 2016, Plaintiff met with Fire Chief Donis. Fire Chief Donis declined to

3   investigate his complaints about hostile working conditions and instead directed Fire Marshal

4   MacAlpine to serve Plaintiff with a notice of intent to investigate.

5          Also in 2016, "Aaron" told Plaintiff that hair Plaintiff left in a shower looked like pubic

6   hair.

7          On January 17, 2017, Fire Marshal MacAlpine served Plaintiff with a notice of intent to

8   investigate him for professional standards violations. The investigation was authorized by Fire

9   Chief Donis. Plaintiff requested that Fire Marshal MacAlpine be removed from the investigation

10  but the request was denied.

11         On January 19, 2017, Plaintiff reported his January 17, 2017 encounter with Fire Marshal

12  MacAlpine as retaliation for Plaintiff's December 12, 2016 complaint and requested that Fire

13  Chief Donis assign him to a new supervisor.

14         On January 23, 2017, Fire Chief Donis declined to assign Plaintiff to a new supervisor.

15         On March 15, 2017, Plaintiff filed a complaint with Personnel Services Director Cardell.

16  The investigation into the complaint was closed the next day.

17         On June 3, 2017, Plaintiff discovered that someone had spit into his juice bottle. Plaintiff

18  complained to his supervisor but the incident was not investigated.

19         On August 15, 2017, Fire Chief Donis issued an eight-shift suspension. Plaintiff appealed

20  the suspension, but withdrew the appeal, he contends, to pursue this action.

21         On October 3, 2017, Personnel Services Director Cardell dismissed all grievances filed by

22  Plaintiff from 2015 through 2017.

23         As set forth in the next section, Plaintiff is barred by exhaustion doctrines and collateral

24  estoppel from asserting an adverse employment action based on the two-shift suspension that was

25  issued on October 1, 2015. Further, Plaintiff makes no attempt to show that he was treated

26  differently from similarly situated persons in connection with events that transpired after

27  September 24, 2015 or to set forth facts otherwise evidencing discrimination on the part of Fire

28  Chief Donis, Personnel Services Director Cardell, Hearing Officer Keppler or anyone else

involved in post-September 24, 2015 events. See McDonnell Douglas Corp., 411 U.S. at 802-03. The one possible exception to that is Fire Marshal MacAlpine's alleged statement denigrating black men. As a matter of law, however, that comment (which was not directed at Plaintiff and which was made several years prior to the events in question here) is not, by itself, sufficient to establish discrimination, Merrick v. Farmers Ins. Grp., 892 F.2d 1434, 1438 (9th Cir. 1990) (" 'stray' remarks are insufficient to establish discrimination"); Yates v. Douglas, 255 F.3d 546, 549 (8th Cir. 2001) (racially motivated and offensive comments made a year or two before plaintiff's termination were not direct evidence of discrimination, even assuming the speaker was directly involved in the termination decision); Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1229 (11th Cir. 2002) (statement unrelated to employment action "may contribute to a circumstantial case" for discrimination but "some additional evidence" is required), especially since Fire Marshal MacAlpine's only substantive involvement in events during the relevant time period took place at the direction of Fire Chief Donis, as to whom no factual allegations of racial animus have been made. See Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995), cert. denied, 516 U.S. 1048 (1996) ("Mere assertions that an employer had discriminatory motivation and intent is inadequate, without substantial factual evidence, to raise a genuine issue of material fact ….").

For the foregoing reasons, Plaintiff cannot make out a prima facie claim for racial discrimination under Title VII and the Court will therefore GRANT summary judgment in Defendant's favor on the First Cause of Action.

## V.     Claims Based on the Two-Shift Suspension Issued on October 1, 2015

### A.     Parties' Arguments

Defendant contends that Plaintiff is barred by the doctrine of judicial exhaustion and the doctrine of collateral estoppel from asserting an adverse employment action based on the two-shift suspension issued on October 1, 2015. Doc. No. 129-1 at 24:14-21.

Plaintiff argues, in opposition, that hearings that took place on the two-shift suspension do not have preclusive effect because they "did not address the issues of discrimination, harassment or retaliation." Doc. No. 130 at 28:27-29:4. Plaintiff cites George (Cynthia Francene) v. California Unemployment Insurance Appeals Board, 179 Cal. App. 4th 1475 (2010), in which the

1  California Court of Appeal found that the plaintiff's FEHA's claim was not barred by prior

2  administrative proceedings, id. at 29:5-30:3, and argues that the appeal hearing for the two-shift

3  suspension that took place on August 23, 2016 was insufficient because fraudulent evidence was

4  submitted to the hearing officer. Id. at 18:22-19:1.

5       Defendant argues, on reply, that Plaintiff misconstrues *George* and cites no authority

6  showing that the introduction of allegedly fraudulent evidence alters the preclusive effect of a

7  hearing. Further, Defendant argues that the alleged fraudulence of evidence was known to—and

8  addressed by—the hearing officer; that Plaintiff fails to show that the evidence in question was

9  indeed fraudulent; that Plaintiff fails to show the allegedly fraudulent evidence was admitted or

10 objected to at the hearing; and that Plaintiff should have raised any issues going to the fairness of

11 the administrative proceeding by way of a mandamus petition. Doc. No. 132 at 11:12-12:4.

12      **B.     Applicable Law**

13      "Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the

14 courts.' " Johnson v. City of Loma Linda, 24 Cal.4th 61, 70 (2000) (quoting Abelleira v. District

15 Court of Appeal, 17 Cal.2d 280, 293 (1941) (italics original)). The doctrine essentially requires

16 public employees who seek relief through administrative proceedings involving decisional

17 evidentiary hearings to exhaust administrative relief before seeking relief in court. Bradley v. CVS

18 Pharmacy, lnc., 64 Cal.App.5th 902, 911 (2021); Miller v. City of Los Angeles, 169 Cal.App.4th

19 1373, 1382 (2008). In addition, the requirement of exhaustion of *judicial* remedies gives an

20 administrative decision "finality" and "binding effect" where an aggrieved party fails to timely

21 seek judicial review of an administrative action. Johnson, 24 Cal.4th at 70 (citing Briggs v. City of

22 Rolling Hills Estates, 40 Cal.App.4th 637, 646 (1995)).

23      The doctrine of collateral estoppel—or issue preclusion—has similar effect, barring "the

24 relitigating of issues which were previously resolved in an administrative hearing by an agency

25 acting in a judicial capacity." Risam v. Cnty. of Los Angeles, 99 Cal.App.4th 412, 420 (2002)

26 (quoted source and internal quotation marks omitted); see also Astoria Federal Savings & Loan

27 Assoc . v. Solimino, 501 U.S. 104, 107 (1991) ("We have long favored application of the

28 common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those

1   determinations of administrative bodies that have attained finality."); Murray v. Alaska Airlines,

2   Inc., 50 Cal.4th 860, 864 (2010) (similar).

3        **C.   Discussion**

4        Defendant sets forth undisputed evidence[9] showing that Plaintiff appealed the two-shift

5   suspension through an appeal procedure under section 3-283 of the Fresno Municipal Code that

6   allows for a full evidentiary hearing before a hearing officer chosen by the parties. Further, the

7   record shows that there was, in fact, a fully contested evidentiary hearing before the hearing

8   officer—including opening and closing statements, briefing, direct and cross-examination of

9   sworn witnesses, and the introduction of documentary evidence—at which Plaintiff was

10  represented by counsel and the City of Fresno had the burden of proof. At the hearing, Plaintiff

11  attempted to show that the two-shift suspension was improper and unsupported; that he had not

12  violated any applicable policies or rules; and that the suspension violated the law. The hearing

13  officer issued a recommendation finding that Plaintiff violated policy and confirming the two-shift

14  suspension. The City of Fresno's Civil Service Board ("CSB") reviewed the hearing officer's

15  decision with the aid of independent counsel and upheld the hearing officer's decision, finding just

16  cause for the two-shift suspension. Plaintiff had an opportunity to seek further review through a

17  petition for writ of administrative mandamus pursuant to section 1094.5 of the California Civil

18  Code but did not do so.

19       In light of these undisputed facts, the Court agrees with Defendant that Plaintiff is barred

20  from showing that the two-shift suspension was based on pretext and from using the two-shift

21  suspension to establish a claim for retaliation, discrimination or harassment, whether under FEHA

22  or Title VII. See Castillo, 92 Cal.App.4th at 481, 486-87 (finding that hearing officer's implicit

23  finding that reasons for discharge were not a pretext for discrimination barred FEHA claim). The

24  Court takes Plaintiff's point that the hearing officer and the CSB did not decide retaliation,

25  discrimination or harassment claims, *per se*, but that argument goes to the applicability of res

26  judicata (or claim preclusion), which is not at issue here. Indeed, the one case cited by Plaintiff in

27

28  [9] See Doc. No. 129-1 at 28:7-28:9 and filings cited therein.

this area, *George v. California Unemployment Insurance Appeals Board*, expressly recognizes that preclusion as to a single issue can have the effect of barring an entire claim merely by preventing a plaintiff from establishing one essential element of the claim. 179 Cal.App.4th at 1486 n.1; <u>see also</u> <u>Castillo</u>, 92 Cal.App.4th at 486 (stating that defendant was entitled to summary judgment on discrimination claim under FEHA because administrative process decided essential element of claim in finding that discharge was not wrongful).

The Court will therefore GRANT this aspect of Defendant's motion and bar Plaintiff from using the two-shift suspension issued on October 1, 2015 to establish a retaliation, discrimination or harassment claim.

## VI. **Claims that Plaintiff Suffered Economic Loss or an Adverse Employment Action by Way of Lost Promotions or Job Opportunities**

Defendant argues that any claims based on failure to promote or lost job opportunities prior to December 2015 are time-barred based on the date on which Plaintiff's complaint with the EEOC and DFEH was filed. Doc. No. 129-1 at 29:16-18. Further, Defendant contends that Plaintiff cannot show economic loss or an adverse employment action from failure to promote or lost job opportunities, regardless of time limitations, because he cannot show that he applied for any promotions or that applying for promotions would have been futile. <u>Id.</u> at 29:19-32:8.

The Court addresses Defendant's statute of limitations argument elsewhere in this order. First, the Court has reiterated its finding, as set forth in the Court's October 19, 2018 order on Defendant's motion to dismiss the FAC, <u>see</u> Doc. No. 24 at 7:22-28, that the continuing violation doctrine could be applicable to Plaintiff's retaliation claims given Plaintiff's theory that the many people who allegedly wronged him were acting pursuant to an "unwritten policy" of punishing "rats" in the Fresno Fire Department. There are facts pointing in both directions on that question, so the Court cannot decide it, one way or the other, on this motion.

Second, the Court has found that the applicable statute of limitations is not tolled, under any theory, as to Plaintiff's racial discrimination claims because the acts of racial discrimination alleged here cannot be characterized, in any plausible sense, as a single, ongoing act, and Plaintiff has failed to allege (let alone show) that he was unaware of discrimination at the time it occurred.

29

1   Thus, the Court agrees with Defendant that Plaintiff's racial discrimination claims are barred to

2   the extent they arise from adverse employment action (in the form of lost promotions or

3   otherwise) that occurred more than 300 days prior to the required administrative filing (subject,

4   again, to the caveat that the date of that filing is for a jury to decide).

5          The Court does not agree, however, with Defendant's categorical assertion that failures to

6   promote or lost job opportunities on or after the 300-day cut-off are not actionable. Plaintiff

7   asserts that he was subject to various forms of career-inhibiting retaliation that spanned multiple

8   entities and involved several people who were apparently in positions to make—or at least

9   influence—hiring decisions. See Doc. No. 130 at 30:12-20. Defendant does not seek judgment on

10   Plaintiff's retaliation claims on this motion and has not set forth evidence precluding an inference

11   that the widespread retaliation Plaintiff has alleged (and, to some extent, evidenced) made

12   attempts to secure promotion futile.

13          The motion will therefore be GRANTED as to Defendant's contention that the statute of

14   limitations bars claims and recovery under a discrimination theory based on adverse employment

15   events that occurred more than 300 days before Plaintiff's filings with EEOC and DFEH. The

16   motion will be DENIED, however, to the extent Defendant contends that retaliation claims and

17   related recovery are also time-barred, which is a question for the jury to decide. Further, the

18   motion will be DENIED to the extent Defendant seeks to bar claims or recovery based on failures

19   to promote or lost job opportunities within or after the 300-day period prior to Plaintiff's EEOC

20   and DFEH filings.

21   **VII.    Statutory Penalties Under the Seventh Cause of Action for Denial of Rights in Violation**

22   **of Section 3260 of the Firefighters Procedural Bill of Rights Act**

23          Defendant argues that Plaintiff's claim for statutory penalties under section 3260 of

24   FPBORA cannot be based on alleged wrongful acts that took place prior to March 28, 2017 under

25   the applicable statute of limitations, and that Plaintiff cannot recover any statutory penalties under

26   section 3260 of FPBORA because he cannot show malice on the part of the Defendant. Doc. No.

27   129-1 at 32:13-33:20.

28          Plaintiff does not address (or even acknowledge) these arguments in his opposition brief

and is therefore deemed to have conceded them, thus waiving his claim to statutory penalties under section 3260 of FPBORA. See Ramirez v. Ghilotti Bros. Inc., 941 F.Supp.2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); Foster v. City of Fresno, 392 F.Supp.2d 1140, 1146 n. 7 (E.D. Cal. 2005) ("[F]ailure of a party to address a claim in [ ] opposition to a motion for summary judgment may constitute a waiver of that claim."). Summary judgment in Defendant's favor barring statutory penalties under section 3260 of FPBORA is warranted on that basis alone. See Foster, 392 F.Supp.2d at 1146 n.7; see also Est. of McCormack v. Cnty. of San Bernardino, 2022 WL 17078103, at *7 (C.D. Cal. Sept. 14, 2022) (finding, in granting summary judgment to defendant, that plaintiff had conceded claim by failing to address it in opposition to summary judgment motion).

Further, the Court agrees with Defendant's position with respect to the limitations period for statutory penalties under section 3260, see Cal. Code of Civ. Proc. § 340; Doc. No. 62 at 9:12-10:7, and that Plaintiff has failed to set forth evidence showing malice in connection with FPBORA violations that allegedly took place on or after March 28, 2017. Plaintiff asserts a punitive action violation by Fire Chief Donis on June 2017 and personnel file violations by Chief Jonathan Chew in April 2018. Doc. No. 129-2 at 18:21-19:2. Evidence furnished by Plaintiff, however, contains no reference to Chief Chew that the Court can find, and evidence furnished by Defendant shows that Chief Chew was responsive to Plaintiff's requests as to records access. Id. at 19:18-20:3. Evidence as to Fire Chief Donis—which shows, for example, that she sided with Plaintiff in certain instances—is similarly at odds with Plaintiff's unsupported allegations of malice. Id. at 19:8-17.

For the foregoing reasons, the Court will GRANT summary judgment in Defendant's favor as to statutory penalties under the Seventh Cause of Action.

## VIII.   Damages Claims Under the Sixth and Seventh Causes of Action

Plaintiff seeks damages under his Sixth Cause of Action for retaliation in violation of section 1102.5, subdivision (b), of the California Labor Code, and under his Seventh Cause of Action for denial of rights in violation of section 3260 of FPBORA. Doc. No. 64 at 24-28.

Section 945.4 of the California Government Code requires the filing of a claim that meets the requirements of Section 910 of the California Government Code as a prerequisite to an action in tort against a state agency. Blair v. Superior Ct., 218 Cal.App.3d 221, 223 (1990) (citation omitted). Section 910 states that the claim must include:

> (a) The name and post office address of the claimant.
> (b) The post office address to which the person presenting the claim desires notices to be sent.
> (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
> (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.
> (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.
> (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.

Cal. Gov. Code § 910. Further, Section 915 of the California Government Code provides that a claim against a "local public entity" must be presented to the "clerk, secretary, auditor, or … governing body." Id. § 915, subd. (e)(1). The failure to timely present a claim for money or damages to a public entity bars a plaintiff from bringing suit against that entity. Willis v. City of Carlsbad, 48 Cal.App.5th 1104, 1118 (2020).

Plaintiff does not dispute that proper filing of a government tort claim is required for damages under section 3260 of FPBORA and under section 1102.5 of the California Labor Code. See Doc. No. 62 at 8:21-9:11; see also Willis, 48 Cal.App.5th at 1118-19.

Defendant contends that Plaintiff failed to file a government tort claim that meets applicable statutory requirements and that, consequently, he is precluded from pursuing damages under either FPBORA or the California Labor Code. Doc. No. 129-1 at 33:21-34:7. Plaintiff, on the other hand, takes the position that "various complaints" he submitted to Fire Chief Donis and Personnel Services Director Cardell from 2015 through 2017 evidence "substantial compliance" with the California Government Tort Claims Act because they included Plaintiff's name and sufficient information on where to locate him, as well as "the date, place, and specific

circumstances of the occurrence[s]" at issue. Doc. No. 130 at 30:20-31:3. In support of this contention, Plaintiff cites to Plaintiff's Additional Material Fact Nos. 44 and 45, which in turn cite to a 94-page composite exhibit comprising various emails and forms apparently directed to Personnel Services Director Cardell in the three-year period from 2015 to 2017, Doc. No. 131-11, and an eight-page exhibit comprising various emails regarding "Appeal/Grievances Support." Doc. No. 131-28. Plaintiff makes no attempt to map the contents of these documents to the itemized statutory requirements of the California Government Tort Claims Act.

According to Defendant, the records adduced by Plaintiff do not satisfy the California Government Tort Claims Act because they do not: indicate the amount claimed or whether the claim would be a limited civil action; provide the address to which notices should be sent; or indicate that litigation will result if Defendant does not pay damages or otherwise resolve the matters in question. Doc. No. 132 at 20:4-21:27. Further, Defendant states that the records in question were not filed with an authorized claim recipient under section 915, and that the records do not reference section 1102.5 of the California Labor Code as a potential basis for recovery or show that Plaintiff is seeking damages under FPBORA. Id.

"[J]udges are not like pigs, hunting for truffles," DeShields v. Int'l Resort Props. Ltd., 463 Fed.Appx. 117, 120 (3d Cir. 2012), and it "is not the Court's obligation to scour the record" in search of evidence to salvage Plaintiff's claims. Kim Laube & Co., Inc. v. Wahl Clipper Corp., 2013 WL 12084741, at *9 (C.D. Cal. Mar. 8, 2013) (citing Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)). Indeed, it is arguably improper to do so. Cf. Perkins v. City of Elizabeth, 412 Fed.Appx. 554, 555 (3d Cir. 2011) ("Courts cannot become advocates for a party by doing for that party what the party ought to have done for him or herself."). The Court has nonetheless reviewed Plaintiff's filings to the extent appropriate and finds that they are deficient in the ways specified by Defendant. Further, the Court finds that these deficiencies are sufficiently numerous and material to preclude a finding of "substantial compliance" with the California Government Tort Claims Act and that Defendant is entitled a finding, on those grounds, that claims for damages under the Sixth and Seventh Causes of Action are barred. See Willis, 48 Cal.App.5th at 1118; Sparks v. Kem County Board of Supervisors, 173 Cal.App.4th 794, 800 (2009).

**CONCLUSION**

For the foregoing reasons, the Defendant's motion for partial summary judgment, Doc. No. 129, will be granted in part and denied in part.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant City of Fresno's motion for partial summary judgment (Doc. No. 129) is GRANTED in part and DENIED in part as follows:

1. The motion is DENIED as to claims that Plaintiff suffered economic loss or adverse employment action by way of lost promotions or lost job opportunities within or after the 300-day period prior to Plaintiff's EEOC and DFEH filings;

2. The motion is DENIED to the extent Defendant contends that retaliation claims are barred or circumscribed by statutes of limitations;

3. The Court makes no finding as to the date on which Plaintiff's EEOC and DFEH filings occurred; and

4. The motion is GRANTED in all other respects, consistent with the forgoing memorandum.

Further, IT IS HEREBY ORDERED that Plaintiff's ex parte application for an order permitting filing of sur-reply (Doc. No. 133) is DENIED as moot.

This matter is respectfully referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   February 23, 2023                      _____
                                                SENIOR  DISTRICT  JUDGE