**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID PHILLIPS-KERLEY, | Case No.: 1:18-cv-00438 JLT BAM |
| Plaintiff, | ORDER ON MOTIONS IN LIMINE |
| v. | (Doc. 179) |
| CITY OF FRESNO and DOES 1-10, inclusive, | |
| Defendants. | |

David Phillips-Kerley, a former firefighter with the City of Fresno Fire Department, seeks to hold the City liable for retaliation under federal and state law in connection with his employment. (*See* Third Amended Complaint, Doc. 64.) The City has submitted numerous motions in limine, which are now before the Court. (Doc. 179.)

**I.      LEGAL STANDARDS**

**A.      Motions in Limine Generally**

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted).

1

1  The Ninth Circuit explained that motions in limine "allow parties to resolve evidentiary
2  disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a
3  jury." *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted). However, "a
4  motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E*
5  *Services, Inc. v. Ashland Inc*., 539 F. Supp. 2d 316, 323 (D.D.C. 2008), as that is the province of
6  the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will
7  bar use of the evidence in question only if the moving party establishes that the evidence clearly
8  is not admissible for any valid purpose. *Jonasson v. Lutheran Child & Family Services*, 115 F.3d
9  436, 440 (7th Cir. 1997). On the other hand, the rulings on the motions in limine do not preclude
10 either party from arguing the admissibility of the evidence discussed herein, if the evidence
11 adduced at trial demonstrates a change of circumstances that would make the evidence
12 admissible. In this event, the proponent of the evidence **SHALL** raise the issue with the Court
13 outside the presence of the jury.

14        **B.    Federal Rules of Evidence 401-403**

15        Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is
16 relevant if "(a) it has any tendency to make a fact more or less probable than it would be without
17 the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.
18 Even relevant evidence may be excluded "if its probative value is substantially outweighed by a
19 danger of one or more of the following: unfair prejudice, confusing the issues, misleading the
20 jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid.
21 403. In evaluating these Rule 403 considerations, district courts enjoy "wide latitude" to admit
22 evidence. *Hemmings v. Tidyman's Inc*., 285 F.3d 1174, 1184 (9th Cir. 2002). A court may not use
23 Rule 403 to exclude evidence "on the ground that it does not find the evidence to be credible."
24 *See United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013) ("Weighing probative value against
25 unfair prejudice under Rule 403 means probative value with respect to a material fact if the
26 evidence is believed, not the degree the court finds it believable."). That is, "a conflict in the
27 evidence goes to the weight of [the evidence], not to its admissibility." *United States v. Candoli*,
28 870 F.2d 496, 509 (9th Cir. 1989).

1  II.    **ANALYSIS**

2      A.    **Motions to Exclude Evidence**

3          1.    Liability insurance and settlement offers (Docs. 179-2, 179-3)

4      Pursuant to Federal Rules of Evidence 411 and 408, the City seeks to exclude evidence of,

5  and reference to, liability insurance and any settlement offers related to Plaintiff's claims. Indeed,

6  these types of evidence are not admissible. Plaintiff does not oppose either motion. Thus, the

7  motions (Docs. 179-2, 179-3) are **GRANTED**.

8          2.    "Me too" and comparator evidence (Docs. 179-4, 179-7)

9              a.    *"Me too" evidence*

10     The City "anticipates Plaintiff may seek to introduce evidence relating to other lawsuit(s);

11 employee grievances; or claims of retaliation, discrimination or harassment involving the City."

12 (Doc. 179-4 at 2.) The City is concerned that "Plaintiff may try to introduce this evidence under a

13 number of guises, including, but not limited to, direct or cross-examination of employees of the

14 City, or documents or witnesses from other lawsuit(s), claims and/or employee grievances." (*Id*.)

15 The City seeks to exclude this evidence pursuant to Federal Rules of Evidence 401, 402, 403, and

16 404(b). (*Id*. at 1-2.) It also asserts the evidence should be excluded because it was not produced in

17 discovery or contained in the pretrial order. (*Id*. at 2.) Plaintiff opposes the motion, arguing that

18 "me too" evidence is admissible to prove discriminatory intent. (Doc. 182 at 6.)

19     In general, evidence of other wrongs or acts may be admitted to demonstrate a defendant's

20 motive or intent. Fed. R. Evid. 404(b); *see also United States v. Bailey*, 696 F.3d 794, 808 (9th

21 Cir. 2012) (Smith, M., dissenting) ("We have repeatedly held … that Rule 404(b) is an inclusive

22 rule designed to permit the admissibility of prior act evidence when it is offered for any other

23 legitimate basis than to prove propensity."). More specifically, "[e]vidence related to an

24 employer's past acts involving other, third-party employees—commonly referred to as 'me-too'

25 evidence—could still potentially be probative of wrongful motive or intent for an individual

26 claim." *Dittmar v. City of N. Las Vegas*, 2023 WL 9119774, at *5 (D. Nev. Oct. 19, 2023), *appeal*

27 *dismissed*, 2024 WL 4211488 (9th Cir. May 8, 2024). Whether "me too" evidence is relevant is a

28 case-by-case determination that "depends on many factors, including how closely related the

1    evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v.*

2    *Mendelsohn,* 552 U.S. 379, 388 (2008). Balancing under Rule 403 "also requires a fact-intensive,

3    context-specific inquiry." *Id.*

4         Courts admit this type of evidence frequently, upon the proper showing. For example, in

5    *Heyne v. Carruso,* 69 F.3d 1475, 1481 (9th Cir. 1995), the Ninth Circuit reversed the trial court's

6    decision to exclude "me too" evidence, finding evidence from other employees who suffered

7    harassment by the defendant probative of the defendant's motive for firing the plaintiff. *Id.*

8    Similarly, in *Buckley v. Mukasey,* 538 F.3d 306, 319 (4th Cir. 2008), the court determined that

9    evidence of retaliatory motive is relevant under Rule 401 and admissible under 404(b).

10        In *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1286 (11th Cir. 2008)—a case

11   involving claims of racial discrimination, retaliation, and hostile work environment—the court

12   held: "The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of Bagby

13   Elevator to discriminate and retaliate." It explained that evidence about other employees who

14   suffered retaliation for engaging in the same protected conduct as Goldsmith—complaining about

15   racial discrimination—was probative of Bagby Elevator's intent to retaliate, as it "suggested that

16   any black employee of Bagby Elevator who complained about racial discrimination was

17   terminated." *Id.* The court also held that the "me too" evidence was relevant to Goldsmith's

18   hostile work environment claim because it "established the recurrent use of racial slurs by

19   employees of Bagby Elevator and … supported Goldsmith's claim that Bagby Elevator permitted

20   a severe and pervasive atmosphere of racial discrimination on its premises." *Id.*

21        Plaintiff asserts he "will call witnesses who also believe the working conditions at [the

22   City] to be abusive, harassing and discriminatory…." (Doc. 182 at 5.)[1] This vague description is

23   insufficient for the Court to determine whether it constitutes permissible "me too" evidence. Most

24

25   _____

     [1] Plaintiff relies on *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1248 (1994) in asserting that these
     witnesses will be called "[t]o prove that Plaintiff acted as a reasonable person faced with intolerable
26   working conditions." (Doc. 182 at 5.) However, the legal standard cited by Plaintiff applies to a claim for
     constructive discharge, which is not alleged in this case. *See Turner,* 7 Cal. 4th at 1244. In *Turner,* the
27   Supreme Court of California held that "the standard by which a *constructive discharge* is determined is an
     objective one—the question is whether a reasonable person faced with the allegedly intolerable employer
28   actions or conditions of employment would have no reasonable alternative except to quit." *Id.* at 1248
     (emphasis added).

1    notably, the Court has determined already that the City did not discriminate against Plaintiff.

2    Thus, until the Court is provided specific citations to deposition testimony, or an offer of proof is

3    made outside the presence of the jury as to the content of the proposed testimony, Plaintiff

4    **SHALL NOT** attempt to admit this evidence.

5         To the extent the City contends Plaintiff's "me too" witnesses should be precluded from

6    testifying at trial pursuant to Federal Rule of Civil Procedure 37, the Court cannot, on the

7    information before it, determine whether the witnesses were disclosed in discovery or, if they

8    were not, whether Plaintiff's failure to disclose was justified.[2] *See Simmons v. Morgan Stanley*

9    *Smith Barney, LLC*, 2014 WL 895625, at *9 (S.D. Cal. Mar. 6, 2014). Therefore, the Court

10   **RESERVES** ruling on the City's motion (Doc. 197-6) in its entirety.

11                                    *b.    Comparator evidence*

12        The City also anticipates that Plaintiff will rely on comparator evidence to prove his

13   claims, and as such, requests that he be required to "make a showing, outside the presence of the

14   jury, to establish that Plaintiff can meet the requisite level of similarity to the alleged

15   comparators." (Doc. 179-7 at 1.)

16        Comparators are employees similarly situated to the plaintiff and used as circumstantial

17   evidence of the defendant's discriminatory or retaliatory motive. *McDonnell Douglas Corp. v.*

18   *Green*, 411 U.S. 792, 804 (1973). In the retaliation context, this may include evidence that a

19   similarly situated employee engaged in similar protected activity but was not subject to adverse

20   action. *See Nessel v. JDM Golf LLC*, 2024 WL 3494378, at *5 (D. Ariz. July 22, 2024), *appeal*

21   *dismissed*, 2024 WL 5398590 (9th Cir. Dec. 26, 2024) ("A Title VII plaintiff relying on

22   comparator evidence to show pretext for an adverse employment action must identify employees

23   outside the plaintiff's protected class who were similarly situated to the plaintiff but who were not

24   subject to the adverse action."); *see also Hobdy v. Los Angeles Unified Sch. Dist.*, 386 F. App'x

25   722, 724 (9th Cir. 2010) ("Hobdy's comparator evidence was insufficient to raise a genuine issue

26   of material fact regarding pretext for retaliation because there was no evidence indicating whether

27

28   ---
[2] Rule 37 provides in part: "If a party fails to … identify a witness as required by Rule 26(a) …, the party is not allowed to use that … witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R .Civ. P. 37(c)(1).

1    or not [the comparator] engaged in protected activity.").

2        Comparators must be similar in "all material respects," including having similar jobs,

3    displaying similar conduct, and engaging in "problematic conduct of comparable seriousness."

4    *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *see also Moran v. Selig*,

5    447 F.3d 748, 755 (9th Cir. 2006). However, "employees need not be identical," and

6    "[m]ateriality depends on context and is a question of fact that cannot be mechanically resolved."

7    *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (citations and

8    quotations omitted).

9        Like the anticipated "me too" evidence, the Court cannot determine on the information

10   before it whether Plaintiff's comparator evidence should be admitted.[3] For example, Plaintiff

11   asserts that he will present evidence of "a similarly situated employee," then argues: "Despite the

12   fact that these comparators engaged in 'behavior' far worse than that Plaintiff is accused of, they

13   were not accused of or disciplined. Because they were not subject to harassment and *did not*

14   *complain*, they were not demoted, placed on administrative leave, nor did they suffer discipline."

15   (Doc. 185 at 2, emphasis added.) This statement suggests that these others are not comparators

16   but, if they are, at a minimum, that they did not engage in similar protected activities as Plaintiff

17   and were not, therefore, similarly situated. Therefore, Plaintiff **SHALL NOT** attempt to introduce

18   any comparator evidence unless and until he makes a showing—outside the presence of the

19   jury—as to its admissibility.

20       Separately, the City contends that any comparator evidence should be excluded at trial

21   pursuant to Rule 37. (Doc. 179-7 at 2.) As discussed above, the Court cannot yet determine

22   whether any comparator witnesses were disclosed in discovery or, if they were not, whether

23   Plaintiff's failure to disclose was justified. To this extent, the Court **RESERVES** ruling on the

24   City's motion.

---

25   [3] Plaintiff makes other assertions that further confuse his position on the matter. For example, he states that

26   the value of background information comparing similarly situated employees "in *and* out of Plaintiff's
     protected class" is not outweighed by the dangers provided in Rule 403. (Doc. 185 at 2, emphasis added.)
     He also claims that he and the witnesses "held the same position, with the same supervisors and *suffered*

27   *the same fate* or didn't because of their conduct." (*Id.*, emphasis added.) Finally, Plaintiff asserts he is
     entitled to offer this "direct evidence of disparate treatment," despite having no disparate treatment claim.

28   (*Id.* at 3.)

1          3.        Adjudicated claims (Doc. 179-5)

2          The City moves to preclude Plaintiff from referencing or introducing evidence of the

3    City's violation of statutory obligations that have been adjudicated in its favor. (*See* Doc. 179-5 at

4    1-2, 5.) These include claims for (1) violation of civil rights under 42 U.S.C. § 1983; (2)

5    retaliation under California Labor Code § 1102.5; (3) violation of the California Firefighter's Bill

6    of Rights (FBOR); (4) discrimination under FEHA and/or Title VII; (5) racial harassment and/or

7    failure to prevent racial harassment under FEHA and/or Title VII; or (6) common law torts. (*Id.* at

8    1.)

9          Plaintiff opposes the motion as it relates to FBOR violations and comments made about

10   his race. (Doc. 183 at 2.) He argues that although his FBOR claim and race-based claims have

11   been adjudicated, his *complaints* that Captains Gill and Caldwell violated his FBOR rights when

12   they interrogated Plaintiff because of his race were what resulted in the retaliation and harassment

13   that form the basis of his surviving claims. (*See id.*) Thus, Plaintiff argues the jury should be able

14   to consider testimony regarding these complaints for the limited purpose of proving his retaliation

15   and harassment claims. (*See id.* at 2, 6.) He clarifies that he does not intend to seek damages for

16   the FBOR violation itself, but rather, for the retaliatory acts that resulted from his complaints. (*Id.*

17   at 7.)

18         The City's motion (Doc. 179-5) is **GRANTED IN PART** and **DENIED IN PART**. To

19   the extent the City's motion seeks to preclude Plaintiff from referencing, or offering evidence of,

20   claims that have been adjudicated, as listed above, the motion is **GRANTED** as unopposed. The

21   parties **SHALL NOT** offer evidence or argument that pertains solely to Plaintiff's adjudicated

22   claims and bears no relevance to his surviving claims. *Bryant*, 2017 WL 5714721, at *2.

23         On the other hand, the Plaintiff is not precluded from offering evidence that he made

24   complaints to demonstrate the City's motive or intent to retaliate. *See Bryant*, 2017 WL 5714721,

25   at *2 (citing *Saenz v. Reeves*, 2013 WL 2481733, at *5 (E.D. Cal. June 10, 2013) (granting in part

26   and denying in part motion in limine because "[m]atters pled and dismissed [were] not relevant to

27   [p]laintiff's remaining claims" but plaintiff "should not be precluded from offering background

28   facts regarding the events at issue, which may include facts related to his dismissed claims");

1   *Madani v. Equilon Enter., LLC*, 2009 WL 3789133, at *2 (C.D. Cal. July 2, 2009) (concluding

2   that "where there is common evidence establishing a claim that has been dismissed and a claim

3   remaining in the case, such evidence will not be precluded")). To this extent, the City's motion is

4   **DENIED**. To avoid confusing the issues and misleading the jury, Plaintiff **SHALL NOT** offer

5   any evidence that, in fact, any of the conduct constituted a violation of FBOR or to explain the

6   factual circumstances giving rise to his complaints, because the Court determined that claims

7   based upon the FBOR in the City's favor. (Doc. 136 at 30-33) Plaintiff **SHALL NOT** expand on

8   the factual circumstances giving rise to his complaints insofar as they do not relate to the claims

9   to be tried by the jury.

10              4.      Adverse employment actions (Doc. 179-8)

11          With respect to Plaintiff's Title VII retaliation claim, the City seeks to limit the evidence

12  Plaintiff is permitted to introduce regarding the City's alleged adverse employment actions to

13  those identified in Plaintiff's pleadings and in discovery, which include: "(1) a fine modification

14  agreement dated September 1, 2015 that relates to a suspension in 2011; (2) a two-shift

15  suspension dated October 1, 2015; (3) [the] City's actions to dissuade other fire agencies from

16  hiring Plaintiff in 2016; (4) two letters of understanding in 2017; (5) an eight-shift suspension

17  dated August 15, 2017; and (6) the City's failure to promote Plaintiff to Fire Captain and Fire

18  Battalion Chief." (Doc. 179-8 at 1.) The City argues it would be unduly prejudicial to defend

19  additional adverse actions at trial. (*Id.* at 2.)

20          Plaintiff makes the same arguments as those he asserted in his opposition to the City's

21  motion concerning comparator evidence. *Compare* Doc. 185 at 1-2 *with* Doc. 186 at 1-2.) Beyond

22  this, he argues that he should not be limited to the six actions identified by the City. (Doc. 186 at

23  14.) Plaintiff offers a bulleted list of "identified adverse actions" comprising more than eleven

24  pages. Seemingly, he uses his opposition as an opportunity to assert new allegations and recite

25  facts already alleged; many items are not "actions" of the alleged wrongdoers at all. Of those that

26  *could* be categorized as adverse employment actions, some were not alleged in the Plaintiff's

27  Third Amended Complaint. (*See, e.g.,* Doc. 186 at 12-14 [instances dating September 2017 to

28  May 2021].) Others have been adjudicated in the City's favor. (*See, e.g.*, *id.* at 8 [two-shift

1    suspension in October 2015]; Doc. 110 [denying motion for leave to file supplemental complaint

2    to assert, *inter alia*, additional adverse employment actions occurring between October 2020 and

3    February 2021].) [4]

4            On the other hand, the City's assertion that "Plaintiff has consistently alleged during this

5    litigation" only six specific adverse actions, is incorrect. (Doc. 179-8 at 3.) Plaintiff alleges many

6    more adverse actions in his TAC and in the parties' joint pretrial statement. Moreover, the City

7    indicated in the pretrial statement that the "significant" adverse actions included: "(1) a settlement

8    involving a fine; (2) a 2-shift suspension (this adverse action has already been adjudicated in

9    favor of the City); (3) an 8-shift suspension; and (4) the failure to promote to fire captain." (Doc.

10   156 at 21.) In short, it is unclear how or why the City reduced the actions to the six it now

11   identifies. The Court has found no prior ruling of this Court that limits Plaintiff to these actions

12   and declines to further scour the record in search of one.

13           In the absence of any citation to the record or deference to prior court orders, the Court

14   declines to accept either party's proposed list of adverse employment actions. Plaintiff may

15   introduce evidence of adverse actions that were alleged in his TAC provided no ruling of this

16   Court bars him from doing so. He may not, however, raise claims or attempt to introduce adverse

17   actions that he did not allege in his TAC. Accordingly, the motion (Doc. 179-8) is **DENIED**. The

18   parties **SHALL** engage in further *meaningful* discussion to come to agreement as to the adverse

19   employment actions at issue before trial. Indeed, the jury instructions will depend on it. *See* 9th

20   Cir. Manual of Model Civ. Jury Instr. 10.8.

21               5.    Two-shift suspension and order of removal (Doc. 179-9)

22           The City seeks to preclude Plaintiff from arguing or introducing evidence that the two-

23   shift suspension in October 2015 or the City's July 2023 order of removal were unlawful and/or

24   motivated by retaliatory animus. For his part, Plaintiff clarifies that he does not intend to

---

25   [4] In its partial summary judgment order, District Judge Ishii concluded: "Plaintiff is barred from showing

26   that the two-shift suspension was based on pretext and from using the two-shift suspension to establish a
     claim for retaliation, discrimination or harassment, whether under FEHA or Title VII." (Doc. 136 at 28.)

27   The Court clarified that this holding pertained to the two-shift suspension issued on October 1, 2015 (*id.* at
     9), which concerned the "6/27/14 matter" specified by Plaintiff. (Doc. 186 at 8; *see also* TAC ¶¶ 41, 48.)
     As discussed further below, Plaintiff acknowledges this ruling and concedes that he is so precluded. (*See*

28   Doc. 187 at 3.)

1   introduce evidence or argue that the suspension or order of removal were motivated by retaliatory

2   animus. (Doc. 187 at 1.) Plaintiff asserts, however, that he intends to introduce evidence of the

3   retaliation he was subjected to following his *appeal* of the suspension order, which the City's

4   motion does not seek to exclude. Plaintiff supports the jury receiving a limiting instruction that he

5   "is not entitled to damages regarding the two-shift suspension but … for the limited purpose to

6   show how the retaliation increased after Plaintiff filed his appeal thereto." (*Id.* at 3.)

7        Thus, the City's motion (Doc. 179-9) is **GRANTED** as unopposed. Plaintiff and his

8   counsel **SHALL NOT** argue, suggest, or offer testimony or evidence that the order of removal or

9   two-shift suspension were themselves adverse employment actions or acts of retaliation stemming

10  from Plaintiff's engagement in protected activity, or that they were motivated by retaliatory

11  animus or were otherwise unlawful. However, Plaintiff is not precluded from referencing these

12  actions *only* insofar as they provide relevant background for any admissible retaliatory acts that

13  followed. Nonetheless, Plaintiff may not resurrect claims or adverse actions that have been

14  previously disposed of via Court order or otherwise or to raise issues that were not plead in the

15  TAC. Indeed, all counsel are reminded that they are obligated to produce only that evidence

16  which is pertinent to Plaintiff's retaliation-based claims. The evidence and testimony of all

17  witnesses **SHALL** conform to this order.

18       **B.    Motions to Limit Plaintiff's Testimony**

19           1.    Terms of law (Doc. 179-6)

20        Citing Federal Rules of Evidence 401-403, 602, and 701, the City seeks to preclude

21  Plaintiff and any of his "me too" witnesses from testifying that they were "harassed",

22  "discriminated" against, or "retaliated" against, or that they were subjected to "harassment",

23  "discrimination", "retaliation", or a "hostile work environment". (Doc. 179-6.) In response,

24  Plaintiff argues that without knowing the nature of Plaintiff's complaints, the jury would be

25  deprived of evidence demonstrating the City's motive to retaliate. (*See* Doc. 184 at 2.) The Court

26  disagrees. Plaintiff bears the burden of showing that he engaged in protected conduct—workplace

27  complaints—and, as a result, he suffered retaliation. Plaintiff provides no cogent argument or

28  authority that what the complaints were about or why he complained have any bearing on these

1    issues. Indeed, complaining about a minor issue matter would no more justify retaliation that a

2    complaint about a very serious issue.

3            Under Federal Rule of Evidence 701, a witness who is not testifying as an expert may

4    offer testimony in the form of an opinion if it is: "(a) rationally based on the witness's perception;

5    (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

6    (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule

7    702." "While it is true that Plaintiff's evidence presented at trial must not include improper lay

8    opinions or legal characterizations," the City's concerns appear speculative at this stage. *Bryant v.*

9    *OptumRX Pharmacy, Inc.*, 2017 WL 5714721, at *2 (C.D. Cal. May 10, 2017), *aff'd sub nom.*

10   *Bryant v. Unitedhealth Grp., Inc.*, 744 F. App'x 488 (9th Cir. 2018) (citing *Gunchick v. Fed. Ins.*

11   *Co.*, 2015 WL 1781404, at *6 (C.D. Cal. Apr. 20, 2015) (denying motion in limine seeking to

12   preclude plaintiff and his witnesses from using terms including "discrimination," "retaliation,"

13   and "harassment" and noting that defendants could object to improper use of those terms at trial);

14   *Borges v. City of Hollister*, 2005 WL 6019704, at *4 (N.D. Cal. Aug. 24, 2005) (denying motion

15   in limine seeking to preclude any nonexpert from using certain terms because "'[h]arassment' and

16   'discrimination' are words in general usage, and a witness should be able to use them in

17   testimony")).

18           Plaintiff clarifies in his opposition that he does not intend to introduce inadmissible lay

19   opinion testimony. (Doc. 184 at 6.) Moreover, as previously discussed, the Court is not privy to

20   the identity of Plaintiff's "me too" or comparator witnesses or the nature of their expected

21   testimony. With that said, as discussed above, the Court emphasizes that no witness may testify as

22   to the nature or circumstances surrounding Plaintiff's complaints, but they may describe the

23   conduct that followed. Accordingly, the City's motion (Doc. 179-6) is **GRANTED** such that no

24   witness may testify as to a legal conclusion or "use those terms to present an improper legal

25   conclusion." *Bryant*, 2017 WL 5714721, at *2.

26           2.    Sabotage, intimidation, and Plaintiff's conduct when testifying (Docs. 179-

27                 10, 179-21)

28           The City moves to preclude Plaintiff from testifying that "(1) the City sabotaged his

1  efforts to obtain employment with another fire agency; (2) the City had Plaintiff's wife terminated

2  from her employment; and/or (3) Don MacAlpine intimidated his wife at his home." (Doc. 179-

3  10 at 2.) The City also seeks an order admonishing Plaintiff that when testifying, his answers

4  must be responsive to the questions posed and based on his personal knowledge, as required by

5  Federal Rule of Evidence 602. (Doc. 179-21.) Plaintiff did not file an opposition to either motion.

6  Therefore, the motions (Docs. 179-10, 179-21) are **GRANTED**.

7              3.      Plaintiff's and other applicants' qualifications (Doc. 179-13)

8           The City seeks to preclude Plaintiff from testifying that he was more qualified to promote

9  to Fire Captain and/or Fire Battalion Chief than other applicants who were selected for those

10  positions. (Doc. 179-13.) Plaintiff states he has no intention of testifying that he is more qualified;

11  instead, he intends to offer testimony related to his qualifications in general, at which point the

12  jury can determine whether he was qualified and, if so, to what extent.[5] (Doc. 190 at 2.) With

13  respect to this request, the City's motion (Doc. 179-13) is **GRANTED** as unopposed.

14           The City also seeks to preclude Plaintiff and his counsel from referencing, testifying or

15  eliciting testimony about, or introducing evidence relating to, the job performance and post-

16  promotional conduct of any applicants who were successfully promoted to Captain or Battalion

17  Chief. (Doc. 179-13 at 2.) The City argues that such evidence bears no relevance to Plaintiff's

18  claims, lacks foundation, constitutes improper opinion testimony, and is unduly prejudicial. (*Id.* at

19  2-4.) Plaintiff does not address the City's request in his opposition. (*See generally* Doc. 190.)

20  Thus, this aspect of the City's motion is also **GRANTED** as unopposed. No such evidence will

21  be admitted unless and until Plaintiff establishes its admissibility outside the presence of the jury.

22  Moreover, Plaintiff's counsel **SHALL NOT** reference the post-promotional conduct of any

23  successful applicants during voir dire or opening statement.

24              4.      Juice bottle incident (Doc. 179-18)

25           According to the TAC, "on or about June 3, 2017, Plaintiff discovered mucous and

26  _____

27  [5] Plaintiff asserts that retained expert witness Robert May is expected to testify about Plaintiff's qualifications, at which point the jury can determine whether he was qualified and, if so, to what extent. (Doc. 190 at 2.) The Court's ruling does not apply to May's testimony, as this is the subject of a separate

28  motion in limine, which the Court addresses *infra*.

1    phlegm in his personally marked juice bottle, which he kept in the Fire Station refrigerator."

2    (TAC ¶ 83.) Plaintiff alleges he reported the incident to his Captain, who notified the Battalion

3    Chief. (*Id*.) On June 20, 2017, he e-mailed his Chief and the Director of Personnel regarding the

4    incident, and his Chief replied that "the matter would be investigated." (*Id*. ¶ 84.) On July 14,

5    2017, Plaintiff met with Senior Human Resources Risk Analyst David Bolton regarding the

6    incident. (*Id*. ¶ 87.) He argues that despite his complaints, "the Department failed to investigate."

7    (*Id*. ¶ 83.) Plaintiff's deposition testimony is largely consistent with these allegations. (*See* Doc.

8    179-18 at 11-12 [Pl. Dep. at 404-406].) He testified that he does not know who committed the act.

9    (*See* Pl. Dep. at 408:20-25, 409:1-4.)

10        The City moves to preclude Plaintiff from testifying that an unknown person spit into his

11    juice bottle and Plaintiff's counsel from referencing the incident during voir dire or opening

12    statement. (Doc. 179-18 at 1.) The City argues this testimony "lacks foundation, and is

13    speculative, self-serving and irrelevant." (*Id*.) It also seeks preclusion pursuant to Rule 403,

14    arguing that Plaintiff "likely will attempt to proffer the anticipated evidence to inflame the jury

15    and create emotional bias" against the City. (*Id*. at 3.)

16        The Court agrees that without knowing the individual's identity, Plaintiff cannot establish

17    that the individual had knowledge of Plaintiff's protected activity, or that the individual acted in

18    retaliation for Plaintiff's protected activity. (*See* Doc. 179-18 at 2.) Without demonstrating this

19    nexus, Plaintiff may not rely on the juice bottle incident itself as an adverse employment action to

20    establish his claims for retaliation, retaliatory harassment, or failure to prevent retaliatory

21    harassment. In other words, plaintiff may not attempt to prove that the juice bottle incident was

22    itself a retaliatory act. *See Harper v. Lugbauer*, 2014 WL 1266305, at *11 (N.D. Cal. Mar. 21,

23    2014), *aff'd*, 709 F. App'x 849 (9th Cir. 2017) (quoting *Filipino Yellow Pages, Inc. v. Asian

24    Journal Publications, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) (holding that "vague,

25    uncorroborated, and clearly self-interested testimony did not create a genuine issue for trial").

26        Having said this, the City's failure to investigate Plaintiff's *complaints* about the juice

27    bottle incident may bear on the City's motive to retaliate. (*See* TAC ¶ 78; Doc. 179-18 at 11-12

28    [Pl. Dep. at 404-406].) As such, Plaintiff may offer testimony that he complained to management

1    about this incident. He may offer only general information about his complaint and may not

2    imply that the spit in his bottle was an act of retaliation. Before offering this evidence, Plaintiff

3    **SHALL** confer with defense counsel to come to agreement about how the evidence related to this

4    incident may be presented to the jury. If they do not agree, Plaintiff **SHALL NOT** offer this

5    evidence without first making an adequate showing to the Court outside the presence of the jury.

6    Accordingly, the City's motion (Doc. 179-18) is **GRANTED in part** and **DENIED in part**.

7                    5.    Medical conditions, diagnoses, causation, etc. (Doc. 179-19)

8             Relying largely on Federal Rule of Evidence 701, the City moves for an order precluding

9    Plaintiff (1) "from referring to, testifying about or introducing any evidence, documentary or

10   testimonial, that the alleged retaliatory conduct caused certain medical/psychological conditions,

11   including high blood pressure;" (2) "from testifying/opining as to any medical or psychological

12   diagnosis;" and (3) from "report[ing] what any medical practitioner reported to him." (Doc. 179-

13   19 at 1.)

14            Plaintiff responds as follows:

15            Plaintiff agrees that he should be precluded from offering medical
16            opinions or inferences about the nature or extent of his alleged
              injuries. However, as a non-expert witness, Plaintiff may testify as
              to matters in his personal experience, personal understanding, and
17            as to his medical history and records, including what has happened
              [to] him, how he has felt, and any issues or feelings he has
18            experienced, such as pain, relating to his medical needs or
              condition, including any current pain or issues. Plaintiff will not
19            testify as to any medical matter which requires scientific, technical,
              or other specialized knowledge. *This includes any diagnosis, cause
20            and effect relationship, and/or the interpretation of medical
              records.*

21

22   (Doc. 196 at 2, emphasis added.)

23            An individual is permitted to testify as to "scientific, technical or other specialized

24   knowledge" if he or she is "qualified as an expert by knowledge, skill, experience, training, or

25   education" and the testimony (1) will help the trier of fact, (2) is based upon sufficient facts or

26   data; (3) is the product of reliable principles and methods, and (4) reflects a reliable application of

27   those principles and methods to the facts of the case. Fed. R. Evid. 702. On the other hand, a

28   witness who lacks such qualifications may only testify as to opinions "rationally based on the

1   witness's perception." Fed. R. Evid. 701.

2          Plaintiff may testify as to about his own experiences, his mental or physical state, how any

3   alleged condition has impacted his life, and any other information that is within his own personal

4   knowledge and based upon his own perceptions. He may not offer any medical opinions or

5   scientific conclusions related to his injuries, condition, prognoses, diagnoses, or causation; or

6   report what any medical professional told him regarding the same.[6] Accordingly, the City's

7   motion (Doc. 179-19) is **GRANTED**.

8          **C.    Motions Related to Failure to Promote**

9          Plaintiff contends that but for the retaliation, harassment, and related misconduct he

10  endured while employed by the City[7], he would have been promoted from Engineer Specialist to

11  Fire Captain in 2012 and by 2016, would have taken the exam to promote to Fire Battalion Chief.

12  (*See* Doc. 156 at 3, 14-15; Doc. 179-12 at 2, citing Pl. Dep. at 415:17-21; 417:15-418:9, 422:19-

13  423:12; Doc. 189 at 2.) It is undisputed that since 2009, Plaintiff has not applied to promote to

14  either of these positions. (*See* Doc. 159 at 2.) However, the Court previously held that Plaintiff

15  may pursue his failure to promote claim based on the "futile gesture doctrine." (*See* Doc. 136 at

16  30.)

17          1.    Equitable issues (Doc. 179-11)

18          The City requests that equitable issues, including back pay, front pay, and the futile

19  gesture doctrine, be tried to the Court, and that the Court preclude presentation of this evidence to

20  the jury. (Doc. 179-11 at 2.) Plaintiff—and the Court—agrees that equitable issues, including

21  front pay and back pay, are questions of law to be resolved by the Court, whereas the jury decides

22  matters of liability and non-economic damages. (Doc. 188 at 1.) The City's motion is

23  **GRANTED** to this extent. However, the Court disagrees with the City's argument that

24  application of the futile gesture doctrine "solely relates to the equitable determination as to

25

26  [6] Federal Rule of Evidence 803(4) permits Plaintiff to testify as to what he told medical professionals for
    purposes of diagnosis and treatment, not what the medical professionals told him. *See Bulthuis v. Rexall*
27  *Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985) ("Rule 803(4) applies only to statements made by the patient
    to the doctor, not the reverse.").

28  [7] Again, however, in this litigation only his claims about retaliation are at issue.

1   Plaintiff's lost wages." (Doc. 179-11 at 2.)[8]

2       Success on a failure to promote claim in which the employee did not apply for the

3   promotion requires proof that application would have been futile. *See Int'l Bhd. of Teamsters v.*

4   *United States*, 431 U.S. 324, 366-68 (1977). Indeed, the City identifies the failure to promote as

5   an adverse employment action for purposes of Plaintiff's Title VII retaliation claim *and*

6   acknowledges that a plaintiff may rely on the futile gesture doctrine to support such a claim. (*See*

7   Doc. 156 at 16, 21, 26; Doc. 179-8.) The City also recognizes that "[i]n its Partial Summary

8   Judgment Order, the Court left open that Plaintiff may attempt to establish futility" to prove his

9   retaliation claims. (Doc. 156 at 26; citing Doc. 136 at 30; *see also* Doc. 179-12 at 1-2.)

10      Accordingly, Plaintiff may present—and the jury may consider—evidence that he suffered

11  "various forms of career-inhibiting retaliation … involv[ing] several people who were apparently

12  in positions to make—or at least influence—hiring decisions." (Doc. 136 at 30.) Assuming he

13  makes this preliminary showing, he may then present evidence that applying for a promotion

14  would have been a futile gesture.

15      Unless the parties come to a stipulation on this topic, the Court anticipates that on the

16  verdict form, the jury will first be asked to find whether Plaintiff suffered retaliation, then,

17  whether the retaliation was done by those who would make the promotion decision or who could

18  influence that decision, then whether Plaintiff was discouraged from applying and/or that the

19  "widespread retaliation … made attempts to secure promotion futile," and, finally, whether

20  Plaintiff would have been promoted  had he applied for a promotion. (*Id.*) Once these factual

21  questions are determined, the Court will determine the back and/or front pay, as necessary.

22      Insofar as this evidence relates only to the Court's equitable obligations in determining

23  economic damages, such as the availability of a remedy and the amount of any award, the jury

24  will not decide these issues, and this evidence is not relevant or admissible at the trial. *See* Fed. R.

25  Evid. 401, 402. Otherwise, as explained above, this evidence may be admissible. The City's

26  motion (Doc. 179-11) is **DENIED** on these grounds.

27  ///

28
---
[8] Plaintiff does not take a position on the matter. (*See* Doc. 188.)

1          2.      Temporal limitations (Doc. 179-12)

2          The City seeks to limit the scope of evidence that may be offered to prove Plaintiff's

3  failure to promote claim to the following: (1) examination processes that took place between 2012

4  (when Plaintiff would have taken the Fire Captain exam, according to his deposition testimony)

5  and May 8, 2018 (the date of the most recent allegation in the TAC); and (2) examination

6  processes for promotion to Battalion Chief that took place no earlier than four years following

7  Plaintiff's appointment to Captain (the amount of experience required to apply for Battalion Chief

8  position). (Doc. 179-12 at 2-4, citing; Ex. B [City of Fresno Job Specification – Fire Battalion

9  Chief]; Fresno Municipal Code § 3-272.)[9] Plaintiff does not oppose this request. (*See generally*

10 Doc. 189.)

11         The City also argues that based upon the pleadings, discovery, and Plaintiff's deposition

12 testimony, Plaintiff should be precluded from testifying at trial that: "(1) anyone from the City

13 discouraged him from participating in a promotional opportunity based on his protected activity;

14 or (2) the City had a wide-spread practice or policy of not promoting individuals who filed a

15 complaint of discrimination/harassment." (Doc. 179-12 at 4.) Plaintiff responds that he does not

16 intend to offer either testimony. (Doc. 189 at 2.) Therefore, the City's motion (Doc. 179-12) is

17 **GRANTED** as unopposed.

18 ///

19
   _____
20 [9] The City outlines the promotional process as follows:

21         Fire Captain and Fire Battalion Chief are classified positions within the City's Civil
           Service System. For promotional opportunities for Fire Captain, the City's Personnel
22         Services Department creates an exam which typically includes a written examination, an
           oral examination and an assessment portion. Only those members of the Fire Department
           expressing interest in the promotional opportunity through submission of a complete
23         application, as well as meeting the minimum qualifications, are allowed to participate in
           the promotional process. The candidate must obtain a passing score on the written
24         examination to proceed to the next phases of the examination. For those applicants
           proceeding through all phases of the examination, an eligibility list is created based on
25         his/her numerical score from highest to lowest. Based upon the number of openings, the
           Personnel Services Department will certify a list of eligible candidates to be provided to
26         the appointing authority (Fire Chief) for consideration for promotion. Pursuant to the
           Fresno Municipal Code, the candidates are considered equal for selection at that time.
27         After interviews are conducted, the Fire Chief makes a final selection. See Fresno
           Municipal Code Sections 3-214 - 3-229.
28 (Doc. 179-12 at 2-3.) Plaintiff does not dispute these procedures.

3.    Post-termination damages (Doc. 179-15)

Relatedly, the City moves for an order precluding Plaintiff from pursuing damages—economic and non-economic—incurred after July 11, 2023, the date his employment was terminated. With respect to economic damages, the City notes that "Plaintiff is attempting to pursue adverse actions based on a failure to promote, and seeks losses for such promotions in terms of differential pay." (Doc. 179-15 at 2.) The City also contends that Plaintiff filed government claims asserting general damages based on his termination and that Plaintiff has indicated his intent to file a separate lawsuit related to the events surrounding his termination. (*Id.*) The City argues it would be prejudicial to require the City to defend overlapping general damage claims. (*Id.*) For these reasons, the City requests that the Court exclude *any* evidence of damages incurred after July 11, 2023, and preclude any argument that Plaintiff suffered such damages. (*Id.* at 3.)

Plaintiff opposes exclusion of damages after July 11, 2023, merely asserting that they are actionable. (Doc. 192 at 1.) He explains that his retained expert, economist Darryl Zengler, calculated Plaintiff's lost earnings based on his failure to promote to Fire Captain and Fire Battalion Chief, and that this amount was reduced by mitigating factors based on Plaintiff's income as a Firefighter Specialist/Engineer. (*Id.* at 2.) Plaintiff also claims that Mr. Zengler's expert report was timely disclosed to the City. (*Id.*) However, Plaintiff fails to explain why any damages based on a failure to promote should extend past his termination date since he has not alleged these damages in his complaint.

Plaintiff previously represented to the Court that he intended to file a separate lawsuit surrounding his termination from employment with the City, which included similar/overlapping claims and damages as those asserted in this case. (*See* Doc. 156 at 46; Docs. 161-62.) Apparently, he did not do so. However, he offers no explanation why this means he can expand this litigation beyond that which he has plead in his TAC. Therefore, the City's motion (Doc. 179-15) is **GRANTED**.

///

///

1

**D.     Miscellaneous Motions**

2

      1.     Notice of witness identity (Doc. 179-1)

3

      The City's first motion seeks an order requiring counsel to give 24-hour notice of the

4

identity of any witnesses expected to be called on following trial day. It also requests that the

5

Court exclude witnesses from the courtroom pursuant to Federal Rule of Evidence 615.

6

Plaintiff does not oppose either request. Therefore, the City's motion is **GRANTED**. Counsel

7

**SHALL** provide to their opponent the identity of any trial witness at least one court day before

8

the witness is called to testify.[10] Moreover, because it is mandatory upon a party's request, all

9

witnesses authorized to be excluded pursuant to FRE 615(a)(1)-(4) will be "excluded from the

10

courtroom so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615(a). The Court

11

also "prohibit[s] disclosure of trial testimony to witnesses who are excluded from the courtroom

12

… and prohibit[s] excluded witnesses from accessing trial testimony." Fed. R. Evid. 615(b).

13

      2.     Comments regarding liability and damages (Doc. 179-22)

14

      The City moves to preclude Plaintiff's counsel "from making any inquiry, comment, or

15

argument before the jury that suggests that jurors place themselves in Plaintiff's position in

16

determining liability, or base Plaintiff's damages, if any[,] … on an amount that the jurors would

17

charge to endure similar injuries." (Doc. 179-22 at 2.) The City argues that such arguments

18

"improperly elicit passion, prejudice, or sympathy from the jury" and "encourage[] the jury to

19

depart from neutrality and to decide the case on the basis of personal interest and bias rather than

20

on evidence." (*Id.* at 1, quoting *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 491 (1st Cir.

21

2010).) Plaintiff does not oppose the City's motion. Therefore, it is **GRANTED**.

22

      3.     Jury selection procedures (Doc. 179-23)

23

      The City requests that counsel be permitted to give a "mini-opening" statement at the

24

beginning of jury selection pursuant to California Code of Civil Procedure § 222.5.[11] The City

25

26

27

[10] The Court intends this to mean that before the trial day begins, the party will provide the opponent a list of witnesses to be called during the next trial day. As a reminder, the Court is dark on Mondays. Thus, for example, on Friday morning before the trial starts, the party will provide to the opponent, the list of witnesses for the following Tuesday.

28

[11] Section 222.5(d), cited by the City, provides: "Upon the request of a party, the trial judge shall allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning

1    also seeks to utilize a juror questionnaire. Plaintiff does not oppose the motion.

2        The Court will permit each side to present a mini-opening not to exceed five minutes. The

3    mini-opening statements will be allowed after the Court reads the joint neutral statement. The

4    mini-opening statement must be a factual summary, not an argument, and must provide only basic

5    information—in a non-argumentative format—to the jury panel to assist the parties in selecting a

6    fair and impartial jury. The Court will time the mini-openings and will stop the presenter when

7    the time has expired. To this extent, the motion is **GRANTED**.

8        As to the request for a jury questionnaire, the motion is **DENIED**. The Court will conduct

9    a comprehensive examination of the prospective jurors, which will include any additional

10    questions proposed by the parties that the Court deems proper.[12] Counsel for each party will be

11    given a brief opportunity to further examine the jury insofar as the Court finds such questioning

12    proper. These procedures are consistent with Rule 47 and Local Rule 162.1, which states that

13    "[e]xamination of prospective jurors *shall* be by the Court subject to supplementation by counsel

14    as provided by Fed. R. Civ. P. 47 …." L.R. 162.1(a) (emphasis added). *See* Fed. R. Civ. P. 47(a);

15    *see also* L.R. 162.1(a) (specifying that examination may be supplemented by counsel "to remedy

16    omissions, to clarify, or to pursue lines of inquiry suggested by answers").

17        The Court allows jury questionnaires in limited circumstances, such as in complex

18    criminal trials with lengthy trial estimates. Jury questionnaires present a significant burden on the

19    Court and the Court staff, which is not justified in this case. The claims to be tried in this case are

20    not uncommon or complex. The Court has many times seated juries in cases raising similar issues

21    and has found no reticence on prospective members to discuss their experiences. This trial is

22    relatively short, with the parties estimating 10 to 14 days to complete, which they assert may be

23    shortened following resolution of the City's motions in limine. (Doc. 176.) For these reasons, the

24    request for a jury questionnaire is **DENIED.**

25    *///*

26    _____

    phase of the voir dire process." (*See* Doc. 179-23 at 1.)

27    [12] As cited in the pretrial order (*see* Doc. 159 at 9), the Local Rules require the parties to submit proposed

28    voir dire questions "touching upon unique or unusual aspects of the action" at least seven days prior to the
    commencement of trial. L.R. 162.1(a).

1

**E.      Expert Testimony Motions**

2

"A witness who is qualified as an expert by knowledge, skill, experience, training, or

3

education may testify" if it is "more likely than not" that:

4

      (a)  the expert's scientific, technical, or other specialized knowledge will help the trier
          of fact to understand the evidence or to determine a fact in issue;

5

      (b)  the testimony is based on sufficient facts or data;
      (c)  the testimony is the product of reliable principles and methods; and

6

      (d)  the expert's opinion reflects a reliable application of the principles and methods to

7

          the facts of the case.

8

Fed. R. Evid. 702.

9

After determining the witness is qualified to offer expert testimony within the meaning of

10

Rule 702, the district court is tasked with "ensuring that an expert's testimony both rests on a

11

reliable foundation and is relevant to the task at hand." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th

12

1017, 1024 (9th Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597

13

(1993)). "To satisfy its gatekeeping duty under *Daubert*, the court must make an explicit

14

reliability finding." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019)

15

(internal quotation marks omitted).

16

      1.      Robert May (Doc. 179-14)

17

The City moves for an order precluding Plaintiff's retained expert, Robert May, from

18

testifying at trial or to limit the scope of his testimony and the admission of his expert report.

19

(Doc. 179-14 at 1.) May was retained by Plaintiff's counsel "to serve as a fire

20

service/supervisory/personnel expert" and was tasked with determining whether there was "any

21

potential discrimination, harassment, [or] retaliation" or "lack of proper investigation." (Doc.

22

179-14 at 15 [May Expert Report at 3]; *id.* at 43 [May Dep. at 40:25-41:1-6].) He intends to offer

23

three primary opinions:

24

      1.  "Plaintiff would have promoted to Fire Captain in 2013 and
          Battalion Chief in 2016."

25

      2.  "In 2010, Plaintiff engaged in the protected activity, expressing

26

          disagreements with Captain Gill and reporting him to Chief
          Brugeman[.] [A]s a result he suffered retaliation, harassment

27

          and discrimination."

28

      3.  "As a result of the retaliation, harassment and discrimination[,]

> the City caused Plaintiff to receive adverse treatment. The adverse treatment was reasonably likely to impair … Plaintiff's job performance, his mental and physical wellbeing and it impaired his prospects for advancement and/or promotion."

(*Id.* at 15-16.) According to the City, May lacks the qualifications to render these opinions, which themselves lack foundation; amount to legal conclusions; attempt to invade the province of the jury; are not based on scientific, technical, or other specialized knowledge; and improperly reiterate Plaintiff's theory of the case. (Doc. 179-14 at 1, 3.)

Plaintiff contends that May's testimony is relevant and helpful to the jury. (Doc. 191 at 2.) He reasons:

> Robert Ray [sic] has 20 years' experience as a Fire Chief. As a fire chief he has the requisite experience regarding the required qualifications for a fire captain and Battalion Chief. As a fire chief he has had the broad field experience of not only fire fighting operations but also the fire-fighter culture and personnel relationships and how interpersonal relationships create conflict and retaliation within a fire department. Based on his extensive experience he can recognize the adverse conduct or adverse actions taken against a fire-fighter. [¶] Additionally, as a fire chief is [sic] qualified to opinion [sic] on the skills and qualifications need [sic] to promote to captain and battalion chief.

(Doc. 191 at 3.)

Though May appears qualified to testify as an expert based on his extensive experience in fire protection and prevention, the Court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). The Court is "not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70; *see also* Fed. R. Evid. 702(a) (expert testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue").

Plaintiff's opposition does not address the merits of the City's motion or the admissibility

1   of May's opinions.[13] This failure alone is sufficient to grant the City's motion. *See Donelson v.*

2   *Providence Health & Servs.-Washington*, 823 F. Supp. 2d 1179, 1192 (E.D. Wash. 2011) ("The

3   proponent of the expert has the burden of proving by a preponderance of evidence that the

4   expert's testimony is admissible.") (citing *Lust v. Merrell Dow Pharm., Inc.,* 89 F.3d 594, 598

5   (9th Cir. 1996); *Daubert,* 509 U.S. at 592 n.10).

6           The Court notes that May's testimony is rife with legal conclusions that attempt to usurp

7   the role of the jury. For example, he opines that Plaintiff engaged in protected activity, that

8   Plaintiff suffered retaliation, harassment, and discrimination, and that the adverse treatment

9   Plaintiff suffered was caused by his protected activity. (*See* Doc. 179-14 at 15-16.) "Expert

10  testimony should not be permitted if it concerns a subject improper for expert testimony, for

11  example, one that invades the province of the jury." *United States v. Binder,* 769 F.2d 595, 602

12  (9th Cir. 1985). Although "[a]n opinion is not objectionable just because it embraces an ultimate

13  issue," Fed. R. Evid. 704(a), "an expert witness cannot give an opinion as to h[is] *legal*

14  *conclusion*, i.e., an opinion on an ultimate issue of law." *L.E. v. Lakeland Joint Sch. Dist. #272*,

15  403 F. Supp. 3d 888, 896 (D. Idaho 2019) (emphasis in original) (quoting *Hangarter v. Provident*

16  *Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). This is because "[e]xpert testimony

17  that consists of legal conclusions cannot properly assist the trier of fact" to understand the

18  evidence or to determine a fact in issue. *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350,

19  1360 (N.D. Ga. 2009) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d

20  1207, 1212 (D.C. Cir. 1997)); Fed. R. Evid. 702(a). As the California Fifth District Court of

21  Appeal explained:

22              Expert opinions which invade the province of the jury are not
                excluded because they embrace an ultimate issue, but because they
23              are not helpful (or perhaps too helpful). The rationale for admitting
                opinion testimony is that it will assist the jury in reaching a
24              conclusion called for by the case. Where the jury is just as
                competent as the expert to consider and weigh the evidence and
25              draw the necessary conclusions, then the need for expert testimony
                evaporates. In other words, when an expert's opinion amounts to
26              nothing more than an expression of his or her belief on how a case

27  ───────────────────────
    [13] Plaintiff concludes his opposition by asserting that the City's motion "should be denied to the extend
28  [sic] it precludes *Plaintiff* from testifying about his own qualifications." (Doc. 191 at 3.) This is not the
    subject of the City's motion and will not be considered.

should be decided, it does not *aid* the jurors, it *supplants* them.

*Summers v. A.L. Gilbert Co.*, 69 Cal. App. 4th 1155, 1183 (1999) (cleaned up) (emphasis in original) (quoted in *Armstrong v. Harris*, 2017 WL 2930856, at *19 (E.D. Cal. July 10, 2017)).

In *Torres v. Cnty. of Oakland*, 758 F.2d 147 (6th Cir. 1985), a Title VII discrimination case, the Sixth Circuit specifically addressed an expert's improper use of the term "discrimination":

> The precise language of the question put to Dr. Quiroga was whether "Torres had been discriminated against because of her national origin." In concluding that this question called for an improper legal conclusion, we rely on several factors. First, the question tracks almost verbatim the language of the applicable statute. Title VII makes it unlawful for an employer to "discriminate against any individual ... because of such individual's ... national origin." *See* 42 U.S.C. § 2000e–2. Second, the term "discrimination" has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning. *See Ward v. Westland Plastics, Inc.,* 651 F.2d 1266, 1271 (9th Cir. 1980) (witness "incompetent to voice an opinion on whether that or any other conduct constituted *illegal* sex discrimination").

*Id.* at 151.

For these reasons, May cannot testify to any legal conclusions, jury questions, or requirements of law, including those expressed in his Opinions 2 and 3. He cannot offer medical opinions—that adverse treatment caused Plaintiff to not do his job well, or that his mental or physical wellbeing suffered as a result. He cannot speak to issues that are within the common knowledge and understanding of the average juror, such as the fact that a poor job evaluation can impair an employee's ability to promote. Finally, as the City notes, May cannot simply parrot Plaintiff's claims under the guise of an expert opinion, such as those expressed in his Opinion 1. *See Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 283 (D. Vt. 2013) ("To the extent [an expert witness] merely repeats or recasts the testimony of [a fact witness] in order to arrive at a theory of causation, he is not testifying as an expert witness based upon specialized knowledge, but rather is acting as a conduit for another witness's testimony in the guise of an expert's opinion."). For these reasons and those stated in the City's motion, the Court finds that May's proposed testimony and expert report are inadmissible, and he will not be permitted to testify.

Thus, the City's motion (Doc. 179-14) is **GRANTED**.[14]

### 2.    Darryl Zengler (Doc. 179-16)

Pursuant to Federal Rules of Evidence 401-403 and 702, the City moves to limit the evidence and testimony of Plaintiff's retained expert, economist Darryl Zengler, by excluding any calculation of damages in Zengler's lost wage model that assumes (1) Plaintiff's promotion to Fire Deputy Chief or (2) a work life expectancy beyond July 11, 2023, the date of the order of removal. (Doc. 179-16.) Plaintiff confirms that he will not introduce evidence or testimony that he would have promoted to Fire Deputy Chief. (Doc. 193 at 2.) To this extent, the City's motion (Doc. 179-16) is **GRANTED** as unopposed.

As for damages calculations after July 11, 2023, the Court the Court addressed this issue in ruling on the City's motion in limine number 15, *supra,* after considering the same argument Plaintiff raises in opposition here. (*Compare* Doc. 192 *with* Doc. 193 at 2.) Therefore, this portion of the City's motion (Doc. 179-16) is **GRANTED** for the same reasons set forth in the Court's discussion of motion 15.

### 3.    Vida Thomas (Doc. 179-17)

The City seeks to limit the testimony of retained expert Vida Thomas by precluding her from testifying as to (1) whether "any purported deficiency in the City's workplace investigations is evidence of retaliation or retaliatory harassment;" and (2) whether the City's anti-harassment/discrimination policy (Administrative Order No. 2-16) and training were inadequate. (Doc. 179-17 at 1.)

#### a.    *Workplace investigations*

The City asserts that though Thomas "may discuss opinions involving human resources practices and perceived deficiencies in the City's response to Plaintiff's complaints, she is not permitted to testify as to whether those acts by the City constituted or were evidence of retaliation and/or retaliatory harassment." (Doc. 179-17 at 2.)

---

[14] The City also argues that May should be not permitted to testify about "matters encompassed by the futile gesture doctrine …, including whether the City had a policy or pattern and practice of retaliation and whether anyone attempted to dissuade Plaintiff from applying for promotion." (Doc. 179-14 at 9.) Plaintiff does not oppose this request. This motion (Doc. 179-14) is **GRANTED**.

For his part, Plaintiff asserts that as a well-known expert with extensive experience in workplace investigations, Thomas will provide testimony regarding the City's compliance with internal policies in response to Plaintiff's complaints. (*See* Doc. 194 at 2.) He also states that Thomas will offer opinions that the City "did not meet the standard of care established in the human resource field for responding to complaints of harassment, discrimination and retaliation." (*Id.* at 15.)

Because Plaintiff does not oppose Thomas being precluded from offering an opinion as to whether the City's responses amounted to or demonstrated retaliation or harassment, the City's motion is **GRANTED** as to this request.

### b.    Adequacy of policy and training

The City contends, and the Court confirms, that at deposition, Thomas testified that she did not render any opinions as to the adequacy of the City's antidiscrimination policy (AO 2-16) or its training thereon. (Doc. 179-17 at 2-3, citing *id*. at 8, Ex. A, Thomas Dep. at 81:2-23.) Having also considered Plaintiff's response, which does not address the issue, (*see* Doc. 194), the Court **GRANTS** this aspect of the City's motion (Doc. 179-17) as unopposed.

### 4.    Brian Jacks (Doc. 179-20)

Pursuant to Rules 401-403 and 702, as well as the Court's prior orders, the City moves for an order precluding Plaintiff's proposed psychiatric expert, Dr. Brian Jacks, from testifying at trial or to limit the scope of his testimony and to preclude the admission of his expert report. (Doc. 179-20 at 1-2.) According to the City, Dr. Jacks intends to offer two opinions: "(1) Plaintiff has a major depressive disorder single episode; and (2) the disorder 'is completely caused by, related to and attributable to the work difficulties [Plaintiff] described at the Fire Department working for the City of Fresno' from 2010 to 2021." (*Id.* at 1, quoting Ex. A, Jacks Dep. at 16, 19.) The City argues:

> [Dr.] Jacks lacks the requisite foundation for his opinions; the opinions are legal in nature and unduly invade the province of the jury; and the opinions are being improperly utilized to reiterate Plaintiff's theory of the case. Further, the opinions are of no assistance to the jury, as they are inconsistent with the statute of limitation; do not consider alternative causes; rel[y] on matters outside the scope of the operative pleading; provide[] no

1
2

> apportionment analysis; and rel[y] on assumptions and facts that are
> contrary to the rulings of this Court.

3      (*Id.* at 2.) Plaintiff asserts in opposition:

4
5
6
7
8

> Dr. Jacks is an expert with appropriate experience and credentials.
> Dr. Jack's [sic] medical opinions are based on a review of medical
> records and his own testing and evaluation of the Plaintiff. Dr.
> Jacks' opinions are relevant as to Plaintiffs' [sic] non-economic
> damages claim. Likewise, Dr. Jacks is qualified to discuss
> Plaintiff's injuries which are alleged to be caused by the retaliation
> and harassment. The court can instruct the jury with a limiting
> instruction regarding the timing as argued by the Defendant.

9      (Doc. 197 at 4-5), but he does not otherwise address the City's motion.

10          Experts may testify as to evidence that is inadmissible otherwise, such as hearsay

11     evidence, if it is generally and reasonably relied upon by experts in the field. However, opinions

12     of experts must be based upon scientific knowledge or inferences based upon a scientific method.

13     *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). A "bald assurance of

14     validity" by the expert is insufficient. *Id*. Rather, the expert must demonstrate "objective,

15     independent validation of [his] methodology." *Id*.

16          As the gatekeeper, the Court must determine whether an expert offers opinions founded

17     upon generally accepted methods, which rely upon data that experts in the field widely consider.

18     *Daubert*, at 1316. The Court has no doubt that in the field of psychology—as in other medical

19     fields—that the patient's subjective complaints are nearly always—if not always—considered

20     when the expert forms his opinions. However, equally established is that the expert must evaluate

21     the subjective assertions against the objective information.

22          Dr. Jacks received a lengthy history from Plaintiff about his experience while employed

23     by the City in addition to a 27-page document drafted by Plaintiff about the events (Doc. 179-20

24     at 23) Dr. Jacks indicated that he did not rely on some of the events related to him by Plaintiff,

25     them—such as the claim that on the two occasions that Plaintiff's wife and he were cut off by a

26     car on the freeway—because there was insufficient evidence to support that this was attributable

27     to the City. He also indicated that if he learned that the events Plaintiff recounted did not happen

28     as described that this could impact his opinion as to causation. On the other hand, Dr. Jacks

1    testified that he found Plaintiff to be credible.

2         It goes without saying that Dr. Jacks' feelings about Plaintiff's credibility are not relevant,

3    and he is not allowed to speak to this. Plaintiffs' credibility is a question only for the jury to

4    determine. Likewise, Dr. Jacks may not parrot in the guise of expert testimony, Plaintiff's

5    inadmissible and irrelevant statements about events that the Court has determined are not

6    actionable at trial. *See Rotman*, 955 F. Supp. 2d at 283 ("To the extent [an expert witness] merely

7    repeats or recasts the testimony of [a fact witness] in order to arrive at a theory of causation, he is

8    not testifying as an expert witness based upon specialized knowledge, but rather is acting as a

9    conduit for another witness's testimony in the guise of an expert's opinion.").

10         Of great concern, Dr. Jacks was not told that the Court has determined that most of the

11    events described to him by Plaintiff were not unlawful, and, therefore, do not form a basis for

12    recovery in this litigation. (Doc. 197 at 1 ["Dr. Jacks . . . is not aware of any specific court rulings

13    which govern this case."]) Likewise, Plaintiff did not provide Dr. Jacks with the operative

14    complaint, but, instead, gave him the Fourth Amended Complaint. He may not testify about the

15    claims made in the Fourth Amended complaint or claims made in any complaint that have been

16    determined in the City's favor. Moreover, Dr. Jacks relied on adverse employment actions (e.g.,

17    2-shift suspension), claims (e.g., racial discrimination), and timeframes (e.g., 2020-21) that are

18    "outside the scope of the operative pleading" and "assumptions and facts that are contrary to the

19    rulings of this Court." (Doc. 179-20 at 2, 7-9.)[15] Finally, Dr. Jacks was not given the bulk of the

20    discovery produced in this case (Doc. 179-20 at 23) despite asking for it repeatedly[16]. (Doc. 179-

21    20 at 56).

22         Though often these types of failures would usually go to the weight of the expert's

23    testimony, in this *Daubert* challenge, in this context and upon the record now before it, the Court

24    concludes that these failures go to its admissibility. Without Dr. Jacks knowing and considering

---

25    [15] Plaintiff responds that "Dr. Jacks is not a lawyer and is not aware of any specific court rulings which

26    governs the subject case." (Doc. 197 at 2.) This does not excuse Plaintiff's counsel from being apprised of the relevant pleadings and rulings that govern this case.

27    [16] The Court understands that Dr. Jacks conducted objective testing.  But, the probative value of this

28    testing, without a valid opinion about causation, is minute and it is overwhelmed by its prejudicial effect. Fed. Rule Evid. 403.

1    that most of the events described by Plaintiff are irrelevant to this litigation, the Court has no

2    understanding of the underpinnings of his opinion regarding causation. The Court does not know

3    that if Dr. Jacks understood that only a small fraction of the events listed in his causation analysis

4    may be considered, whether he could say within any degree of medical certainty what caused

5    Plaintiff's psychological condition or whether the identified causation is relevant in this

6    litigation.[17]

7         As the proponent of Dr. Jacks' testimony, Plaintiff has the burden of establishing its

8    admissibility. He has made virtually no effort to do this. Plaintiff must carry his burden of

9    establishing that Dr. Jacks is qualified to offer the opinions he has identified in his report and that

10   these opinions are properly grounded upon generally accepted methodology. Plaintiff has done

11   neither.

12        At least according to what the Court knows at this time, it would not be possible to

13   segregate what Dr. Jacks properly relied on from that which was not actionable. The City

14   contends that allowing him to do that at trial would cause undue delay, confuse the issues,

15   mislead the jury, and would unfairly prejudice the City. (*See id*. at 8 n.3 ["Jacks' failure to

16   apportion these non-actionable adverse employment actions extremely prejudices the City, as the

17   City will have to examine him on the unrelated adverse employment actions in discussing

18   alternative stressors for causation purposes and bring these irrelevant matters before the jury.

19   Thus, the opinion should be excluded under Rule 403."].) Plaintiff does not counter these

20   arguments. Thus, Plaintiff has not met his burden, and the Court construes his failure to address

21   these issues as tacit admission that the Rule 403 analysis counsels against Dr. Jack's testimony.

22   Thus, City's motion (Doc. 179-20) is **GRANTED WITHOUT PREJUDICE**. If Plaintiff has a

23   reasoned basis, not yet articulated, as to how Dr. Jacks testimony could meet the *Daubert*

24   standard for admissibility, he may raise the issue with the Court **in a timely fashion—meaning it**

25   **will not delay the trial**—and outside the presence of the jury.

26   _____

27   [17] For example, Dr. Jacks testified that Plaintiff may be susceptible to psychological injury due to events occurring in childhood. This increased susceptibility—absent tortious conduct by the defendant—is insufficient to impose liability for his psychological injury and the evidence about the events that Plaintiff

28   perceived to be injurious, would, therefore, be irrelevant at trial.

**III.    CONCLUSION AND ORDER**

Based upon the foregoing, the Court **ORDERS**:

1.    The City's motions in limine number 1-3, 9-10, 12-15, 17, and 19-22 are **GRANTED**.

2.    The City's motions in limine number 6, 8, and 23 are **DENIED**.

3.    The City's motion in limine number 2, 3 4 and 7 are **RESERVED**.

4.    The City's motions in limine number 5, 11, 16, 18 and 23 are **GRANTED in part** and **DENIED in part**, as set forth above.

**Counsel SHALL discuss these rulings with their clients and witnesses to ensure compliance with this order.**

IT IS SO ORDERED.

Dated:    **July 2, 2025**

UNITED STATES DISTRICT JUDGE